**Wage Schedule 7**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 | | | | Step# | Effective April 2010 | | | | Step# | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada |
| 1 | 388.50 | 380.00 | 370.00 | 362.00 | 1 | 388.50 | 380.00 | 370.00 | 362.00 | 1 | 388.50 | 380.00 | 370.00 | 362.00 |
| 2 | 440.00 | 430.50 | 419.00 | 410.50 | 2 | 441.50 | 432.00 | 421.00 | 412.00 | 2 | 443.50 | 433.50 | 422.00 | 413.00 |
| 3 | 498.50 | 488.00 | 475.00 | 465.00 | 3 | 502.50 | 491.50 | 478.50 | 468.50 | 3 | 505.50 | 495.00 | 482.00 | 471.50 |
| 4 | 565.00 | 553.00 | 538.00 | 527.00 | 4 | 571.00 | 559.00 | 544.00 | 533.00 | 4 | 577.00 | 565.00 | 549.50 | 538.50 |
| 5 | 640.00 | 626.50 | 610.00 | 597.50 | 5 | 649.50 | 636.00 | 619.00 | 606.50 | 5 | 658.50 | 645.00 | 627.50 | 614.50 |
| 6 | 725.00 | 710.00 | 691.00 | 677.00 | 6 | 738.50 | 723.50 | 703.50 | 689.50 | 6 | 751.00 | 736.00 | 716.00 | 701.50 |
| 7 | 821.50 | 805.00 | 783.00 | 767.50 | 7 | 839.50 | 823.00 | 800.50 | 784.50 | 7 | 857.00 | 840.00 | 817.00 | 801.00 |
| 8 | 930.50 | 912.00 | 887.00 | 870.00 | 8 | 954.50 | 936.00 | 910.00 | 892.50 | 8 | 977.50 | 958.50 | 932.00 | 914.00 |
| 9 | 1054.00 | 1033.50 | 1005.00 | 986.00 | 9 | 1085.50 | 1064.50 | 1035.00 | 1015.50 | 9 | 1115.50 | 1094.00 | 1063.50 | 1043.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title | Job Titles | Time in Title |
|---|---|---|---|---|---|---|---|
| 113 | 112 | 111 | 110 | Collection Representative | 15 | Customer Representative – Bilingual* | 15 |
| | | | | Collection Representative-Bilingual* | 15 | Engineering Cost Associate | 15 |
| | | | | Customer Representative | 15 | | |

\* Collection Representative – Bilingual and Customer Representative-Bilingual titles receive a $25/week language payment in addition to their basic wage rate to all steps.
^ Amounts may increase due to COLA listed in Section C1.

---

**Wage Schedule 8**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 | | | | Step# | Effective April 2010 | | | | Step# | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada |
| 1 | 363.50 | 356.50 | 348.00 | 340.00 | 1 | 363.50 | 356.50 | 348.00 | 340.00 | 1 | 363.50 | 356.50 | 348.00 | 340.00 |
| 2 | 405.50 | 397.50 | 388.00 | 379.00 | 2 | 406.50 | 399.00 | 389.00 | 380.50 | 2 | 407.50 | 400.00 | 390.00 | 381.50 |
| 3 | 452.00 | 443.50 | 432.50 | 423.00 | 3 | 455.00 | 446.00 | 435.00 | 425.50 | 3 | 457.50 | 448.50 | 437.50 | 428.00 |
| 4 | 504.00 | 494.50 | 482.50 | 472.00 | 4 | 508.50 | 499.00 | 486.50 | 476.00 | 4 | 513.00 | 503.00 | 490.50 | 480.00 |
| 5 | 562.50 | 551.50 | 538.00 | 526.00 | 5 | 569.00 | 558.00 | 544.50 | 532.50 | 5 | 575.00 | 564.00 | 550.00 | 538.00 |
| 6 | 627.00 | 615.00 | 599.50 | 587.00 | 6 | 636.50 | 624.50 | 608.50 | 595.50 | 6 | 645.00 | 633.00 | 617.00 | 603.50 |
| 7 | 699.50 | 686.00 | 668.50 | 654.50 | 7 | 712.00 | 698.50 | 680.50 | 666.50 | 7 | 723.50 | 710.00 | 692.00 | 677.00 |
| 8 | 780.00 | 765.00 | 745.50 | 730.00 | 8 | 796.50 | 781.50 | 761.00 | 745.50 | 8 | 811.50 | 796.00 | 776.00 | 759.50 |
| 9 | 870.00 | 853.50 | 831.50 | 814.50 | 9 | 891.00 | 874.00 | 851.00 | 834.00 | 9 | 910.00 | 893.00 | 870.00 | 852.00 |
| 10 | 970.00 | 952.00 | 927.00 | 908.00 | 10 | 996.50 | 977.50 | 952.00 | 933.00 | 10 | 1021.00 | 1001.50 | 975.50 | 955.50 |
| 11 | 1082.00 | 1061.50 | 1033.50 | 1013.00 | 11 | 1114.50 | 1093.50 | 1064.50 | 1043.50 | 11 | 1145.00 | 1123.50 | 1094.00 | 1072.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title | Job Titles | Time in Title |
|---|---|---|---|---|---|---|---|
| 114 | 113 | 112 | 111 | Accounting Specialist | 15 | Maintenance Administrator – Bilingual* | 15 |
| | | | | Data Specialist | 15 | Operations Specialist | 15 |
| | | | | Driver | 15 | Provisioning Specialist | 15 |
| | | | | Maintenance Administrator | 15 | | |

*Maintenance Administrator – Bilingual title receives a $25/week language payment in addition to their basic wage rate to all steps.*
^ Amounts may increase due to COLA listed in Section C1.

**Wage Schedule 9**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step # | Effective April 2009 | | | | Step # | Effective April 2010 | | | | Step # | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada |
| 1 | 367.00 | 360.50 | 351.50 | 345.00 | 1 | 367.00 | 360.50 | 351.50 | 345.00 | 1 | 367.00 | 360.50 | 351.50 | 345.00 |
| 2 | 409.50 | 402.00 | 392.00 | 385.00 | 2 | 410.50 | 403.00 | 393.00 | 386.00 | 2 | 411.50 | 404.50 | 394.50 | 387.00 |
| 3 | 456.50 | 448.50 | 437.50 | 429.00 | 3 | 459.50 | 451.00 | 440.00 | 431.50 | 3 | 462.00 | 453.50 | 442.50 | 434.00 |
| 4 | 509.00 | 500.00 | 487.50 | 478.50 | 4 | 514.00 | 504.50 | 492.00 | 483.00 | 4 | 518.00 | 508.50 | 496.00 | 487.00 |
| 5 | 568.00 | 557.50 | 544.00 | 534.00 | 5 | 575.00 | 564.00 | 550.50 | 540.00 | 5 | 581.00 | 570.50 | 556.50 | 546.00 |
| 6 | 633.50 | 622.00 | 607.00 | 595.50 | 6 | 643.00 | 631.00 | 616.00 | 604.50 | 6 | 652.00 | 639.50 | 624.00 | 612.50 |
| 7 | 706.50 | 693.50 | 677.00 | 664.00 | 7 | 719.50 | 706.00 | 689.00 | 676.00 | 7 | 731.00 | 717.50 | 700.00 | 687.00 |
| 8 | 788.00 | 773.50 | 755.00 | 740.50 | 8 | 804.50 | 789.50 | 770.50 | 756.00 | 8 | 820.00 | 804.50 | 785.50 | 770.50 |
| 9 | 879.00 | 862.50 | 842.00 | 826.00 | 9 | 900.00 | 883.00 | 862.00 | 846.00 | 9 | 920.00 | 902.50 | 881.00 | 864.50 |
| 10 | 980.50 | 961.50 | 939.00 | 921.50 | 10 | 1007.00 | 987.50 | 964.50 | 946.00 | 10 | 1032.00 | 1012.00 | 988.00 | 969.50 |
| 11 | 1093.50 | 1072.50 | 1047.50 | 1027.50 | 11 | 1126.50 | 1104.50 | 1079.00 | 1058.50 | 11 | 1157.50 | 1135.00 | 1108.50 | 1087.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title | Job Titles | Time in Title |
|---|---|---|---|---|---|---|---|
| 114 | 113 | 112 | 112 | Cable Locator | 18 | RCMA Administrator | 18 |
| | | | | Collector | 18 | Supply Service Attendant | 18 |
| | | | | *Facilities Specialist* | *18* | | |
| | | | | Facilities Technician | 18 | | |

132

---

^ Amounts may increase due to COLA listed in Section C1.

**Wage Schedule 10**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step # | Effective April 2009 | | | | Step # | Effective April 2010 | | | | Step # | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada | | Zone E | Zone F | Zone G | Nevada |
| 1 | 421.00 | 413.50 | 400.50 | 388.00 | 1 | 421.00 | 413.50 | 400.50 | 388.00 | 1 | 421.00 | 413.50 | 400.50 | 388.00 |
| 2 | 477.00 | 468.50 | 454.00 | 440.00 | 2 | 478.50 | 470.00 | 455.50 | 441.50 | 2 | 480.50 | 471.50 | 457.00 | 443.00 |
| 3 | 540.50 | 530.50 | 514.00 | 498.50 | 3 | 544.50 | 534.50 | 518.00 | 502.00 | 3 | 548.00 | 538.00 | 521.50 | 505.50 |
| 4 | 612.00 | 601.00 | 582.50 | 565.00 | 4 | 619.00 | 607.50 | 589.00 | 571.50 | 4 | 625.50 | 614.00 | 595.00 | 577.00 |
| 5 | 693.50 | 680.50 | 660.00 | 640.50 | 5 | 704.00 | 691.00 | 670.00 | 650.00 | 5 | 713.50 | 700.00 | 679.00 | 659.00 |
| 6 | 785.50 | 771.00 | 748.00 | 726.00 | 6 | 800.50 | 785.50 | 762.00 | 739.50 | 6 | 814.00 | 798.50 | 775.00 | 752.00 |
| 7 | 890.00 | 873.50 | 847.50 | 822.50 | 7 | 910.00 | 893.00 | 866.50 | 841.00 | 7 | 929.00 | 911.00 | 884.50 | 858.50 |
| 8 | 1008.50 | 989.00 | 960.00 | 932.50 | 8 | 1035.00 | 1015.00 | 985.50 | 957.00 | 8 | 1060.00 | 1039.50 | 1009.00 | 980.00 |
| 9 | 1142.50 | 1120.50 | 1088.00 | 1057.00 | 9 | 1177.00 | 1154.00 | 1120.50 | 1088.50 | 9 | 1209.50 | 1185.50 | 1151.50 | 1118.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title |
|---|---|---|---|---|---|
| 116 | 115 | 114 | 113 | Network Maintenance Specialist | 18 |
| | | | | Supply Specialist – Nevada | 18 |

^ Amounts may increase due to COLA listed in Section C1.

133

APPENDIX C

## Wage Schedule V
### TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 Zone E | Zone F | Zone G | Nevada | Step# | Effective April 2010 Zone E | Zone F | Zone G | Nevada | Step# | Effective April 2011^ Zone E | Zone F | Zone G | Nevada |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 463.13 | 454.74 | 441.29 | 428.22 | 1 | 476.97 | 468.39 | 454.55 | 441.09 | 1 | 490.04 | 481.26 | 467.03 | 453.18 |
| 2 | 497.60 | 488.59 | 474.14 | 460.10 | 2 | 512.47 | 503.26 | 488.38 | 473.92 | 2 | 526.52 | 517.08 | 501.79 | 486.91 |
| 3 | 534.64 | 524.96 | 509.43 | 494.34 | 3 | 550.62 | 540.72 | 524.74 | 509.20 | 3 | 565.71 | 555.57 | 539.14 | 523.16 |
| 4 | 574.44 | 564.04 | 547.35 | 531.14 | 4 | 591.61 | 580.97 | 563.80 | 547.10 | 4' | 607.82 | 596.93 | 579.28 | 562.10 |
| 5 | 617.20 | 606.02 | 588.09 | 570.68 | 5 | 635.65 | 624.21 | 605.76 | 587.83 | 5 | 653.06 | 641.36 | 622.40 | 603.94 |
| 6 | 663.14 | 651.13 | 631.87 | 613.16 | 6 | 682.96 | 670.68 | 650.85 | 631.59 | 6 | 701.67 | 689.10 | 668.72 | 648.90 |
| 7 | 712.50 | 699.60 | 678.90 | 658.80 | 7 | 733.80 | 720.60 | 699.30 | 678.60 | 7 | 753.90 | 740.40 | 718.50 | 697.20 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title |
|---|---|---|---|---|---|
| 117 | 116 | 115 | 114 | *Sales Consultant* | *24* |
| | | | | *Sales Consultant – Binlingual\** | *24* |

*\* Sales Consultant – Bilingual receives a $25/week language payment in addition to their basic wage rate to all steps.*
*^ Amounts may increase due to COLA listed in Section C1.*

## Wage Schedule X
### TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 Zone E | Zone F | Zone G | Nevada | Step# | Effective April 2010 Zone E | Zone F | Zone G | Nevada | Step# | Effective April 2011^ Zone E | Zone F | Zone G | Nevada |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 421.00 | 413.50 | 400.50 | 388.00 | 1 | 421.00 | 413.50 | 400.50 | 388.00 | 1 | 421.00 | 413.50 | 400.50 | 388.00 |
| 2 | 479.50 | 470.50 | 456.00 | 442.00 | 2 | 481.00 | 472.50 | 457.50 | 443.50 | 2 | 482.50 | 474.00 | 459.50 | 445.00 |
| 3 | 545.50 | 536.00 | 519.00 | 503.00 | 3 | 549.50 | 540.00 | 523.00 | 507.00 | 3 | 553.50 | 543.50 | 526.50 | 510.50 |
| 4 | 621.00 | 610.00 | 591.00 | 573.00 | 4 | 628.00 | 617.00 | 598.00 | 579.50 | 4 | 634.50 | 623.00 | 604.00 | 585.50 |
| 5 | 707.00 | 694.50 | 673.00 | 652.50 | 5 | 717.50 | 704.50 | 683.00 | 662.50 | 5 | 727.50 | 714.50 | 692.50 | 671.50 |
| 6 | 805.00 | 790.50 | 766.50 | 743.50 | 6 | 820.00 | 805.00 | 781.00 | 757.00 | 6 | 834.00 | 819.00 | 794.00 | 770.00 |
| 7 | 916.50 | 900.00 | 873.00 | 846.50 | 7 | 937.00 | 920.00 | 892.50 | 865.50 | 7 | 956.00 | 939.00 | 910.50 | 883.50 |
| 8 | 1043.00 | 1024.50 | 993.50 | 964.00 | 8 | 1070.50 | 1051.00 | 1020.00 | 989.50 | 8 | 1096.00 | 1076.50 | 1044.50 | 1013.00 |
| 9 | 1187.50 | 1166.00 | 1131.50 | 1098.00 | 9 | 1223.00 | 1201.00 | 1165.50 | 1131.00 | 9 | 1256.50 | 1234.00 | 1197.50 | 1162.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title |
|---|---|---|---|---|---|
| 117 | 116 | 115 | 114 | Sales and Service Representative – Bilingual\* | 24 |
| | | | | Service Representative | 24 |

*\* Sales and Service Representative – Bilingual receives a $25/week language payment in addition to their basic wage rate to all steps.*
*^ Amounts may increase due to COLA listed in Section C1.*

APPENDIX C

**Wage Schedule 11**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | | Effective April 2010 | | | | | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada |
| 1 | 432.50 | 425.50 | 414.50 | 406.00 | 1 | 432.50 | 425.50 | 414.50 | 406.00 | 1 | 432.50 | 425.50 | 414.50 | 406.00 |
| 2 | 482.50 | 474.50 | 462.00 | 453.00 | 2 | 484.00 | 476.00 | 463.50 | 454.00 | 2 | 485.00 | 477.00 | 465.00 | 455.50 |
| 3 | 538.00 | 529.00 | 515.50 | 505.00 | 3 | 541.50 | 532.50 | 518.50 | 508.00 | 3 | 544.00 | 535.00 | 521.50 | 511.00 |
| 4 | 600.00 | 590.00 | 574.50 | 563.00 | 4 | 605.50 | 595.50 | 580.00 | 568.50 | 4 | 610.50 | 600.00 | 584.50 | 573.00 |
| 5 | 669.50 | 658.00 | 641.00 | 628.00 | 5 | 677.50 | 666.00 | 648.50 | 635.50 | 5 | 685.00 | 673.00 | 655.50 | 642.50 |
| 6 | 747.00 | 734.00 | 714.50 | 700.50 | 6 | 758.00 | 744.50 | 725.50 | 711.00 | 6 | 768.00 | 755.00 | 735.00 | 721.00 |
| 7 | 833.00 | 818.50 | 797.00 | 781.50 | 7 | 848.00 | 833.00 | 811.00 | 795.50 | 7 | 861.50 | 846.50 | 824.50 | 808.50 |
| 8 | 929.00 | 912.50 | 888.50 | 871.50 | 8 | 948.50 | 931.50 | 907.00 | 890.00 | 8 | 966.50 | 949.50 | 924.50 | 907.00 |
| 9 | 1036.50 | 1017.50 | 991.00 | 972.00 | 9 | 1061.00 | 1042.00 | 1014.50 | 995.50 | 9 | 1084.50 | 1065.00 | 1037.00 | 1017.50 |
| 10 | 1156.00 | 1135.00 | 1105.00 | 1084.00 | 10 | 1187.00 | 1165.50 | 1134.50 | 1113.50 | 10 | 1216.50 | 1194.50 | 1163.00 | 1141.00 |
| 11 | 1289.50 | 1265.50 | 1232.00 | 1209.00 | 11 | 1328.00 | 1303.50 | 1269.00 | 1245.50 | 11 | 1364.50 | 1339.50 | 1304.00 | 1280.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title | Job Titles | Time in Title |
|---|---|---|---|---|---|---|---|
| 121 | 120 | 119 | 118 | Assignment Administrator | 18 | Field Job Administrator | 18 |
| | | | | Building Mechanic | 18 | Garage Mechanic | 18 |
| | | | | Facilities Administrator | 18 | Outside Plant Tech | 18 |
| | | | | FACS Administrator* | 18 | Services Technician | 18 |

* FACS Administrator receives a $5/week basic wage job differential at top step.
^ Amounts may increase due to COLA listed in Section C1.

**Wage Schedule 12**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | | Effective April 2010 | | | | | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada |
| 1 | 449.00 | 440.00 | 428.00 | 419.00 | 1 | 449.00 | 440.00 | 428.00 | 419.00 | 1 | 449.00 | 440.00 | 428.00 | 419.00 |
| 2 | 500.50 | 490.50 | 477.50 | 467.50 | 2 | 502.00 | 492.00 | 478.50 | 469.00 | 2 | 503.50 | 493.50 | 480.00 | 470.00 |
| 3 | 558.50 | 547.00 | 532.50 | 521.50 | 3 | 562.00 | 550.50 | 535.50 | 524.50 | 3 | 565.00 | 553.50 | 538.50 | 527.50 |
| 4 | 623.00 | 610.00 | 593.50 | 581.50 | 4 | 628.50 | 615.50 | 599.00 | 586.50 | 4 | 633.50 | 620.50 | 604.00 | 591.50 |
| 5 | 694.50 | 680.50 | 662.00 | 648.50 | 5 | 703.00 | 688.50 | 670.00 | 656.50 | 5 | 710.50 | 696.00 | 677.00 | 663.50 |
| 6 | 774.50 | 759.00 | 738.50 | 723.50 | 6 | 786.00 | 770.50 | 749.00 | 734.50 | 6 | 797.00 | 781.00 | 759.50 | 744.50 |
| 7 | 864.00 | 846.50 | 823.50 | 807.00 | 7 | 879.50 | 861.50 | 838.00 | 821.50 | 7 | 894.00 | 875.50 | 851.50 | 835.00 |
| 8 | 963.50 | 944.00 | 918.00 | 900.50 | 8 | 983.50 | 963.50 | 937.50 | 919.00 | 8 | 1002.50 | 982.00 | 955.00 | 937.00 |
| 9 | 1074.50 | 1052.50 | 1024.00 | 1004.00 | 9 | 1100.00 | 1078.00 | 1048.50 | 1028.50 | 9 | 1124.50 | 1101.50 | 1071.00 | 1051.00 |
| 10 | 1198.50 | 1174.00 | 1142.00 | 1120.00 | 10 | 1230.50 | 1205.50 | 1172.50 | 1150.50 | 10 | 1261.00 | 1235.50 | 1201.50 | 1179.00 |
| 11 | 1336.50 | 1309.00 | 1273.50 | 1249.50 | 11 | 1376.50 | 1348.50 | 1311.50 | 1287.00 | 11 | 1414.50 | 1385.50 | 1347.50 | 1322.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title | Job Titles | Time in Title |
|---|---|---|---|---|---|---|---|
| 122 | 121 | 120 | 119 | Analyst | 24 | Equipment Specialist | 24 |
| | | | | Building Specialist | 24 | ENOC Technician | 24 |
| | | | | Combination Technician (Nevada Only) | 24 | Production Rep. | 24 |
| | | | | Communications Technician | 24 | Splicing Technician | 24 |
| | | | | Company Telecom Technician | 24 | Systems Technician | 24 |
| | | | | Copy Service Artist | 24 | Systems Technician – Data Communications | 24 |
| | | | | Engineering Assistant | 24 | Testing Technician | 24 |
| | | | | Equip. Installation Tech. | 24 | | |

^ Amounts may increase due to COLA listed in Section C1

APPENDIX C

**Wage Schedule IS 1**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 | Step# | Effective April 2010 | Step# | Effective April 2011^ |
|---|---|---|---|---|---|
| 1 | 446.50 | 1 | 446.50 | 1 | 446.50 |
| 2 | 495.00 | 2 | 497.00 | 2 | 498.50 |
| 3 | 548.50 | 3 | 552.50 | 3 | 556.50 |
| 4 | 608.00 | 4 | 615.00 | 4 | 621.50 |
| 5 | 674.00 | 5 | 684.00 | 5 | 693.50 |
| 6 | 747.50 | 6 | 761.50 | 6 | 774.50 |
| 7 | 828.50 | 7 | 847.00 | 7 | 864.50 |
| 8 | 918.50 | 8 | 942.50 | 8 | 965.00 |
| 9 | 1018.00 | 9 | 1048.50 | 9 | 1077.50 |

| Pension Band | Job Titles | Time in Title |
|---|---|---|
| 111 | Maintenance Notification Associate | 12 |

^ Amounts may increase due to COLA listed in Section C1.

138

---

**Wage Schedule *AT&T Video Svcs.* 21**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| Step# | Effective April 2009 | | | Step# | Effective April 2010 | | | Step# | Effective April 2011^ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Zone E | Zone F | Zone G | | Zone E | Zone F | Zone G | | Zone E | Zone F | Zone G |
| 1 | 512.50 | 502.50 | 487.50 | 1 | 512.50 | 502.50 | 487.50 | 1 | 512.50 | 502.50 | 487.50 |
| 2 | 545.00 | 534.50 | 518.50 | 2 | 547.00 | 536.50 | 520.50 | 2 | 549.00 | 538.50 | 522.50 |
| 3 | 580.00 | 568.50 | 552.00 | 3 | 584.00 | 572.50 | 556.00 | 3 | 588.00 | 576.50 | 559.50 |
| 4 | 616.50 | 605.00 | 587.00 | 4 | 623.50 | 611.50 | 593.50 | 4 | 630.00 | 617.50 | 599.50 |
| 5 | 656.00 | 643.50 | 624.50 | 5 | 665.50 | 653.00 | 634.00 | 5 | 675.00 | 662.00 | 642.50 |
| 6 | 697.50 | 684.50 | 664.50 | 6 | 710.50 | 697.00 | 677.00 | 6 | 723.00 | 709.00 | 688.50 |
| 7 | 742.00 | 728.00 | 707.00 | 7 | 758.50 | 744.00 | 723.00 | 7 | 774.50 | 759.50 | 737.50 |
| 8 | 789.50 | 774.00 | 752.50 | 8 | 810.00 | 794.50 | 772.00 | 8 | 829.50 | 813.50 | 790.50 |
| 9 | 839.50 | 823.50 | 800.50 | 9 | 864.50 | 848.00 | 824.50 | 9 | 888.50 | 871.50 | 847.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Job Titles | Time in Title |
|---|---|---|---|---|
| 105 | 105 | 104 | Administrative Clerk | 12 |

^ Amounts may increase due to COLA listed in Section C1.

139

APPENDIX C

**Wage Schedule** *AT&T Video Svcs.* **23**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | Effective April 2010 | | | | Effective April 2011^ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G |
| 1 | 534.00 | 522.50 | 508.50 | 1 | 534.00 | 522.50 | 508.50 | 1 | 534.00 | 522.50 | 508.50 |
| 2 | 563.50 | 551.50 | 537.00 | 2 | 565.50 | 553.50 | 538.50 | 2 | 567.00 | 555.00 | 540.00 |
| 3 | 595.00 | 582.50 | 566.50 | 3 | 598.50 | 586.00 | 570.00 | 3 | 602.00 | 589.00 | 573.00 |
| 4 | 628.00 | 615.00 | 598.00 | 4 | 634.00 | 620.50 | 603.50 | 4 | 639.00 | 625.50 | 608.50 |
| 5 | 663.00 | 649.50 | 631.50 | 5 | 671.00 | 657.00 | 639.00 | 5 | 678.50 | 664.50 | 646.00 |
| 6 | 700.00 | 685.50 | 666.50 | 6 | 710.50 | 696.00 | 676.50 | 6 | 720.50 | 705.50 | 686.00 |
| 7 | 739.00 | 724.00 | 704.00 | 7 | 752.50 | 737.00 | 716.00 | 7 | 764.50 | 749.00 | 728.00 |
| 8 | 780.50 | 764.50 | 743.00 | 8 | 796.50 | 780.50 | 758.50 | 8 | 812.00 | 795.50 | 773.00 |
| 9 | 823.50 | 807.50 | 784.50 | 9 | 843.50 | 826.50 | 803.00 | 9 | 862.00 | 844.50 | 820.50 |
| 10 | 869.50 | 852.50 | 828.00 | 10 | 893.00 | 875.50 | 850.00 | 10 | 915.00 | 897.00 | 871.50 |
| 11 | 918.00 | 900.00 | 874.00 | 11 | 945.50 | 927.00 | 900.00 | 11 | 971.50 | 952.50 | 925.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Job Titles | Time in Title |
|---|---|---|---|---|
| 108 | 107 | 106 | Warehouse Supplies Attendant | 12 |

^ Amounts may increase due to COLA listed in Section C1.

**Wage Schedule** *AT&T Video Svcs.* **25**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | Effective April 2010 | | | | Effective April 2011^ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G |
| 1 | 589.00 | 578.00 | 561.50 | 1 | 589.00 | 578.00 | 561.50 | 1 | 589.00 | 578.00 | 561.50 |
| 2 | 619.00 | 607.50 | 590.00 | 2 | 621.00 | 609.00 | 592.00 | 2 | 622.50 | 611.00 | 593.50 |
| 3 | 651.00 | 638.50 | 620.50 | 3 | 654.50 | 642.00 | 624.00 | 3 | 658.50 | 645.50 | 627.50 |
| 4 | 684.00 | 671.00 | 652.00 | 4 | 690.50 | 677.00 | 657.50 | 4 | 696.00 | 682.50 | 663.00 |
| 5 | 719.00 | 705.00 | 685.00 | 5 | 728.00 | 713.50 | 693.00 | 5 | 735.50 | 721.50 | 701.00 |
| 6 | 756.00 | 741.00 | 720.00 | 6 | 767.50 | 752.00 | 730.50 | 6 | 778.00 | 762.50 | 740.50 |
| 7 | 795.00 | 779.00 | 757.00 | 7 | 809.00 | 792.50 | 770.50 | 7 | 822.00 | 806.00 | 783.00 |
| 8 | 835.50 | 818.50 | 795.50 | 8 | 853.00 | 835.50 | 812.00 | 8 | 869.00 | 851.50 | 827.50 |
| 9 | 878.50 | 860.00 | 836.00 | 9 | 899.00 | 880.50 | 856.00 | 9 | 919.00 | 900.00 | 874.50 |
| 10 | 923.00 | 904.00 | 878.50 | 10 | 948.00 | 928.50 | 902.00 | 10 | 971.50 | 951.50 | 924.50 |
| 11 | 970.50 | 950.00 | 923.50 | 11 | 999.50 | 978.50 | 951.00 | 11 | 1027.00 | 1005.50 | 977.00 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Job Titles | Time in Title |
|---|---|---|---|---|
| 110 | 109 | 108 | Video Installer | 18 |

^ Amounts may increase due to COLA listed in Section C1.

APPENDIX C

**Wage Schedule** *AT&T Video Svcs.* **27**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | Effective April 2010 | | | | Effective April 2011^ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G |
| 1 | 678.00 | 665.50 | 646.00 | 1 | 678.00 | 665.50 | 646.00 | 1 | 678.00 | 665.50 | 646.00 |
| 2 | 715.00 | 702.00 | 681.50 | 2 | 717.00 | 704.00 | 683.50 | 2 | 719.00 | 706.00 | 685.00 |
| 3 | 754.00 | 740.00 | 718.50 | 3 | 758.50 | 744.50 | 723.00 | 3 | 762.50 | 748.50 | 726.50 |
| 4 | 795.00 | 780.50 | 757.50 | 4 | 802.00 | 787.50 | 764.50 | 4 | 809.00 | 794.00 | 770.50 |
| 5 | 838.50 | 823.00 | 799.00 | 5 | 848.50 | 832.50 | 808.50 | 5 | 857.50 | 842.00 | 817.50 |
| 6 | 884.50 | 868.00 | 843.00 | 6 | 897.50 | 880.50 | 855.50 | 6 | 909.50 | 892.50 | 867.00 |
| 7 | 932.50 | 915.00 | 889.00 | 7 | 949.50 | 931.50 | 904.50 | 7 | 964.50 | 946.50 | 919.50 |
| 8 | 983.50 | 965.00 | 937.50 | 8 | 1004.00 | 985.00 | 957.00 | 8 | 1023.00 | 1004.00 | 975.00 |
| 9 | 1037.00 | 1017.50 | 988.50 | 9 | 1062.00 | 1042.00 | 1012.00 | 9 | 1085.00 | 1065.00 | 1034.50 |
| 10 | 1094.00 | 1073.00 | 1042.50 | 10 | 1123.00 | 1102.00 | 1070.50 | 10 | 1151.00 | 1129.00 | 1097.00 |
| 11 | 1153.50 | 1131.50 | 1099.50 | 11 | 1188.00 | 1165.50 | 1132.50 | 11 | 1220.50 | 1197.50 | 1163.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Job Titles | Time in Title |
|---|---|---|---|---|
| 116 | 115 | 114 | Customer Service Technician | 18 |

^ Amounts may increase due to COLA listed in Section C1.

---

**Wage Schedule** *AT&T Video Svcs.* **29**
TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | Effective April 2010 | | | | Effective April 2011^ | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G | Step# | Zone E | Zone F | Zone G |
| 1 | 801.00 | 785.00 | 762.50 | 1 | 801.00 | 785.00 | 762.50 | 1 | 801.00 | 785.00 | 762.50 |
| 2 | 841.50 | 824.50 | 801.00 | 2 | 844.00 | 827.00 | 803.50 | 2 | 846.50 | 829.50 | 805.50 |
| 3 | 884.00 | 866.50 | 841.50 | 3 | 889.50 | 871.50 | 846.50 | 3 | 894.00 | 876.50 | 851.00 |
| 4 | 928.50 | 910.00 | 884.00 | 4 | 937.00 | 918.50 | 892.00 | 4 | 944.50 | 926.00 | 899.50 |
| 5 | 975.50 | 956.00 | 929.00 | 5 | 987.50 | 967.50 | 940.00 | 5 | 998.00 | 978.00 | 950.00 |
| 6 | 1025.00 | 1004.50 | 975.50 | 6 | 1040.50 | 1019.50 | 990.00 | 6 | 1054.50 | 1033.50 | 1004.00 |
| 7 | 1076.50 | 1055.50 | 1025.00 | 7 | 1096.00 | 1074.00 | 1043.50 | 7 | 1114.00 | 1092.00 | 1060.50 |
| 8 | 1131.00 | 1108.50 | 1077.00 | 8 | 1155.00 | 1132.00 | 1099.50 | 8 | 1177.00 | 1153.50 | 1120.50 |
| 9 | 1188.50 | 1164.50 | 1131.50 | 9 | 1217.00 | 1192.50 | 1158.50 | 9 | 1243.50 | 1219.00 | 1184.00 |
| 10 | 1248.50 | 1223.50 | 1188.50 | 10 | 1282.00 | 1256.50 | 1220.50 | 10 | 1314.00 | 1287.50 | 1251.00 |
| 11 | 1311.50 | 1285.50 | 1248.50 | 11 | 1351.00 | 1324.00 | 1286.00 | 11 | 1388.00 | 1360.50 | 1321.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Job Titles | Time in Title |
|---|---|---|---|---|
| 121 | 120 | 119 | Headend Technician | 18 |

^ Amounts may increase due to COLA listed in Section C1.

APPENDIX C

## Wage Schedule 30
### TIME INTERVAL BETWEEN STEPS - 6 MONTHS

| | Effective April 2009 | | | | | Effective April 2010 | | | | | Effective April 2011^ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada | Step# | Zone E | Zone F | Zone G | Nevada |
| 1 | 481.50 | 472.00 | 460.00 | 450.50 | 1 | 481.50 | 472.00 | 460.00 | 450.50 | 1 | 481.50 | 472.00 | 460.00 | 450.50 |
| 2 | 537.00 | 526.50 | 513.00 | 502.50 | 2 | 538.50 | 528.00 | 514.50 | 504.00 | 2 | 540.00 | 529.50 | 516.00 | 505.50 |
| 3 | 598.50 | 587.00 | 572.00 | 560.50 | 3 | 602.00 | 590.50 | 575.50 | 564.00 | 3 | 605.50 | 593.50 | 578.50 | 567.00 |
| 4 | 667.50 | 654.50 | 638.00 | 625.00 | 4 | 673.50 | 660.50 | 643.50 | 631.00 | 4 | 679.00 | 666.00 | 649.00 | 636.00 |
| 5 | 744.00 | 730.00 | 711.50 | 697.50 | 5 | 753.00 | 738.50 | 720.00 | 705.50 | 5 | 761.50 | 746.50 | 728.00 | 713.50 |
| 6 | 830.00 | 814.00 | 793.50 | 778.00 | 6 | 842.00 | 826.00 | 805.00 | 789.50 | 6 | 853.50 | 837.50 | 816.50 | 800.00 |
| 7 | 925.00 | 907.50 | 885.00 | 867.50 | 7 | 942.00 | 924.00 | 900.50 | 883.00 | 7 | 957.50 | 939.00 | 915.50 | 897.50 |
| 8 | 1031.50 | 1012.00 | 986.50 | 967.50 | 8 | 1053.00 | 1033.00 | 1007.50 | 988.00 | 8 | 1073.50 | 1053.00 | 1027.00 | 1007.00 |
| 9 | 1150.00 | 1128.50 | 1100.50 | 1079.50 | 9 | 1178.00 | 1155.50 | 1126.50 | 1105.50 | 9 | 1203.50 | 1181.00 | 1151.50 | 1129.50 |
| 10 | 1282.50 | 1258.50 | 1227.00 | 1204.00 | 10 | 1317.00 | 1292.50 | 1260.00 | 1236.50 | 10 | 1349.50 | 1324.50 | 1291.50 | 1267.00 |
| 11 | 1430.00 | 1403.50 | 1368.50 | 1343.00 | 11 | 1473.00 | 1445.50 | 1409.50 | 1383.50 | 11 | 1513.50 | 1485.50 | 1448.50 | 1421.50 |

**Pension Bands:**

| Zone E | Zone F | Zone G | Nevada | Job Titles | Time in Title |
|---|---|---|---|---|---|
| 125 | 124 | 123 | 122 | Antenna Technician | 36 |

^ Amounts may increase due to COLA listed in Section C1.

---

# APPENDIX C

## Section C4
## CLASSIFICATION OF EXCHANGES BY AREA

### Section C4.01
### ZONE E

**SOUTHERN CALIFORNIA**

Beverly Hills
Compton
Culver City
El Segundo
Hawthorne
Inglewood
Lomita
Los Angeles
San Pedro
Torrance

**NORTHERN CALIFORNIA**

Campbell
East Bay
Half Moon Bay
Los Altos
Millbrae
Mountain View
Pacifica
Palo Alto
Redwood City
San Carlos – Belmont
San Francisco
San Jose
San Mateo
South San Francisco
Sunnyvale

### Section C4.02
### ZONE F

**SOUTHERN CALIFORNIA**

Agoura
Alhambra
Anaheim
Arcadia
* Arrowhead
Avalon
Azusa
Brea
Buena Park
Burbank
Canoga Park
Capistrano Valley
Chula Vista
Coronado
Cypress
Del Mar
Diamond Bar
Downey
El Cajon
El Monte
Encinitas
Escondido
Fallbrook
Fullerton
Garden Grove
Glendale
Irvine
La Crescenta
La Jolla
La Mesa
Lancaster
Long Beach
Montebello
National City
Newhall
Newport Beach
North Hollywood
Northridge
Oceanside
Orange
* Palmdale
* Palmdale-FAA Center
* Palmdale-Pearblossom
Pasadena
Placentia
Poway
Ramona
Rancho Bernardo
Rancho Penasquitos
Rancho Santa Fe
Reseda
Saddleback Valley
San Clemente
San Diego
San Marcos
Santa Ana
Santa Clarita Valley
Santa Maria
Santa Monica
Simi
Temecula
Thousand Oaks
Trabuco
Valley Center
Van Nuys
Vista
Whittier
Yorba Linda
* Yermo

*Special Rate Area Treated as Base Rate Area of Exchange.

**Section C4.02**　　　**ZONE F**

NORTHERN CALIFORNIA

| | | |
|---|---|---|
| Antioch | Hayward | Point Reyes |
| Belvedere | Ignacio | Richmond-El Sobrante |
| Bishop Ranch | Lafayette | Rodeo |
| Concord | Livermore | San Martin |
| Corte Madera | Martinez | San Rafael |
| Crockett | Mill Valley | Sausalito |
| Danville | Moraga | Stinson Beach-Bolinas |
| Dublin | Orinda | Walnut Creek |
| East Contra Costa | Pittsburg | |
| Fremont-Newark | Pleasanton | |

**Section C4.03**　　　**ZONE G**

SOUTHERN CALIFORNIA

| | | |
|---|---|---|
| Arlington | Fontana | Rialto |
| Baker | Highland | Riverside |
| Banning | Holtville | San Bernardino |
| Barstow | Indio | Santa Barbara |
| Blythe | Julian | San Ysidro |
| Borrego | Mira Loma | Saticoy |
| Brawley | Moorpark | Twentynine Palms |
| Calexico | *Nipomo* | |
| | Ojai | Ventura |
| Colton | Oxnard | Ventura East |
| Corona | Palm Springs | Victorville |
| El Centro | Pine Valley | Woodcrest |
| Fillmore | Pomona | |

**Section C4.03**　　　**ZONE G**

NORTHERN CALIFORNIA

| | | |
|---|---|---|
| Anderson | Fresno | Portola |
| Angels Camp | Galt | Quincy |
| Aptos | Grass Valley | Red Bluff |
| Arcata | Gridley | Redding |
| Arroyo Grande | Guerneville | Rio Linda |
| Arvin | Hanford | Sacramento |
| Atascadero | Healdsburg | Salinas |
| Atwater | Hollister | San Andreas |
| Auburn | Jackson | San Luis Obispo |
| Bakersfield | King City | St. Helena |
| * Beale Air Force Base | Lakeport | Santa Cruz |
| Calistoga | Lemoore | Santa Rosa |
| *Cambria* | Lincoln | Sebastopol |
| Castroville | Lockeford | Selma |
| * Camino-Pollock Pines | Lodi | *Shingle Springs* |
| Carmel | Los Banos | Sonoma |
| *Cayucos* | Lower Lake | Sonora |
| * Central Valley | Madera | South Placer |
| Chico | Marysville | South Tahoe |
| Chowchilla | Merced | Stockton |
| Cloverdale | Middletown | Susanville |
| Clovis | Modesto | Taft |
| Coalinga | Mojave | Tehachapi |
| | * Mojave Switching | |
| Corning | Center | Tracy |
| Cottonwood | Monterey | Truckee |
| Davis | Morro Bay | Tulare |
| Delano | Mt. Shasta | Turlock |
| Dinuba | Napa | Ukiah |
| Dixon | *Nevada City* | Vacaville |
| Downieville | Newman | Vallejo |
| Dunnigan | Nimbus (Aero-Jet) | Visalia |
| Dunsmuir | *Nipomo* | Wasco |
| Edwards | North Tahoe | Watsonville |
| Elk | Oakdale | Weed |
| Eureka | Orland | *Wheatland* |
| Fairfield-Suisun | Oroville | Willits |
| Fair Oaks | Paradise | Willows |
| Felton | Paso Robles | Windsor |
| Firebaugh | Petaluma | Woodland |
| Folsom | Placerville | Yosemite |
| Forestville | Point Arena | Yountville |
| Fort Bragg | Porterville | Yreka |
| Fortuna | | |

* Special Rate Area treated as Base Rate Area of Exchange

**Section C4.04     NEVADA**

| | | |
|---|---|---|
| Austin | Empire/Gerlach | Pahrump |
| Battle Mountain | Fernley | Reno |
| Beatty | Hawthorne | Schurz |
| Carson City | Indian Springs | Tonopah |
| Crystal Bay | Las Vegas | Virginia City |
| Elko | Lovelock | Winnemucca |
| Ely | Orovada | |

**Section C5     INTENTIONALLY LEFT BLANK**

**Section C6     PENSION TABLE REVISIONS**

The following monthly pension benefit amounts will be effective for those persons retiring on or after January 1, 2010, January 1, 2011 and January 1, 2012*:

| Pension Band Number | For Retirements on or after January 1, 2010 | For Retirements on or after January 1, 2011 | For Retirements on or after January 1, 2012* |
|---|---|---|---|
| 104 | $41.68 | $42.51 | $43.36 |
| 105 | $43.22 | $44.08 | $44.96 |
| 106 | $44.81 | $45.71 | $46.62 |
| 107 | $46.41 | $47.34 | $48.29 |
| 108 | $47.91 | $48.87 | $49.85 |
| 109 | $49.50 | $50.49 | $51.50 |
| 110 | $51.06 | $52.08 | $53.12 |
| 111 | $52.64 | $53.69 | $54.76 |
| 112 | $54.14 | $55.22 | $56.32 |
| 113 | $55.74 | $56.85 | $57.99 |
| 114 | $57.27 | $58.42 | $59.59 |
| 115 | $58.85 | $60.03 | $61.23 |
| 116 | $60.42 | $61.63 | $62.86 |
| 117 | $61.95 | $63.19 | $64.45 |
| 118 | $63.55 | $64.82 | $66.12 |
| 119 | $65.11 | $66.41 | $67.74 |
| 120 | $66.63 | $67.96 | $69.32 |
| 121 | $68.20 | $69.56 | $70.95 |
| 122 | $69.76 | $71.16 | $72.58 |
| 123 | $71.34 | $72.77 | $74.23 |
| 124 | $72.89 | $74.35 | $75.84 |
| 125 | $74.49 | $75.98 | $77.50 |

*\* Plus the applicable COLA adjustment made to wages (April 3, 2011)*

Sample Pension Computation

Note:     Refer to your Summary Plan Description for a full description of how a pension is computed, including the supplemental pension, early retirement discount, survivor annuity option, etc.

The basic monthly pension is computed as your service credit multiplied by the monthly benefit amount (above) for your pension band.

You will find the pension band for your job and wage schedule in the Wage Schedule Tables of the Contract.

*For example, if an employee with a wage schedule assigned pension band 114 retired in January, 2010, with thirty (30) years of service, the pension would be 30 x $57.27 = $1,718.10 per month.*

**Section C7     EVENING, NIGHT AND EARLY MORNING DIFFERENTIALS**

A.     APPLICABLE FOR WAGE SCHEDULES WS3 AND WS5

1.     Evening and Night Differentials

| TOURS ENDING | LENGTH OF TOUR | % DAILY DIFFER. |
|---|---|---|
| 6:30 P.M. | 7 1/2 HRS. | 1.0% |
| 6:31 P.M. TO 7:00PM | 7-1/2 HRS. | 2.5% |
| 7:01 P.M. TO 7:59PM | 7-1/2 HRS. | 2.5% |
| 8:00 P.M. TO 8:59PM | 7 HRS. | 2.0% |
| 9:00 P.M. TO 10:00 P.M. | 7 HRS. | 2.0% |
| 10:01 P.M. TO 11:00 P.M. | 6 HRS. | 1.0% |
| 11:01 P.M. TO 12 MID. | 6 HRS. | 1.0% |
| 12:01 A.M. TO 1:00 A.M. | 6 HRS. | 1.0% |
| 1:01 A.M. TO 2:00 A.M. | 6 HRS. | 1.5% |
| 2:01 A.M. TO 3:00 A.M. | 6 HRS. | 2.0% |
| ALL-NIGHT TOURS | 7 HRS. | 3.0% |

TO BE ADMINISTERED AS PROVIDED IN APPENDIX A, SECTION A3.

2.     Early Morning Differential

| TOURS BEGINNING | LENGTH OF TOUR | % DAILY DIFFER. |
|---|---|---|
| 5:00 A.M. TO 5:59 A.M. | 7-1/2 HRS. | 2.0% |

## Section C8     WAGE ADMINISTRATIVE PRACTICE

## Section C8.01     GENERAL

A.   The following definitions will apply to this practice:

1.   A Change of Assignment is a change from one title classification to a different title classification.

To determine whether an employee's change of assignment is to a lower, equal or higher-rated schedule, compare the top rate of employee's former schedule with the top rate of the schedule to which the employee is being assigned. When comparing top rates, include any applicable job (not shift) differential, except a relief differential.

2.   Steps - are a specified number of six month intervals on a schedule. Steps are associated with specific wage rates. We currently have 9 and 11 step schedules.

3.   Elapsed Time - is the time an employee has accumulated or should be credited with on a step.

4.   Total Schedule Time or Wage Experience Credit is determined by combining the number of months corresponding to the employee's current step, and the elapsed time on that step.

B.   The following rules should apply to all moves between schedules, whether to lower, equal or higher rated schedules:

1.   When the change of assignment occurs on the same date on which a scheduled increase is due, both increases shall be effective on that date but the scheduled increase shall be considered as preceding any applicable promotional increase.

2.   When the change of assignment is to a schedule in a different wage area, the employee shall first be placed on the former schedule in the new wage area with the same total schedule time. Movement to the new schedule will then be according to the rules outlined in Sections C8.02, C8.03, C8.04, C8.05, or C8.06 which follow.

3.   In no case shall the new wage rate exceed the top rate of the schedule to which the employee is assigned.

4.   In no case shall any employee lose Total Schedule Time or Wage Experience Credit with exception of the limitation STEP FROM MAXIMUM.

## Section C8.02     CHANGES OF ASSIGNMENT TO A HIGHER-RATED SCHEDULE

Compare the rate associated with the employee's step on the lower-rated schedule, including any applicable job differential (except a relief differential), with the rate associated on the new schedule as determined by allowing the employee full Wage Experience Credit in progression or at maximum on the old wage schedule. The employee shall then be placed on the new wage schedule according to the following rules:

A.   If the wage rate on the new schedule is equal to or lower than the rate on the lower-rated schedule, the employee shall be placed on the step of the new schedule having the rate nearest to but not less than the employee's existing rate.

B.   If the rate on the new wage schedule is higher than the rate on the lower- rated schedule, the employee shall be placed on the new schedule allowing full Wage Experience Credit in progression, or at maximum from the old schedule.

C.   The employee shall be placed on the step on the new wage schedule, as determined by the comparisons made in paragraphs A. and B. preceding, but not to exceed the step down from maximum of the new schedule as listed following paragraph D, except as provided in Article 4, Section 4.01B2.

D.   To determine the time interval to the next progression increase on the schedule to which assigned, credit shall be allowed for the employee's elapsed time on the step of the lower-rated schedule, both in progression or at maximum WITH THE EXCEPTION of any movement involving a limitation on the step from maximum. In such cases, no credit shall be allowed towards the next progression increase.

UPGRADE TO:

(LIMITATION)
STEP FROM MAXIMUM - 12 MONTHS

| | |
|---|---|
| Antenna Technician | Equipment Installation Technician |
| Building Specialist | Equipment Specialist |
| Combination Technician | Headend Technician |
| Communications Technician | Production Representative |
| Company Telecommunications | Splicing Technician |
| Technician | Systems Technician |
| Copy Service Artist | Systems Technician - Data Comm. |
| ENOC Technician | Testing Technician |

(LIMITATION)
## STEP FROM MAXIMUM - 6 MONTHS

| | |
|---|---|
| Accounting Associate | Field Job Administrator |
| Accounting Specialist | Garage Mechanic |
| Analyst | Maintenance Administrator |
| Assignment Administrator | *Maintenance Administrator - Bilingual* |
| Building Mechanic | Maintenance Notification Associate |
| Cable Locator | Medical Assistant |
| Collection Representative | Network Maintenance Specialist |
| Collection Representative - Bilingual | Operations Administrator |
| Collector | Operations Specialist |
| Computer Operator | Order Writer |
| Customer Representative | Outside Plant Technician |
| Customer Representative – Bilingual | Provisioning Specialist |
| Customer Service Technician | RCMA Administrator |
| Data Administrator | *Sales Consultant* |
| Data Specialist | *Sales Consultant - Bilingual* |
| Driver | Sales and Service Representative - Bilingual |
| Engineering Administrator | Service Representative |
| Engineering Assistant | Services Technician |
| Engineering Cost Associate | Supervisor's Assistant |
| Facilities Administrator | Supply Service Attendant |
| *Facilities Specialist* | Supply Specialist-Nevada |
| Facilities Technician | |
| FACS Administrator | |

(LIMITATION)
## STEP FROM MAXIMUM - 0 MONTHS

| | |
|---|---|
| Administrative Clerk | Office Associate |
| Cashier | Operator |
| Central Office Associate | Reports Associate |
| Customer Associate | Service Assistant |
| Customer Service Associate | Service Assistant – Bilingual |
| Data Entry Associate | Services Specialist |
| Garage Attendant | Staff Associate |
| HR Operations Associate | Translations Operator |
| Information Processor | Video Installer |
| Messenger (Motorized) | Warehouse Supplies Attendant |

## Section C8.03    EXCEPTIONS TO THE LIMITATIONS IN SECTION C8.02

A.    Moves from one title to another title having the same twelve (12) months or six (6) months limitation shall be at full wage experience credit.

B.    Moves between Wage Schedule WS11 and WS12 shall be at full wage experience credit.

C.    Moves between the following titles shall be at full wage experience credit:

Building Mechanic
Building Specialist
Collector
Copy Service Artist
Driver
Equipment Specialist
Facilities Technician
Garage Attendant

D.    Moves to a higher-rated schedule resulting in a decrease in the employee's wage rate under the procedures outlined in Section C8.02 above shall be made as follows:

The employees shall instead be placed on the step of the new schedule having the rate nearest to, but not less than, the existing rate (step from maximum limitations will not apply).

E.    Changes of assignment to a previously held title shall be at full wage experience credit.

F.    Moves as a result of an OJE (Article 4).

## Section C8.04    CHANGES OF ASSIGNMENT BETWEEN SCHEDULES WITH THE SAME TOP RATE

A.    Changes of Assignment Between Schedules of the Same Length:

Compare the rate associated with the employee's step on the old wage schedule with the same step on the new wage schedule.

1.    If the rate on the new schedule is the same or higher than the rate on the old schedule, the employee shall be placed on the step of the new schedule by allowing full Wage Experience Credit. To determine the time interval to the next progression increase, credit shall be allowed for the employee's elapsed time on the step of the old schedule.

2.    If the rate on the new schedule is lower than the rate on the old schedule, the employee shall be placed on the step of the new schedule having the rate nearest to but not less than the employee's existing rate. To determine the time interval to the next progression increase, no credit shall be allowed for the employee's elapsed time on the step of the old schedule.

B.    Changes of Assignment From a Shorter to a Longer Wage Schedule:

The employee shall be placed on the step of the new schedule having the rate nearest to, but not less than the employee's existing rate. To determine the time interval to the next progression increase, no credit shall be allowed for the employee's elapsed time on the step of the old schedule.

C.    Changes of Assignment From a Longer to a Shorter Wage Schedule:

The employee shall be placed on the step of the new schedule that the employee was administered on the former schedule. To determine the time interval to the next progression increase, credit shall be allowed for the employee's elapsed time on the step of old schedule.

## Section C8.05   CHANGES OF ASSIGNMENT TO A LOWER-RATED SCHEDULE

On all changes of assignment to a lower-rated schedule, the employee shall be placed on the same step on the lower-rated schedule that the employee was administered on the former schedule. To determine the time interval to the next progression increase, credit shall be allowed for the employee's elapsed time on the step of the former schedule.

## Section C8.06   RETREATS

Anytime an employee moves to another job and subsequently retreats to the former job within six (6) months; for wage purposes the employee will be treated as though he or she never left the job.

## APPENDIX D

*Section D1*

*The working conditions in this Section apply to SBC Global Services, Inc. (California/Nevada) employees who are represented by the Communications Workers of America in the following titles:*

| Associate Field Service Representative |
| --- |
| Field Service Representative |
| Senior Field Service Representative |

*These titles will be administered in accordance with the provisions of the current collective bargaining agreement between Pacific Bell Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc., AT&T Video Services, Inc., and SBC Global Services, Inc. and the Communications Workers of America except as modified below or as noted in this agreement.*

*Section D2*          COMPANY-UNION RELATIONS

*The provisions of Article 3 will not apply except for the following Sections:*

| | |
| --- | --- |
| 3.01 | *GENERAL STATEMENT* |
| 3.02A | *MEETINGS BETWEEN UNION AND MANAGEMENT REPRESENTATIVES* |
| 3.04 | *COLLECTIVE BARGAINING MEETINGS BETWEEN UNION AND MANAGEMENT REPRESENTATIVES* |
| 3.05 | *UNION ACTIVITIES ON THE COMPANIES' PREMISES* |
| 3.06 | *BULLETIN BOARDS* |
| 3.07 | *UNION SECURITY* |
| 3.08 | *PAYROLL DEDUCTION OF UNION DUES* |
| 3.09 | *NON-DISCRIMINATION* |
| 3.10 | *FEDERAL OR STATE LAWS* |

*In addition the following will apply:*

*Section D2.01*          UNPAID UNION TIME

Union representatives shall be excused from their work assignments without pay to perform Union activities subject to the following:

A.    The Union recognizes that service requirements, as determined by the Company must be taken into consideration in excusing Union representatives from work to perform Union activities.

APPENDIX D

B. Except for unusual circumstances, Union representatives shall give at least one (1) week notice, prior to the requested time off for Union activities.

C. Time off for Union activities will be limited to two (2) consecutive weeks or two hundred (200) hours per calendar year, per Union representative, except to engage in formal negotiations for subsequent collective bargaining agreements.

D. Time off for Union activities shall not be deducted from the employee's seniority.

## Section D2.02    PAID UNION TIME

If attendance at any meeting or the performance of any Union activity is at the Company's request, the time involved shall be excused with pay at the straight time rate, subject to the following provisions:

A. Pay shall be allowed only if the employee has been excused from duty in advance by the employee's supervisor to attend the meeting or perform the Union activity.

B. The meeting pertains to matters relating to employees of the Company represented by the Communications Workers of America.

C. Paid time is limited to the actual meeting time, and will be paid at the straight time, not to exceed eight (8) hours of pay.

D. Under no circumstance, will an overtime rate be paid to employees as a result of attending a meeting with management or performing Union activities under this Section.

*The following Articles and Appendices of the current collective bargaining agreement between Pacific Bell Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc., AT&T Video Services, Inc., and SBC Global Services, Inc. and the Communications Workers of America will not apply:*

| | |
|---|---|
| *ARTICLE 2* | *FORCE ALLOCATION* |
| *ARTICLE 4* | *JOB TITLES AND CLASSIFICATIONS* |
| *ARTICLE 5* | *WORK ADMINISTRATION, COMPENSATION AND SPECIAL PAYMENTS* |
| *ARTICLE 6* | *TIME OFF* |
| *ARTICLE 7* | *PROBLEM RESOLUTIONS PROCEDURES* |
| *ARTICLE 8* | *LAYOFFS* |
| *ARTICLE 9* | *OCCUPATIONAL SAFETY AND HEALTH* |
| *APPENDIX A* | *WORKING CONDITIONS* |
| *APPENDIX B* | *PACIFIC BELL HOME ENTERTAINMENT* |
| *APPENDIX C* | *COMPENSATION, TRANSFER AND UPGRADES* |
| *APPENDIX E* | |

*The following provisions will apply:*

### Section D3    CLASSIFICATION OF EMPLOYEES

For the purposes of this agreement, all employees hired after the effective date of this agreement, unless otherwise specified by management, will be probationary. Employees will remain probationary for twelve (12) months. Probationary employees may be terminated at any time for any reason during the 12-month period.

Term employees are employees whose employment is for a designated period of time, to be determined by the Company, not to exceed three (3) years. Term employees may be terminated at any time for any reason during their term of employment.

### Section D4    SENIORITY

**Section D4.01**    Seniority as used in this agreement shall mean Net Credited Service (NCS) with the Company as determined by the Benefit Plan Committee.

**Section D4.02**    If more than one (1) employee has the same Seniority date, the employee whose last four Social Security Number digits comprise the larger number will be treated as if he/she were more senior. If two (2) employees with the same NCS date, also have the same last four (4) Social Security Number digits, revert to the middle two (2) digits of the Social Security Number to determine the most senior employee, with the higher number treated as most senior.

## D5 TIME OFF

### Section D5.01     PAID HOLIDAYS

Seven (7) paid holidays ("Recognized Holidays") shall be observed as follows:

> New Year's Day
> Memorial Day
> Independence Day
> Labor Day
> Thanksgiving Day
> Day After Thanksgiving
> Christmas Day

If a Recognized Holiday falls on a Saturday or Sunday, the Company will designate the Friday preceding the Recognized Holiday or the succeeding Monday to be observed as the Recognized Holiday, or, designate the holiday as a floating holiday in advance. If so designated, the floating holiday will be taken on the day of the employee's choice on any day after the Recognized Holiday.

Holiday shifts are shifts starting on the Recognized Holiday or, if per the preceding paragraph, a different day is designated, on that designated day.

Employees who are regularly dedicated to a customer site may observe holidays that are different from those identified above, as determined by the Company. In no case will an employee be eligible for more than or less than seven (7) paid holidays in a calendar year.

Employees will be paid for the Recognized Holiday provided that they work all of their scheduled hours immediately before and after the Recognized Holiday or are excused by management. Employees who are unable to work due to illness for any portion of their scheduled hours immediately before or after the Recognized Holiday are not excused by management for the purposes of the holiday payment specified in this Section subject to the following:

     A.    The day before a holiday:

         1.    An employee, who reports out, for any reason including sickness, and who subsequently comes to work and works a minimum of half of his/her scheduled hours may be considered excused by management for the purposes of the holiday payment specified in this Section.

     B.    The day after a holiday:

         1.    An employee, who reports to work at the start of his/her scheduled hours and works a minimum of half of his/her scheduled hours and who then reports out, for any reason including sickness, may be considered excused by management for the purposes of the holiday payment specified in this Section.

### Section D5.02     WORKING ON A HOLIDAY

Employees who work on a holiday will not be given a day off to be taken at a later date. Employees who work on a holiday will be paid eight (8) hours at straight time for the holiday and at time and one half (1 ½) for each hour worked on the holiday.

### Section D5.03     HOLIDAYS DURING A VACATION WEEK

When a holiday falls during a week in which an employee is on vacation, the day will be treated as a holiday, not as a day of vacation.

### Section D5.04     VACATION YEAR

The year in which vacation and Personal Days Off may be taken shall be known as the "vacation year." The vacation year is defined as a period of time beginning December 31st and ending on December 30th of the following year. Employees must be active on the payroll (not on a leave of absence or on disability) and must physically report to work for at least one (1) day in the vacation year to be eligible for vacation and Personal Days Off.

However, an employee may be granted vacation for which they are otherwise eligible in a vacation year without performing any work for the Company in that year provided they are not on a leave of absence or disability and such vacation is contiguous to and continues with their vacation for the preceding year; or such vacation begins during the first seven (7) days of the vacation year.

### Section D5.05     VACATION ELIGIBILITY

Employees shall be eligible for vacation, based on their Net Credited Service (NCS) with the Company, as follows:

     A.    One (1) week of vacation upon completion of six (6) months of service.

     B.    Two (2) weeks of vacation upon completion of twelve (12) months of service. This provision cannot be combined with the above to result in more than two (2) weeks of vacation entitlement in the same vacation year.

C.    Three (3) weeks of vacation to any employee who could complete seven (7) years of service or more but less than fifteen (15) years of service within the vacation year.

D.    Four (4) weeks of vacation to any employee who could complete fifteen (15) years of service or more but less than twenty-five (25) years of service within the vacation year.

E.    Five (5) weeks of vacation to any employee who could complete twenty-five (25) years of service or more within the vacation year.

Vacation pay is based on the employee's basic wage rate plus shift differential for those employees who received the differential for two (2) full calendar weeks or more immediately prior to the beginning of his/her vacation period.

## Section D5.06    VACATION SELECTION

The Company shall determine the periods available for the selection and the number of employees allowed off on Vacation. The scheduling of vacation will be in seniority order within individual work groups, as determined by the Company. It is the intent of the parties that employees' selections will be granted to the extent practicable consistent with force requirements and the needs of the service. Employees may schedule their vacation in full weeks and on a day-at-a-time basis during the vacation selection process.

Employees must schedule and take all of their vacation time during the current vacation year. In order to accomplish the above, the Company may, at its discretion, place employees on vacation and require them to take vacation at a specified time.

Those employees who do not take all of their allotted vacation during the vacation year for any reason and who work in a new vacation year must take such unused vacation within sixty (60) days of their first day of work in the new vacation year or prior to December 30 of the new vacation year, whichever is sooner.

## Section D5.07    PERSONAL DAYS OFF

Employees are allowed flexibility through the use of Personal Days Off to be off work with pay, subject to approval by management.

Each employee who has completed six (6) months of service will be eligible for seven (7) paid Personal Days Off each vacation year.

The Company may at its discretion require employees to take a Personal Day Off at a specified time. The number of Personal Days Off that management may place employees on, is limited to not more than one (1) in each vacation year except as specified in Section D5.08.

160

## Section D5.08    SELECTION OF PERSONAL DAYS OFF

All Personal Days Off shall be selected based on seniority within a workgroup as determined by the Company. Employees may be permitted to take all of their Personal Days Off in two (2) hour increments. The Company shall determine periods available for selection and the number of employees allowed off on Personal Days Off.

All employees must schedule and take all of their Personal Days Off during the current vacation year. In order to accomplish the above, beginning September 1st of each year, the Company may, at its discretion, place employees on Personal Days Off and require them to take a Personal Day Off at a specified time.

Those employees who do not take all of their allotted PDO's during the vacation year for any reason and who work in a new vacation year must take such unused PDO's within sixty (60) days of their first day of work in the new vacation year or prior to December 30 of the new vacation year, whichever is sooner.

## Section D5.09    CIVIC DUTY

Employees must give their supervisor advance notice when they are requested to appear for jury duty. For employees having one (1) or more years of NCS, time off to comply with a summons for obligatory jury duty will be paid subject to court verification. The Company will grant unpaid time off for jury duty for employees having less than one year of NCS and for other court ordered processes. Employees are expected to notify their supervisors as soon as possible of the need for time off to comply with any court order.

When jury duty or other court ordered appearances end at a reasonable time before the end of an employee's scheduled working hours, an employee who would be working except for jury duty or other court ordered appearances will return to work unless the employee has been excused, in advance, by his/her supervisor.

## Section D5.10    DEATH IN AN EMPLOYEE'S IMMEDIATE FAMILY/ HOUSEHOLD

Employees will be granted up to three (3) paid days of excused time off due to a death in an employee's immediate family or death of other persons living in the same household. Immediate family includes the employee's parents, stepparents, adoptive parents, children, stepchildren, adoptive children, brothers, stepbrothers, sisters, stepsisters, husband or wife, grandparents, grandchildren, mother-in-law or father-in-law, domestic partner, domestic partner's children, domestic partner's mother, or domestic partner's father. An additional 2 days of unpaid excused time off will be granted where round-trip travel exceeds 500 miles from the employee's home.

161

If more time off is needed, an employee may request vacation time or unpaid time off, all of which is dependent on the needs of the business. In all cases, supervisory approval is required.

### Section D5.11    ILLNESS ABSENCE

Employees having one (1) or more years of NCS shall be paid at the basic wage rate for illness absence on scheduled workdays, up to a maximum of five (5) paid illness absence days (maximum 40 paid illness absence hours) per calendar year. Employees must notify their supervisor before their scheduled start time that they will be absent from work due to illness.

### Section D5.12    EXCUSED TIME REQUIRED BY LAW

Employees will be granted other excused time off (paid or unpaid) as required by applicable State and/or Federal laws.

### Section D6    WORKING CONDITIONS

### Section D6.01    WORK SCHEDULES

The Company will determine employee work schedules. An employee's scheduled work hours may start at any time of the day, on any day of the week and may be spread over any six (6) days of the week. Work schedules will cover a minimum period of one week and are subject to change by the Company. The Company will endeavor to provide forty-eight (48) hours notice to the employee of a change in work schedule. The Company will also endeavor to meet and confer with the Union regarding a change in an employee's schedule that will result in a 6-day or a split workday work schedule. However, any change in schedule shall continue to be at the Company's discretion.

### Section D6.02    SPLIT WORK DAYS

The Company may schedule employees to work a split workday. A split workday is a divided workday, with hours off in between.

### Section D6.03    CHANGE/CANCELLATION OF HOURS

Employees will be treated in accordance with applicable Federal and/or State Laws when the Company cancels or changes scheduled work hours.

### Section D6.04    OVERTIME

Employees may be required to work overtime subject to the needs of the business. Employees scheduled to work overtime will be paid in accordance with applicable Federal and/or State Laws.

### Section D6.05    SHIFT DIFFERENTIALS

Employees who are assigned to work 50% or more of their normally scheduled workday between the hours of 7:01 p.m. and 6:59 a.m. will receive a differential equal to 10% of their basic hourly wage rate for all hours worked. This differential, as outlined above, will also be applied to overtime hours worked in conjunction with such scheduled hours.

Shift differentials will be included in the employee's rate of pay for purposes of computing payments during periods of vacation, holidays, and other absences with pay, provided that the employee received the differential for two (2) full calendar weeks or more immediately prior to the beginning of his/her vacation period, holiday or other absence with pay.

### Section D6.06    SUNDAY PREMIUM PAYMENTS

Time worked on Sunday shall be paid for at the rate of one and one-half (1-1/2) hours' pay for each hour worked. Sunday tours/shifts are tours/shifts starting on Sunday.

### Section D6.07    MEAL PERIODS

Unpaid meal periods will normally be scheduled for thirty (30), forty-five (45) or sixty (60) minutes, as determined by the Company.

### Section D6.08    REST PERIODS

Rest periods will be assigned in accordance with State and/or Federal law; however, they will be fifteen (15) minutes in length.

### Section D6.09    WORKING IN A DIFFERENT TITLE

The assignment of a particular title to an employee does not mean that the employee shall perform only the kind of work coming under his/her title classification, or that certain kinds of work shall be performed exclusively by certain classifications of employees.

In addition, from time to time, management employees may perform some functions of the Senior Field Service Representative. Managers will continue as necessary to perform these functions.

### Section D6.10    TRAVEL AND TEMPORARY WORK LOCATIONS

A.    The Company will either furnish all means of transportation or specify what transportation shall be used for travel on Company business.

B.    Employees who agree to use their personal vehicles for Company business will be reimbursed at the then current IRS reimbursement rate for mileage.

C.   Employees may be assigned to work at a temporary work location. When employees are assigned to work at a temporary work location, the employee will be reimbursed for travel time and transportation expenses to and from the temporary work location in excess of that required for the employee's normal commute. This section does not apply to employees who home garage a Company vehicle pursuant to Section *D6*.14E.

D.   Transportation expenses include, but are not limited to, mileage, bridge toll, parking, airfare, and bus fare.

## Section *D6*.11    OVERNIGHT TRIPS

If the Company determines that overnight travel is required, the employee will be reimbursed for expenses, which are supported by receipts as follows:

A.   Transportation expenses as described in Section *D6*.10
B.   Lodging, approved in advance by the Company
C.   Meals, not to exceed *thirty* dollars ($*30*) per day, unless management approves a higher amount in advance.

## Section *D6*.12    CHANGES TO JOB TITLES

A. Whenever the Company determines it is appropriate to create a new job title or change a job title in *Appendix D*, it shall give advance notice to the Union. The Union may initiate negotiations over wage ranges regarding new job titles.

B. Whenever, during the life of the Contract, the Company determines it appropriate to create a new job title in *Appendix D*, it shall proceed as follows:

1.   The Company will give advance notice to the Union in writing of such new job title and provisional wage range. Notification will include information about the new or changed job title and the assigned provisional wage range. Upon such notification, the Company may proceed to staff such position within the provisional wage range.

2.   The Company agrees to meet with the Union, upon the Union's request, to discuss all aspects, which led to the Company's decision to create the new job title and the assigned provisional wage range.

3.   The Company will conduct a follow-up review to assess whether the provisional wage range remains appropriate. The follow-up review will occur no less than six (6) months after staffing. After the Company's follow-up review is completed, the Company will notify the Union in writing. The notification will include information regarding the wage range.

C.   Within thirty (30) days from the Union's receipt of the notice referred to in Section *D6*.12B3, the Union shall have the right to initiate negotiations concerning the wage range established by the Company.

D.   The parties agree that they shall negotiate for a period of no more than sixty (60) calendar days from the date such negotiations commenced. If no agreement is reached within the sixty (60) calendar days, the Union may elect to submit the issue to a Neutral Third Party for resolution. The Union will notify the Company in writing of its intent to submit the issue to a Neutral Third Party within thirty (30) calendar days from the conclusion of the negotiations. If the Company does not receive written notification within the thirty (30) calendar day period referred to above, the matter shall be considered settled in the Company's favor.

E.   All the time limits in Section *D6*.12 may be extended by mutual agreement.

F.   If the parties reach an agreement, such agreement on the wage range shall be applied retroactively to the day of establishment of the new job title and wage range.

G.   The Neutral Third Party referred to above shall be selected from the panel of arbitrators referred to in Section *D11*.07 of this agreement.

1.   The Neutral Third Party will render a written decision within fifteen (15) working days after the hearing.

2.   The Neutral Third Party is empowered to decide only whether the wage rate assigned by the Company or the wage rate requested by the Union is the appropriate rate.

3.   The Neutral Third Party shall have no authority to add to, subtract from, or modify any provisions of this Agreement.

4.   The Neutral Third Party's decision shall be applied retroactively to the day of the establishment of the new job title and wage rate.

H.   The procedures set forth in Section *D6*.12 shall be the exclusive means by which the Union may dispute the wage range set by the Company.

### Section *D6*.13          STANDBY

Employees who are assigned standby duty will be paid $105 for each week of such assignment. This assignment will begin on Friday at 5:01 p.m. and continue for seven (7) consecutive days ending on the following Friday at 5:00 p.m. This payment shall be in addition to any applicable compensation for such duty. Management will assign the standby duty amongst those qualified employees by seniority on a rotational basis. Separate standby assignments may be scheduled for on-site customer employees, as determined by the Company.

Following the selection processes identified in Sections *D5*.06 and *D5*.08, employees who have prescheduled and approved vacation and Personal Days Off will not be subsequently assigned standby duty in conflict with that prescheduled and approved vacation and Personal Days Off.

Employees who are called for work, which requires their immediate services, shall be compensated at the employee's applicable rate of pay:

A.   From the time the employees leave their home to report to work until their return to their residence or,

B.   from the time the employees begin work remotely and complete their work or, if applicable, until their return to their residence.

Time spent on Standby, exclusive of call-outs, will not be considered as time worked.

Standby pay amounts will not enter into computations of any payments under the Company plans for Pension, Disability Benefits, Savings and Death Benefits or any other benefits or differentials.

### Section *D6*.14          HOME GARAGING

A.   At the Company's discretion, certain employees who use a Company vehicle may be required to take the Company vehicle home as part of their normal job responsibilities.

B.   Employees who home garage Company vehicles will be expected to provide normally secure and legal storage of the vehicle at the employee's residence.

C.   Operating and maintenance costs will be at the Company's expense. The employee is responsible for adhering to preventative maintenance and vehicle inspection schedules and arranging for any necessary work to be done in accordance with Company procedures.

D.   The vehicle is to be used solely for Company business and travel between the employee's residence and his/her work location. Only properly authorized persons may ride in or operate the vehicle. Personal use of the vehicle is prohibited.

E.   The normal commute spent driving in each direction (i.e. reporting to the first work location and commuting home from the last work location) for employees who home garage a Company vehicle is considered to be a minimum of sixty (60) minutes and will not be considered as time worked for pay treatment purposes.

However, time spent in excess of 60 minutes commuting in each direction will be considered as time worked for pay treatment purposes.

Employees who home garage a Company vehicle and arrive at their first work site before 60 minutes have passed from leaving their home will be paid from when they begin work at their first work location.

F.   The Company will indemnify and hold harmless from liability, employees who are determined to be liable to others as result of simple negligence when using a Company vehicle that is "home garaged" in the course and scope of their employment.

G.   Local Union Representatives may meet with employees for 30 (thirty) minutes every quarter; such time and location will be arranged and approved by management in advance of such meeting date.

### Section *D6*.15          FOUR DAY WORKWEEK/OTHER ALTERNATIVE WORK SCHEDULES

In certain instances, due to customer requirements, the Company may, in the future, need to establish alternative work schedules which may include, but is not limited to, a four day workweek.

### *Section D7*          COMPENSATION

### Section *D7*.01          ELIGIBILITY

All employees with twelve (12) months of service who are active on the payroll (not on disability or a leave of absence) on the effective date of a wage increase may be eligible for a wage increase.

However, employees will be ineligible for a wage increase if during the performance year their year-end performance review was unsatisfactory.

Employees, who on the effective date of the wage increase, are on disability or a leave of absence, if otherwise eligible, will receive a wage increase effective on their return to work date.

**Section D7.02      WEEKLY WAGES**

| Wage Range | Effective April 5, 2009 | | Effective April 4, 2010 | | Effective April 3, 2011* | |
|---|---|---|---|---|---|---|
| | Minimum | Maximum | Minimum | Maximum | Minimum | Maximum |
| Associate Field Service Representative | $396.00 | $793.00 | $408.00 | $817.00 | $419.00 | $839.00 |
| Field Service Representative | $494.00 | $1,189.00 | $509.00 | $1,225.00 | $523.00 | $1,259.00 |
| Senior Field Service Representative | $593.00 | $1,486.00 | $611.00 | $1,531.00 | $628.00 | $1,573.00 |

\* *Amounts may increase due to COLA listed in D7.03.*
Employees will be hired in at no less than the minimum of the wage range *in effect* for their title, and may be hired at any rate within the wage range *in effect* established for the job title.

Employees will be paid on a bi-weekly basis. Payment of wages for each two-week period will be made no later than the Friday following the end of the pay-period.

**Section D7.03      WAGE INCREASES**

Eligible employees will receive the following percent increases to their weekly wage rate:

| | |
|---|---|
| *April 5, 2009* | *3.00%* |
| *April 4, 2010* | *3.00%* |
| *April 3, 2011\** | *2.75%* |

*\*COLA Increase*

*The amount of the April 3, 2011 adjustment shall be 0.5 times the increase above four percent (4.0%) in the U.S. Department of Labor Bureau of Labor Statistics "CPI-W" (1982-84=100) for December 2010 over December 2009. It will be applied to the scheduled rates in effect in each wage schedule on April 2, 2011.*

**Section D.04      DISCRETIONARY WAGE INCREASES**

Any amount up to an additional five (5) percent increase to an employee's weekly wage rate may be granted to individual employees at the Company's discretion.

**Section D7.05      LUMP SUM WAGE INCREASES**

An increase in Section *D7.03* or *D7.04* that results in a weekly wage rate in excess of the maximum weekly wage rate for any job title will have the excess amount above the maximum paid in one lump sum payment.

**Section D7.06      ADDITIONAL CASH AWARDS**

The Company may provide employees with additional cash awards.

The selection of employees and the amounts of the cash awards will be made at the discretion of management.

**Section D8      FORCE ADJUSTMENT**

**Section D8.01      TRANSFERS**

The Company may in its discretion hire employees off the street or from outside of *Appendix D* to fill vacancies. However, if the Company determines that a vacancy is to be filled from within *Appendix D*, it will post a notice of the vacancy. Regular employees with at least eighteen (18) months of time in title, unless waived by the Company, and who have satisfactory attendance and work performance may apply for the vacancy.

In deciding who will be selected for a vacancy, the Company will determine which regular employee is most qualified to fill the position. The Company will consider an employee's qualifications and where, in the judgment of the Company, an employee's qualifications are equal, it will use seniority. The Company may elect to retreat an employee within the first nine (9) months from the date the employee accepted the position.

If an employee transfers to a position in a higher wage range the employee may receive an increase to their base wage rate in any amount up to an additional five (5) percent. If the additional percent increase does not bring the employees base wage rate up to the minimum of the new wage range, the employee will be paid at the minimum of the wage range for the new position.

**APPENDIX D**

## Section *D8.02*   RELOCATION OF WORK

When work is to be relocated, the Company may, if it deems appropriate, offer the affected employees the opportunity to follow their work to the new location. Employees who elect to follow their work to the new location will be considered as employee-initiated transfers.

## Section *D8.03*   FORCE ADJUSTMENT

Whenever force conditions as determined by the Company are considered to warrant a surplus and the possible layoff of employees, the Company shall notify the Union in writing, prior to notifying the affected employees. Employees will be laid off in a process determined by the Company. The surplus employees designated for layoff will be notified a minimum of two (2) weeks prior to the layoff date, unless otherwise provided by law.

## Section *D8.04*   LAYOFF ALLOWANCE

Regular employees who are laid off will be paid a layoff allowance based on their seniority and their base weekly wage rate in effect at the time of the layoff, in accordance with the following:

| LENGTH OF SERVICE | LAYOFF ALLOWANCE |
|---|---|
| 0 - 12 Months | 1 week of pay |
| 13 - 24 Months | 2 weeks of pay |
| 25 - 47 Months | 3 weeks of pay |
| 48 Months or More | 4 weeks of pay |

## Section *D8.05*   PRIORITY REHIRE

Employees who are laid off with satisfactory attendance and work performance and who apply for re-employment in the same position that they were laid off from will receive priority consideration for re-hire over new applicants for twelve (12) months from his/her layoff date.

## Section *D9*   BENEFIT PLANS

## Section *D9.01*

In the event, during the life of this contract, the Company desires to make any change to the Benefit Plans which would affect the benefits of employees within *Appendix D*, it will, before making any such change, notify the Union and afford the Union a period of sixty (60) calendar days for bargaining, provided, however, that no change may be made in the Plans which would reduce or diminish the benefits provided thereunder, as they may apply to employees within *Appendix D*, without consent of the Union.

## Section *D9.02*   Any claim that Section *D9.01* has been violated may be presented as a grievance and, if not resolved by the parties under their Problem Resolution Process, may be submitted to arbitration pursuant to provisions of *Section D10*. Any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith, and only the question of discrimination or bad faith shall be subject to the grievance procedure and arbitration. However, nothing in this contract shall be construed to subject the Plans or their administration to the grievance or arbitration procedures.

## Section *D9.03*   The sole remedy for issues with respect to questions of whether benefits are due to covered employees, including the amount of any benefits due, is the claim and appeal process as defined in each of the Benefit Plans.

## Section *D9.04*   The agreements between the Company and the Union regarding benefit plans establish the benefits that the Company will provide to employees in *Appendix D*, but are not intended to be plans or plan documents under the Employee Retirement Income Security Act (ERISA).

## Section *D10*   PROBLEM RESOLUTION PROCESS

## Section *D10.01*   To the extent practicable, prior to operational changes that affect the entire work group, the manager will communicate these changes to the appropriate Union representative in advance of such changes.

## Section *D10.02*   All issues or prospective grievances may be taken up informally with the appropriate manager in an effort to resolve the matter. In no case will such an informal attempt to resolve an issue or grievance result in a modification of the time limits for filing a formal grievance, provided for in Section *D10*.04A, below.

## Section *D10.03*   The Company recognizes the right of the Union to investigate the circumstances surrounding any grievance and agrees to cooperate with the Union in any such investigation. Pending final resolution of the grievance, the Company shall not deal directly with the employee on any grievance already filed by the Union, without Union concurrence, but shall deal directly with the Union representative.

## Section *D10*.04    GRIEVANCES

The Company and the Union agree that grievances shall be confined to differences arising out of the interpretation or application of the agreement and disciplinary action for just cause. In the event of such grievances, the following grievance procedures shall be followed:

A.   The Union will submit the grievance in writing within thirty (30) calendar days of the date of occurrence of the action, or within thirty (30) calendar days of the date of discovery of the action by the affected employee, to be considered timely presented. Grievances not presented within the timeframes specified above will not be eligible for processing under the grievance process.

B.   Written submission of the grievance shall include the name of the grievant (if applicable), the Article/Section of the contract alleged to have been violated or the disciplinary action that is at issue, the date of occurrence of the alleged violation/action, sufficient details to set forth the nature of the grievance, and the remedy sought.

C.   All grievances will be submitted by the Union to the employee's immediate supervisor.

D.   The Step I grievance meeting will be held with the above referenced manager and two (2) Union representatives; however, only one (1) Union representative will be paid for attending the grievance meeting. Payment for the one (1) Union representative attending the grievance meeting will be made in accordance with Section *D2*.*02*.

E.   The Step I grievance meeting will be held within fifteen (15) calendar days of the Union's written presentation of the grievance. If the Step I grievance meeting is not held within fifteen (15) calendar days of the Union's written presentation of the grievance and no mutual agreement to extend the timeframe has been reached, the grievance will be considered denied by Management and may be escalated to Step II.

F.   At the conclusion of the Step I grievance meeting, Management will verbally inform the Union of the Company's position and rationale.

G.   The Union must notify the Company's designated representative in writing of its intent to escalate the grievance to Step II within fifteen (15) calendar days following the Step I meeting, or the date the Step I meeting should have been held as stated in Section *D10*.04E. The Union's failure to notify the Company of its intent to escalate the grievance within fifteen (15) calendar days will result in the grievance being considered withdrawn from the grievance procedure.

H.   The Step II grievance meeting will be held with the Company's designated representative and two (2) paid Union representatives. Payment for the Union representatives attending the grievance meeting will be made in accordance with Section *D2*.*02*. Both parties agree all Step II grievance meetings may be held via conference call and/or video conference at the request of either party.

I.   The Step II grievance meeting will be held within fifteen (15) calendar days of receipt of the Union's written notification of its intent to escalate the grievance to Step II. If the Step II grievance meeting is not held within fifteen (15) calendar days of the Union's written presentation of the grievance and no mutual agreement to extend the timeframe has been reached, the grievance will be considered denied by management.

J.   The Company will send the Company's final position in writing to the National Union – District Vice President, or designated representative with a copy to the Local Union, within five (5) calendar days of the Step II grievance meeting.

## Section *D10*.05    ARBITRATION

A.   If the Union is not satisfied with the Company's position at the final meeting in the grievance procedure, the Union may request that the grievance be arbitrated using regular arbitration or, where mutual agreement is reached and the grievance involves disciplinary action, mediation or expedited arbitration.

B.   The National Union will notify the Labor Relations Executive Director, in writing, of its intent to arbitrate the grievance within thirty (30) calendar days of the National Union's receipt of the Company's final position letter as described in Section *D10*.04J above.

C.   If the Union does not notify the Company of its intention to arbitrate the grievance within the time limit stated (30 calendar days), and no mutual agreement to extend the time limit has been reached, the grievance will be considered withdrawn from the grievance process.

D.   In grievances involving disciplinary action, the parties will first consider mediation to resolve the issue. If there is no mutual agreement to mediate, the parties will then consider expedited arbitration. Either party may request regular arbitration. The Company's notification of its intent to arbitrate the grievance will include a request for mediation, expedited arbitration or regular arbitration.

E. The arbitration hearing will be held within six (6) months from the date of the Union's notification in writing of its intent to arbitrate the grievance.

F. If the arbitration request involves a regular or term employee's dismissal, the Company's monetary liability will be limited to back pay and out of pocket medical and dental expenses. Back pay liability and liability for out of pocket medical and dental expenses will not exceed nine (9) months from the date of termination, unless a delay in the processing of the grievance or arbitration was requested by the Company. If the delay in processing of the grievance or arbitration was requested by the Company, then the Company's back pay liability and liability for out of pocket medical and dental expenses will be extended by the amount of the requested delay not to exceed a maximum of twelve (12) months from the date of termination. Any back pay will be reduced by an amount equal to any wages earned in other employment. Employees will be liable to the State of California, Employment Development Department for overpayment of unemployment insurance benefits received since the dismissal date.

G. Grievances regarding discipline and discharge of employees with less than twelve (12) months of service are not eligible for arbitration.

### Section *D10*.06    JUST CAUSE

The Company agrees that no employee shall be disciplined without just cause.

### Section *D10*.07    ARBITRATOR PANEL

The parties shall establish a panel of ten (10) arbitrators, with the Company selecting five (5) and the Union selecting five (5). A sequential rotation will be established and used to assign arbitrators to cases.

### Section *D10*.08    POWER OF THE ARBITRATOR

The arbitrator has no authority to add to, subtract from or otherwise modify the provisions of this agreement. If the arbitrator finds that an employee was dismissed without just cause, the arbitrator will select one of the following options:

A. Reinstate the employee with back pay, out of pocket medical and dental expenses, and Team Award if eligible.

B. Reinstate the employee without back pay.

C. Reinstate the employee with some back pay.

D. No reinstatement, but award the employee a monetary amount equivalent to some or full back pay.

E. In cases involving employees who are dismissed and reinstated, the arbitrator can condition the reinstatement as appropriate, including, but not limited to, one of the following: fitness for duty evaluation, final warning of dismissal, last chance agreement, drug/alcohol testing and rehabilitation.

### Section *D10*.09    ARBITRATOR'S DECISION

Except as provided in Expedited Arbitration, Section *D10*.10, the arbitrator will render a written decision within thirty (30) calendar days from the date the matter is submitted. All decisions will be final and binding on all parties. Prior to the arbitration hearing, the parties may mutually agree in writing that a particular case will be non-precedent setting, otherwise all decisions will constitute a precedent, except those grievances that are arbitrated using the expedited arbitration procedures as described in Section *D10*.10.

### Section *D10*.10    EXPEDITED ARBITRATION

The arbitration hearing will be informal, without the rules of evidence and without a transcript. Each party may submit a short written summary within five (5) working days after the hearing. The arbitrator will render his or her decision within ten (10) working days after the hearing and will provide a written statement of the reasons supporting the decision. Decisions rendered under the Expedited Arbitration procedures will not constitute a precedent and may not be cited in any other proceedings between the parties.

### Section *D10*.11    MEDIATION

A. The parties may agree that a grievance which has been appealed to arbitration in accordance with Section *D10*.05 may be presented at a mediation conference. Such agreement to mediate a grievance will not extend any of the timeframes listed in Section *D10*.05.

B. The mediator will be selected from the panel of arbitrators using the process described in Section *D10*.07.

C. The parties at the mediation conference may accept the resolution proposed by the mediator and such settlement will not be precedent setting for other cases or grievances and may not be cited in any other proceedings between the parties.

D. If no settlement is reached during the mediation conference, the mediator shall provide the parties with an oral advisory opinion, unless both parties agree that no opinion shall be provided. The mediator shall state the grounds for his or her opinion.

APPENDIX D

E. If no settlement is reached at the mediation conference, the grievance will be heard in arbitration in accordance with the provisions in Section *D10*.05. In the event that a grievance that has been mediated is subsequently arbitrated, nothing said or done by the mediator may be referred to at arbitration, including settlement proposals. The mediator cannot serve as the arbitrator in the case.

## Section *D10.12*    ARBITRATION/MEDIATION EXPENSES

The compensation and expenses of the arbitrator/mediator and the general expenses of the arbitration/mediation process shall be borne by the Company and the Union in equal parts. Each party shall bear the expense of its representatives and witnesses.

## Section *D10.13*    *MEMORANDA OF AGREEMENT*

*The following Memoranda of Agreement will apply:*

| SUBJECT | DATE | D MOA Number |
|---|---|---|
| *Benefits* | *4/17/06* | *D04-01* |
| *Joint Committee Problem Resolution* | *4/17/06* | *D04-02* |
| *SBC @ Home Employee Discount Program* | *3/8/04* | *D04-03* |
| *Subcontracting* | *2/23/04* | *D04-04* |
| *Home Garaging and Standby Committees* | *3/18/04* | *D04-05* |
| *Subsidiary Movement* | *3/18/04* | *D04-06* |
| *Benefits* | *3/18/04* | *D04-07* |
| *MOA Concerning Movement of Employees* | *4/27/06* | *D04-08* |
| *No Strike/No Lockout* | *2009* | *D09-04* |

*No other Memoranda of Agreement apply to Appendix D.*

---

## MEMORANDUM OF AGREEMENT

### BENEFITS

Employees will continue to be eligible to participate in the SBC Medical and Group Life Insurance Plan – CustomCare, SBC ConsumerWise 90 Medical Program (collectively "Medical"), SBC CarePlus – A Supplemental Medical Plan ("CarePlus"), SBC Dental Plan ("Dental"), SBC Vision Plan ("Vision"), SBC Flexible Spending Account Plan, SBC Employee Assistance Program, SBC Medical and Group Life Insurance Plan – Group Life Insurance, SBC Supplementary Group Life Insurance Program, SBC Dependent Group Life Insurance Program, SBC Disability Income Plan, SBC Rules for Employee Beneficiary Designations, SBC PAYSOP, SBC Group Long Term Care Insurance Plan, SBC Leave of Absence Policy, and SBC Adoption Reimbursement Program through December 31, 2006, with the same plan terms, conditions and provisions as are in effect on June 25, 2005.

- Effective January 1, 2007, active employees shall begin to receive the same benefits as those received by active employees covered under the 2005 National Internet Contract by and between Communications Workers of America and SBC Internet Services, and successive contracts to the 2005 National Internet Contract, except that active employees will not receive the same benefits as employees covered by the National Internet Contract with respect to the SBC Pension Benefit Plan-Bargained Cash Balance Program and the SBC Savings and Security Plan.

- The March 18, 2004, Memorandum of Agreement between Communications Workers of America and SBC Global Services, Inc. (California and Nevada), attached, shall also continue except as noted below:

    o Active employees will not be eligible to participate in either the SBC National Medical Program or the SBC ConsumerWise 90 Medical Program.

    o HMO option contribution rules will follow those in effect for employees covered under the 2005 National Internet Contract, and successive contracts to the 2005 National Internet Contract.

# MEMORANDUM OF AGREEMENT

## JOINT COMMITTEE PROBLEM RESOLUTION PROCESS

The Company and the Union agree to a six (6) month Joint Problem Resolution trial to discuss issues arising in the workplace not eligible for grievance under Article 15, Section 15.04.

The Committee will be comprised of two (2) representatives from the Union, one of which will be a representative of the National and two (2) representatives from the Company, one of which will be a representative from Labor Relations.

The Committee will meet no fewer than three (3) times during the trial. Additional meetings or fewer meetings may be held by mutual agreement.

The Committee will have no authority to make changes to the collective bargaining agreement but may make recommendations regarding the Problem Resolution Process to the bargainers.

The Company will pay for actual meeting time for the Union Committee Representative not employed by the National Union. All other expenses such as travel time will be borne by the parties.

Either party may cancel this agreement with thirty (30) days notice.

| | |
|---|---|
| Effective date/language: | Following ratification to be determined by the National Union Committee representative and the Labor Relations Committee Representative. |
| Termination date/language: | Six (6) months from the trial start date. |
| Coverage: | SBC Global Services, Inc. (California/Nevada) |

---

# MEMORANDUM OF AGREEMENT
### SBC@Home Employee Discount Program

This Memorandum of Agreement confirms our understanding regarding the SBC@Home Employee Discount Program for CWA represented employees in SBC Global Services, Inc. (California/Nevada).

This program will be offered, effective June 1, 2004, to all eligible employees for their personal use. This program consists of a package of SBC products and services available as discounted prices.

The Company reserves the right to change, amend or cancel this program and/or any parts or terms thereof at its sole discretion.

Termination Date:                    June 25, 2005

| | |
|---|---|
| Communications Workers of America | SBC Global Services, Inc. (California/Nevada) |
| Agreed: _Jim Weitkamp_ Assistant Vice President - District 9 | Agreed: _Sue Zuercher_ Vice President - Labor Relations |
| Date: 3-8-04 | Date: 3/8/04 |



Sue Crutcher
Vice President
Labor Relations

SBC Services, Inc.
2600 Camino Ramon
Room 2W751
San Ramon, CA 94583

925 823 1522 Phone
925 327 2113 Fax
sc1590@camail.sbc.com

February 23, 2004

Mr. Jim Weitkamp
Assistant Vice President
Communications Workers of America - District 9
2870 Gateway Oaks Suite 100
Sacramento, CA 95833

Re: SBC Global Services, Inc. (California/Nevada)- Subcontracting

Dear Jim:

As discussed, this letter confirms our understanding regarding contracting of work at SBC Global Services, Inc. (California/Nevada). In making decisions regarding contracting of work, it is the Company's objective to carefully consider the interests of both the customer and employee, along with all other considerations essential to the management of the business in a highly competitive and dynamic environment. While the Company believes it is in its best interests to utilize its own employees, the Company does use contractors, as it deems necessary, in order to respond to a highly unpredictable marketplace. For various reasons where the needs of the business require, the Company may subcontract bargaining unit work.

Sincerely,



---


Pacific Bell

Labor Relations

SBC Services, Inc.
2600 Camino Ramon
Room 2W050
San Ramon, CA 94583

February 23, 2004

Mr. Jim Weitkamp
Assistant Vice President
Communications Workers of America - District 9
2870 Gateway Oaks Suite 100
Sacramento, CA 95833

Re: SBC Global Services, Inc. (California/Nevada)- Home Garaging and Standby Committees

Dear Jim:

This Memorandum of Agreement sets forth our understanding that it would be beneficial to the parties to establish a committee to address workplace issues, specifically standby and home garaging. In order to accomplish this goal, the Company and the Union agree to the following:

* To establish a Working Relations Committee (WRC) for the purpose of discussing standby and home garaging issues.

* The Committee will consist of two (2) Union representatives and two (2) Company representatives who would meet on, at least, a quarterly basis.

* The Committee would not have the authority to formulate policy or enter into any agreements that require bargaining. The WRC proceedings will not be used in lieu of the grievance or arbitration procedures nor will they be subject to the grievance and arbitration processes.

* Representatives appointed by the Union would be paid for time spent in Committee meetings in accordance with Section 2.04. Both parties agree sessions may be held via conference call and/or video conference at the request of either party.

Effective date/language:          March 23, 2004

Termination date/language:        With the Conclusion Article of the
                                  Collective Bargaining Agreement

Coverage:                         SBC Global Services, Inc. in California and
                                  Nevada

Communications Workers of America              SBC Global Services, Inc.
                                               (California/Nevada)

Agreed: _V. Almaser_____              Agreed: _Douglas G. Flower___
        Jim Weitkamp                          Sue Crutcher
        Assistant Vice President              Vice President
        CWA-District 9                        Labor Relations

Date: _3-18-04____                    Date: _March 18, 2004__


**Pacific Bell**

*SBC Services*

SBC Services, Inc.
2600 Camino Ramon
Room 2W752
San Ramon, CA 94583

February 23, 2004

Mr. Jim Weitkamp
Assistant Vice President
Communications Workers of America – District 9
2870 Gateway Oaks Suite 100
Sacramento, CA 95833

Re: SBC Global Services, Inc. (California/Nevada) – Subsidiary Movement

Dear Jim:

This Memorandum of Agreement sets forth our agreement regarding the use of the Subsidiary Movement Interest Form Process.

SBC Global Services, Inc. (California/Nevada) employees will be able to use the Subsidiary Movement Interest Form process in effect at any particular time to facilitate their movement among bargaining units of participating companies of SBC Communications, Inc. represented by the Communications Workers of America, except Cingular Wireless.

| | |
|---|---|
| Effective date/language: | March 23, 2004 |
| Termination date/language: | With the Conclusion Article of the Collective Bargaining Agreement |
| Coverage: | SBC Global Services, Inc. in California and Nevada |

Communications Workers of America

Agreed: _signature_
Jim Weitkamp
Assistant Vice President
CWA-District 9

Date: 3-18-04

SBC Global Services, Inc.
(California/Nevada)

Agreed: _signature_
Sue Crutcher
Vice President
Labor Relations

Date: March 18, 2004

---

## MEMORANDUM OF AGREEMENT
## BENEFITS

This Memorandum of Agreement confirms our understanding concerning benefits for union-represented employees in SBC Global Services, Inc. in California and Nevada.

Except as noted below, employees will continue to be eligible to participate in the following benefit plans and programs with the same plan terms, conditions and provisions as are in effect for management employees as they may change from time to time: SBC Medical and Group Life Insurance Plan – CustomCare and SBC National Medical Program (collectively "Medical"), SBC CarePlus – A Supplemental Medical Plan ("CarePlus"), SBC Dental Plan ("Dental"), SBC Vision Plan ("Vision"), SBC Flexible Spending Account Plan, SBC Employee Assistance Program, SBC Medical and Group Life Insurance Plan – Group Life Insurance, SBC Supplementary Group Life Insurance Program, SBC Dependent Group Life Insurance Program, SBC Disability Income Plan, SBC Rules for Employee Beneficiary Designations, SBC PAYSOP, SBC Group Long Term Care Insurance Plan, SBC Leave of Absence Policy, and SBC Adoption Reimbursement Program.

**Implement Previously Announced Changes**
Employees will continue in benefit plans as described in the November 2002 communication, attached, except as noted below. Except as noted below, plan terms, conditions, and provisions will be the same as are in effect for nonbargained employees.

**Medical, Dental, Vision**

- Effective June 1, 2004 for the SBC Medical and Group Life Insurance Plan – CustomCare, the SBC National Medical Program, the SBC Dental Plan and the SBC Vision Plan, all of which are programs of the SBC Umbrella Benefit Plan No. 1, change the employees' contribution level from 15% for individual and 20% for dependent coverage to a contribution level of 7% for individual and 11% for dependent coverage.

- Effective January 1, 2005, Health Maintenance Organization (HMO) option contribution rules will follow the management rules, including the transition to the SBC National Medical Program as the comparison plan for determining the amount of any required contributions, the elimination of adjustments for geographic and demographic differences, and the elimination of duplicative Mental Health/Chemical Dependency coverage currently provided through Value Options.

**SBC Pension Benefit Plan – Bargained Cash Balance Program**

- Effective June 1, 2004 all employees will move into a common pension plan, the SBC Pension Benefit Plan – Bargained Cash Balance Program. (SBCPBP-BCB)

## MEMORANDUM OF AGREEMENT
### BENEFITS

- All employees with one (1) year of Net Credited Service, subject to all current terms of the SBCPBP-BCB, shall become participants.

- The opening Account balance will be zero for all employees.

- Prior plan benefits in the Ameritech Management Pension Plan or the SBC Pension Benefit Plan – Nonbargained Program, including any minimum pension benefit based on the Ameritech Pension Plan, will remain in those prior plans. There will be no transfer of accounts from prior plans to the Bargained Cash Balance Program; benefits that remain in the prior plans will be treated like all other benefits in those plans.

- The eligible compensation, basic benefit credit, interest credit, distribution options, and provisions for conversion between annuities and lump sums are the same for the Bargained Cash Balance Program as for the current SBC Pension Benefit Plan -Nonbargained Program. Alternative calculation methods in the Ameritech Management Pension Plan or SBC Pension Benefit Plan - Nonbargained Program, such as the CAM benefit, do not apply to the Bargained Cash Balance Program.

### SBC Savings and Security Plan

- Effective the first payperiod beginning on or after June 1, 2004 all employees will become eligible to enroll in the SBC Savings and Security Plan.

  - Employees hired on or before May 31, 2004 will be immediately eligible for the Company Match of 80%. Employees hired after May 31, 2004 will become eligible for the Company Match of 80% at 12 Months of service.

  - Allotments are in percentages from 1% to 6% with the Company match. Supplemental allotment (no company match) will be up to 24%. Both basic and supplementary allotments combined cannot exceed 30% of pay.

  - In-service withdrawal minimum is $100, loan minimum is $500.

  - Any savings balance in the employee's SBC Savings Plan account will be transferred to the employee's SBC Savings and Security Plan account as soon as administratively possible after June 1, 2004.

### CarePlus

Beginning January 1, 2005, employees will be offered annual enrollment into CarePlus rather than once every three years.

## MEMORANDUM OF AGREEMENT
### BENEFITS

### Transportation

The Company will offer a program enabling employees to purchase parking, transit and/or van pooling services on a pretax basis as soon as administratively feasible in a cost-effective manner and in accordance with federal laws and regulations. Aspects such as eligibility specific plan details, and administrative processes will be shared with the Union prior to any implementation of such benefits.

*Effective date/language:*     As stated in the MOA

*Termination date/language:*     June 25, 2005.

*Coverage:*     SBC Global Services, Inc. (California/Nevada)

| Communications Workers of America | SBC Global Services, Inc. (California/Nevada) |
|---|---|
| Agreed: *V. Ofjamasur* | Agreed: *Douglas a. Flow* |
| Jim Weißkamp Assistant Vice President - District 9 | Sue Crutcher Vice President - Labor Relations |
| Date: 3/18/04 | Date: March 18, 2004 |

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

# APPENDIX E

## Section E1      CONTRACT MODIFICATIONS

The employees will be administered in accordance with the provisions of the *current collective bargaining agreement* between *Pacific Bell Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc., AT&T Video Services, Inc., and SBC Global Services, Inc.* and the, *Communications Workers of America*, except as modified below. *To the extent any of the provisions of Appendix E may be found to be in conflict with the provisions of the current collective bargaining agreement between Pacific Bell Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc., AT&T Video Services, Inc., and SBC Global Services, Inc. and the Communications Workers of America, Appendix E shall control.*

## Section E1.01      ARTICLE 2 FORCE ALLOCATION

Except as identified in Sections E1.01B, *E1.01C, and E1.01D* below, the provisions of Article 2 will not apply. The following force allocation provisions will be in effect:

### A.      Transfers within Appendix E

The Company may in its discretion hire employees off the street or from outside of *Appendix E* to fill vacancies. However, if the Company determines that a vacancy is to be filled from within *Appendix E*, it will post a notice of the vacancy. Employees with at least thirty (30) months of time in title, unless waived by the Company, and who have satisfactory attendance and work performance may apply for the vacancy.

In deciding who will be selected for a vacancy, the Company will determine which employee is most qualified to fill the position. The Company will consider an employee's qualifications and where, in the judgment of the Company are equal, it will use seniority. The Company may elect to retreat an employee within the first nine (9) months from the date the employee accepted the position.

When an employee transfers to a higher or a lower wage schedule the employee will move to the same wage schedule step on the new wage schedule that the employee was at on the old wage schedule. In addition, the employee's time spent, months and days, at the step on the old wage schedule will count towards the time required for the employee to progress to the next higher step on the new wage schedule.

### B.      Transfers to *Appendices A, B, and D*

Any Regular employee who meets the following criteria may submit transfer requests for positions in *Appendices A, B, and D* as described in Article 2, Section 2.04 (except 2.04E) of that agreement:

- Thirty *(30)* months of time-in-title and time-in-location
- satisfactory attendance
- satisfactory performance
- testing requirements
- other requirements as determined by the Company

**C. *Voluntary Transfers From Another Appendix Into Appendix E***

*The Companies at their discretion may place requisitions for Appendix E positions into AUTS. If the Companies choose to do so, Article 2, Section 2.04 will apply.*

**D. *Treatment Of Surplus Appendix A Employees Who Move To Appendix E***

*The Companies at their discretion may place Appendix A employees identified as surplus into Appendix E job titles. All such employees will remain as Regular full time. A job offer to a job title in Appendix E will meet the commitment of a guaranteed job offer under Section 2.01 Employment Security Commitment. Appendix A surplus employees who refuse such an assignment will be treated under the terms and conditions of a similarly situated employee offered a position in Appendix A. Surplus employees who accept a position in Appendix E will not be eligible for the Reassignment Pay Protection Plan (Article 2, Section 2.06B9). Instead, if the employee's current weekly rate of pay is above the maximum weekly wage rate for the new title, there will be no change in the employee's rate of pay until the weekly rate of pay in the new job title exceeds the employee's higher frozen weekly rate of pay. If the employee's current weekly rate of pay is equal to or below the weekly rate of pay for the new job title the terms and conditions of Section C8 Wage Administration Practice will apply.*

*The terms and conditions of Appendix E will apply to surplus employees, who accept a position within Appendix E, with the following exceptions. When surplus employees from Appendix A are assigned into positions in Appendix E the following provisions of the current collective bargaining agreement between Pacific Bell Telephone Company, Nevada Bell Telephone Company, AT&T Services, Inc., AT&T Video Services, Inc., and SBC Global Services, Inc. and the Communications Workers of America shall continue to apply to such employees in lieu of any otherwise applicable provisions of Appendix E, while they remain in the title into which they are assigned:*

- *Article 2, except for voluntary transfers within Appendix E job titles, for which the terms and conditions of Appendix E will apply*

- *Section 5.01F, G and H Sickness Absence Payments*

- *Section 5.03 Shift Differentials*

188

- *Section 5.04 Overtime and Call Outs*

- *Section 6.02 Vacation*

- *Section 6.03 Holidays*

- *Section 6.04 Personal Days Off*

- *Section 6.06 Planned Time Off*

- *MOA 89-17 Extended Health Care Coverage Following Termination*

- *MOA 89-29 Long Term Disability and Disability Pension Plans*

- *MOA 95-10 ERB*

- *MOA 95-18 Special Leave of Absence and Transition Leave of Absence*

- *MOA 04-11 Article 2 – ERB*

- *MOA 04-12 Article 2 – ESRO*

- *MOA 93-6 Office Closures*

- *MOA 95-17 Relocation Expense Treatment*

- *MOA 02-11 Article 2 Liaison Committee Trial*

*The above treatment shall continue only for the period he/she remains in the job title assigned in Appendix E following his/her surplus declaration or subsequently assigned following a subsequent surplus declaration. If an employee voluntarily transfers from the assigned Appendix E job to any other job title the above treatment will not be continued; it will end on the effective date of the transfer.*

**E. Seniority**

Seniority as used in this Appendix shall mean Net Credited Service (NCS) with the Company as determined by the Pension Plan Administrator.

If more than one (1) employee has the same Seniority date, the employee whose last four (4) Social Security Number digits comprise the larger number will be treated as if he/she were more senior. If two (2) employees with the same NCS date, also have the same last four (4) Social Security Number digits, revert to the middle two (2) digits of the Social

189

Security Number to determine the most senior employee, with the higher number treated as most senior.

**F. Relocation Of Work**

When work is to be relocated, the Company may if it deems appropriate, offer the affected employees the opportunity to follow their work to the new location. Employees who elect to follow their work to the new location will be considered as employee initiated transfers.

<u>Section E1.02</u>     **ARTICLE 4  JOB TITLES AND CLASSIFICATIONS**

The provisions of Article 4 will not apply except for the following Sections:

4.01 (New Job Titles and Job Classifications); and
4.03 B (Term Employees), as modified below*; and*
*4.03 C (Temporary Employees); and*
*4.03 D (Occasional Employees).*

The following will also apply:

***The Companies may at their discretion hire employees into any of the classifications listed in Section E1.02.***

**A.    Term Employees**

If a Term employee covered by Appendix E attains thirty six (36) months of service, the employee shall either be work completed or converted to a Regular Employee at the Company's discretion. If the employee is converted to a Regular Employee, the employee will continue to be covered by the terms, conditions and benefits provided by Appendix E.

1.    All part-time employees shall receive payments under the Companies' benefit plans and payment programs as described in this section.

**B.    *Regular Employees***

*A Regular employee is one who is engaged for the usual activities of the business and whose employment is reasonably expected to continue, although employment may be terminated by action on the part of the Company or the employee.*

**C.    Probationary Employees**

All employees hired into Appendix E will remain probationary for twelve (12) months. Probationary employees may be terminated at any time for any reason during the twelve (12) month period.

190

**D.    Part-Time Employees**

A part-time employee is one who is employed and normally scheduled to work less hours per average month than a comparable full-time employee in the same job title, classification and work group working the same normal daily tour. Treatment of a part-time employee under the Companies' benefit plans and payment programs is dependent on the employee's "average workweek".

1.    All part-time employees shall receive payments under the Companies' benefit and payment programs as described in this section.

a.    When an employee begins working part-time the "average workweek" will be determined in advance by dividing the employee's normally expected scheduled hours per month by 4.35 and rounding the result to the next higher whole number. (For example: 68 hours per month divided by 4.35 equals 15.6, rounded to an average workweek of 16 hours). This "average workweek" will apply until an employee has worked a full calendar quarter as a part-time employee.

b.    After an employee has worked a full calendar quarter as a part-time employee, the "average workweek" will be re-determined as of the end of each calendar quarter during which the employee was classified as a part-time employee for the entire quarter. The "average workweek" for the following quarter will be determined by averaging all hours worked during the prior quarter. This average includes:
(i)    Hours worked up to a maximum of eight (8) per day or forty (40) per week; and
(ii)    Hours scheduled or assigned to be worked but excused, paid or unpaid.

The total of (i) & (ii) above will be limited to a maximum of eight (8) hours per day or forty (40) per week.

191

c.  For periods of service as a part-time employee calculations for wages or service for each of the following benefit plans and payment programs will be based on the relationship of the individual part-time employee's "average workweek" to a forty (40) hour workweek:

- Comprehensive Disability Benefit Plan
- Life Insurance Plans
- Savings Plan
- Severance Plan
- Vacation, Holiday and Paid Personal Days Off
- Sickness Absence Payments

d.  Monthly contributions to the Medical, Dental and Vision Plans will be prorated using the same percentage calculated in Section 1 above. The Companies will pay that percent of the cost of coverage for Medical, Dental and Vision care. The part-time employee will pay the difference between the Company contributions and the cost of the plan.

2.  A part-time employee shall not be paid Sickness Absence payments unless such absence due to sickness occurs on a day of the week on which the employee is normally scheduled to work and a full-time employee in the same circumstance would be paid.

**Section E1.03    ARTICLE 5 WORK ADMINISTRATION, COMPENSATION AND SPECIAL PAYMENTS**

Except for Sections 5.01A, 5.01B, 5.01C, and 5.07, the provisions of Article 5 will not apply. The following working conditions will be in effect:

A.  **Work Schedules**

The Company will determine and post the work schedules. Employee's scheduled work hours may start at any time of the day, on any day of the week and may be spread over any six (6) days of the week. Work schedules will be posted for a minimum period of *two (2)* weeks and are subject to change, with forty-eight (48) hours notice to the employee.

B.  **Split Work Days**

The Company may schedule employees to work a split workday. A split workday is a divided workday, with hours off in between.

C.  **Change Of Hours**

If an employee is notified less than twelve (12) hours before the originally scheduled start time of a change in work hours, the affected employee will receive two (2) hours of pay at the straight time rate.

D.  **Cancellation Of Hours**

1.  If an employee is notified less than *twelve (12)* hours before the originally scheduled start time that the scheduled hours are canceled, the affected employee will receive two (2) hours of pay at the straight time rate.

2.  If an employee *begins work at the scheduled time on a scheduled workday, the employee's scheduled hours for the remainder of that workday cannot be canceled.*

E.  **Overtime**

Employees may be required to work overtime subject to the needs of the business. Employees scheduled to work overtime will be paid in accordance with applicable Federal and/or State Laws.

1.  *California Law currently provides that:*

a.  *Hours worked in excess of eight (8) hours in a workday shall be paid at the rate of one and one-half (1-1/2) times the employee's regular rate of pay.*

b.  *Hours worked in excess of twelve (12) hours in a workday shall be paid at the rate of two (2) times the employee's regular rate of pay.*

c.  *Hours worked in excess of forty (40) hours in a workweek shall be paid at the rate of one and one-half (1-1/2) times the employee's regular rate of pay.*

*If California Law changes in the future from what is described in this Section E1.03E1, employees will continue to be paid as described in this Section E1.03E1.*

F.  *Distribution of Overtime*

*The Companies will distribute the opportunity to work overtime as equitably as the needs of the business will permit. Lists shall be maintained on a monthly accumulative basis for each appropriate employee group, as determined by the Companies, showing the distribution in terms of overtime hours worked. The provisions of this Section shall not be subject to arbitration.*

### G. Shift Differentials

Employees who are scheduled to work an evening or night assignment in which more than fifty (50) percent of the time falls between the hours of 6:00 p.m. and 6:00 a.m., shall receive a daily premium payment of ten (10) percent of their base wages for each day worked. Shift differentials will be included in the employee's rate of pay for purposes of computing payments during periods of vacation and holidays, if the following conditions are met:

*1.* An employee works one (1) full work week of evening or night assignments before his/her vacation or holiday and is scheduled to work one (1) full work week of evening or night assignments, following his/her vacation or holiday.

### H. Sunday Premium Payments

Employees who work on a Sunday shall receive the rate of one and one-half (1 ½) times the employee's base wages, up to a maximum of eight (8) hours per day. Employees who are excused from work with pay during scheduled hours on Sunday shall be paid at straight time for the excused absence.

### I. Meal Periods

Unpaid meal periods will normally be scheduled for thirty (30), forty-five (45) or sixty (60) minutes, as determined by the Company.

### J. Rest Periods

Rest periods will be assigned in accordance with State and/or Federal law; however, they will be fifteen (15) minutes in length.

### K. Relief Differential

Employees will be paid a differential of eight dollars ($8.00) when in addition to their normal duties they relieve or assist a manager for four (4) hours or more. Relief Differential assignments specifically exclude administering discipline to other employees.

### L. Working In A Different Title

The assignment of a particular title to an employee does not mean that the employee shall perform only the kind of work coming under his/her title classification, or that certain kinds of work shall be performed exclusively by certain classifications of employees.

### M. Travel and Temporary Work Locations

1. The Company will either furnish all means of transportation or specify what transportation shall be used for travel on Company business.

2. Employees who agree to use their personal vehicles for Company business will be reimbursed at the then current IRS reimbursement rate for mileage.

3. Employees may be assigned to work at a temporary work location. When employees are assigned to work at a temporary work location, the employee will be reimbursed for travel time and transportation expenses to and from the temporary work location in excess of that required for the employee's normal commute.

4. Transportation expenses include, but are not limited to, mileage, bridge toll, parking, airfare, and bus fare.

### N. Overnight Trips

If the Company determines that overnight travel is required, the employee will be reimbursed for expenses, which are supported by receipts as follows:

1. Transportation expenses as described in Section E1.03M
2. Lodging, approved in advance by the Company
3. Meals, not to exceed *thirty* dollars (*$30*) per day, unless management approves a higher amount in advance.

### O. Branded Apparel

In order to provide employees with a consistent, recognizable appearance to customers which differentiates the Company from its competitors, the Company may, at its discretion, implement a mandatory branded apparel program. Employees will be required to wear the branded apparel while working on Company time. The Company may change the program at its discretion. However, in no circumstance will employees be required to pay for the branded apparel provided by the Company under the program. Once implemented, the Company can cancel the program with thirty (30) days notice.

### P. Appearance Standards/Dress Code

The Company may, implement appearance standards and/or a dress code which requires employees to have a professional appearance appropriate for the business environment, consistent with State and Federal laws. The

APPENDIX E

standards and code will be uniformly applied to all employees. The Company may change the standards and code upon notice to the Union.

Q. **Home Dispatch**

The Company may, at its discretion, implement a mandatory Home Dispatch Program. The Company may change the program at its discretion. Once implemented, the Company can cancel the program with thirty (30) days notice.

**Section E1.04     ARTICLE 6   TIME OFF**

The provisions of Article 6 will not apply. The following time off provisions will be in effect:

A. **Paid Holidays**

Seven (7) paid holidays shall be observed as follows:

> New Year's Day
> Memorial Day
> Independence Day
> Labor Day
> Thanksgiving Day
> Day After Thanksgiving
> Christmas Day

Holidays that fall on a Sunday will be observed on the following Monday. When a holiday falls on a Saturday, employees will be given another day off in a subsequent week or a preceding week as determined by the Company. All time off earned in the previous vacation year, must be taken before any time off in the current vacation year can be taken.

B. **Working On A Holiday**

Employees who work on a holiday, will not be given a day off to be taken at a later date. Employees who work on a holiday will be paid eight (8) hours at straight time for the holiday and at time and one half (1 ½) for each hour worked on the holiday.

C. **Holidays During A Vacation Week**

When a holiday falls during a week in which an employee is on vacation, the day will be treated as a holiday, not as a day of vacation.

D. **Vacation Year**

The year in which vacation and Personal Days off may be taken shall be known as the "vacation year." The vacation year is defined as a period of time beginning December 31st and ending on December 30th of the following year. Employees must be active on the payroll (not on a leave of absence or on disability) and must physically report to work for at least one (1) day in the vacation year to be eligible for vacation and Personal Days Off.

However, an employee may be granted vacation for which they are otherwise eligible in a vacation year without performing any work for the Company in that year provided they are not on a leave of absence or disability and such vacation is contiguous to and continues with their vacation for the preceding year; or such vacation begins during the first seven (7) days of the vacation year.

E. **Vacation Eligibility**

Employees shall be eligible for vacation, based on their Net Credited Service (NCS) with the Company, as follows:

1. One (1) week of vacation upon completion of six (6) months of service.

2. Two (2) weeks of vacation upon completion of twelve (12) months of service. This provision cannot be combined with the above to result in more than two (2) weeks of vacation entitlement in the same vacation year.

3. Three (3) weeks of vacation to any employee who could complete seven (7) years of service or more but less than fifteen (15) years of service within the vacation year.

4. Four (4) weeks of vacation to any employee who could complete fifteen (15) years of service or more but less than twenty-five (25) years of service within the vacation year.

5. Five (5) weeks of vacation to any employee who could complete twenty-five (25) years of service or more within the vacation year.

F. **Carry-over Vacation**

All employees are encouraged to take all of their vacation time during the vacation year. However, a maximum of one (1) week of vacation may be carried over into the next vacation year. A vacation week that is carried over must be taken by April 30th.

Other than the one (1) week of carry-over vacation identified above, if the remaining vacation is not scheduled by April 1st of the vacation year, the Company may at its discretion place employees on vacation and require them to take vacation at a specified time. The number of weeks management may place employees on vacation is limited to not more than one (1) week in a vacation year. Should the need to place employees on vacation occur, the Company will provide thirty (30) days notice to the affected employees.

### G.    Vacation Selection

Employees may select their vacation in full weeks and on a day-at-a-time basis during the vacation selection process. Vacations shall be selected in a work group as determined by the Company, based on seniority. The Company shall determine periods available for selection and the number of employees allowed off on vacation.

### H.    Personal's Days Off

Employees are allowed flexibility through the use of Personal Days Off to be off work with pay, subject to approval by management.

Each employee who has completed six (6) months of service will be eligible for seven (7) paid Personal Days Off each vacation year.

For Personal Days Off not scheduled by September 1st of the vacation year, the Company may at its discretion place employees on Personal Days Off and require them to take Personal Days Off at a specified time. The number of Personal Days Off that management may place employees on, is limited to not more than *one (1)* in each vacation year. Should the need to place employees on a Personal Day Off occur, the Company will provide thirty (30) days notice to the affected employees.

### I.    Carry-Over Of Personal Days Off

All employees are encouraged to take all of their Personal Days Off during the vacation year. However, Personal Days Off may be carried over into the next vacation year. Personal Days Off that are carried over must be taken by April 30th.

### J.    Selection Of Personal Days Off

All Personal Days Off shall be selected based on seniority within a workgroup as determined by the Company. Employees may be permitted to take all of their Personal Days Off in two (2) hour increments. The Company shall determine periods available for selection and the number of employees allowed off on Personal Days Off.

### K.    Civic Duty

Employees must give their supervisor advance notice when they are requested to appear for jury duty. Time off to comply with a summons for obligatory jury duty will be paid subject to court verification. The Company will grant unpaid time off for other court ordered processes. Employees are expected to notify their supervisors as soon as possible of the need for time off to comply with any court order.

### L.    Death In An Employee's Immediate Family/Household

Employees will be granted up to three (3) paid days of excused time off due to a death in the employee's immediate family. Immediate family includes the employee's parents, stepparents, adoptive parents, children, stepchildren, adoptive children, brothers, stepbrothers, sisters, stepsisters, husband or wife, domestic partner, domestic partner's children, domestic partner's mother, domestic partner's father, grandparents, grandchildren, mother-in-law or, father-in-law. If more time off is needed, an employee may request vacation time or unpaid time off, all of which is dependent on the needs of the business. In all cases, supervisory approval is required.

### M.    Absence

Employees having one (1) or more years of NCS shall be paid at the basic wage rate for *illness* absences, on scheduled workdays, up to a maximum of five (5) paid *illness absence* days per calendar year. Employees must notify their supervisor before their scheduled start time that they will be absent from work *due to illness*.

### N.    Excused Time Required By Law

Employees will be granted other excused time off (paid or unpaid) as required by applicable State and/or Federal laws.

**Section E1.05    ARTICLE 8 LAYOFFS**

The provisions of Article 8 will not apply. The following layoff provisions will be in effect:

### A.    Force Adjustment

Whenever force conditions as determined by the Company are considered to warrant a surplus and the possible layoff of employees, the Company shall notify the Union in writing, prior to notifying the affected employees. Employees will be laid off in a process determined by the Company. The surplus employees designated for layoff will be notified a minimum of two (2) weeks prior to the layoff date, unless otherwise provided by law.

## B. Layoff Allowance

Employees who are laid off will be paid a layoff allowance based on their seniority and their base weekly wage rate in effect at the time of the layoff, in accordance with the following:

| LENGTH OF SERVICE | LAYOFF ALLOWANCE |
|---|---|
| 0 - 12 Months | 1 week of pay |
| 13 - 24 Months | 2 weeks of pay |
| 25 - 47 Months | 3 weeks of pay |
| 48 Months or More | 4 weeks of pay |

## C. Priority Rehire

Employees who are laid off with satisfactory attendance and work performance and who apply for re-employment in the same position that they were laid off from, will receive priority consideration for re-hire over new applicants for *twenty-four* (*24*) months from his/her layoff date.

**Section E1.06      APPENDIX A   WORKING CONDITIONS**

The provisions of Appendix A will not apply.

**Section E1.07      APPENDIX B   AT&T VIDEO SERVICES, INC.**

The provisions of Appendix B will not apply.

**Section E1.08      APPENDIX C   COMPENSATION, TRANSFER AND UPGRADES**

The provisions of Appendix C will not apply except for the following Sections:

C8 (Wage Administration Practice)

The following will also apply:

*WAGE INCREASES*

*2009 INCREASE*

*Premises Technicians will receive a one-time forty-five cent ($.45) per hour increase applied to all weekly wage steps before the 2009 General Increase.*

*GENERAL INCREASE*

|   |   |   |
|---|---|---|
| *1.* | *Increase Date* | *4/5/09* |
| *2.* | *Top Step* | *3.0%* |
| *3.* | *Bottom Step* | *0.0%* |

*2010 INCREASE*

*General Increase*

|   |   |   |
|---|---|---|
| *1.* | *Increase Date* | *4/4/10* |
| *2.* | *Top Step* | *3.0%* |
| *3.* | *Bottom Step* | *0.0%* |

*2011 INCREASE*

*General Increase*

|   |   |   |
|---|---|---|
| *1.* | *Increase Date* | *4/3/11* |
| *2.* | *Top Step* | *2.75%* |
| *3.* | *Bottom Step* | *0.0%* |

*COLA increase*

*The amount of the April 3, 2011 adjustment shall be 0.5 times the increase above four percent (4.0%) in the U.S. Department of Labor Bureau of Labor Statistics "CPI-W" (1982-84 = 100) for December 2010 over December 2009. It will be applied to the scheduled rates in effect in each wage schedule on April 2, 2011.*

**Wage Schedules**

TIME INTERVAL BETWEEN STEPS -- 6 MONTHS

| Step | Weekly Wage Rate | | |
|------|----------|----------|----------|
| | **2009** | **2010** | **2011** |
| 1 | $378.00 | $378.00 | $378.00 |
| 2 | $399.50 | $400.50 | $401.50 |
| 3 | $422.00 | $424.50 | $427.00 |
| 4 | $446.00 | $450.00 | $454.00 |
| 5 | $471.50 | $477.00 | $482.50 |
| 6 | $498.50 | $505.50 | $512.50 |
| 7 | $526.50 | $536.00 | $544.50 |
| 8 | $556.50 | $568.00 | $579.00 |
| 9 | $588.00 | $602.00 | $615.50 |
| 10 | $621.50 | $638.00 | $654.00 |
| 11 | $657.00 | $676.50 | $695.00 |

*The following wage schedule will apply to the* Counties of Los Angeles, San Diego, San Francisco, Alameda, Contra Costa, *Sacramento, San Joaquin,* San Mateo, *Solano, Sonoma,* Santa Clara, *Orange, Placer, Riverside, Ventura, Yolo, Fresno, Kern, Merced, Monterey, Napa, Stanislaus, Tulare, and Washoe:*

| Step | Weekly Wage Rate | | |
|------|----------|----------|----------|
| | **2009** | **2010** | **2011** |
| 1 | $518.00 | $518.00 | $518.00 |
| 2 | $544.00 | $545.50 | $547.00 |
| 3 | $571.00 | $574.50 | $577.50 |
| 4 | $599.50 | $605.00 | $609.50 |
| 5 | $629.50 | $637.00 | $644.00 |
| 6 | $660.50 | $670.50 | $679.50 |
| 7 | $693.50 | $706.00 | $717.50 |
| 8 | $728.00 | $743.50 | $758.00 |
| 9 | $764.50 | $783.00 | $800.00 |
| 10 | $802.50 | $824.50 | $845.00 |
| 11 | $842.50 | $868.00 | $892.00 |

| Job Title | Time in Title |
|-----------|---------------|
| Premises Technician | 30 months |

Employees will be paid on a bi-weekly basis. Payment of wages for each two-week period will be made no later than the Friday following the end of the pay-period.

---

**A.    Discretionary Lump Sum Payments**

A lump sum payment of up to five (5) percent of an employee's annualized (52 weeks) weekly wage rate may be granted to individual employees at the Company's discretion.

**B.    Additional Cash Awards**

The Company may provide employees with additional cash awards.

The selection of employees and the amounts of the cash awards will be made at the discretion of management.

**C.    Employee Discount Program**

The *AT&T*@Home Employee Discount Program will be offered to all eligible employees for their personal use. This program consists of a package of *AT&T* products and services available at discounted prices. The Company reserves the right to change, amend or cancel this program and/or any parts or terms thereof at its sole discretion.

**Section E1.09        MEMORANDA OF AGREEMENT**

A.    The following Benefit Memoranda of Agreement will continue in accordance with their original terms and will apply to Appendix E:

| Subject | Date | MOA # |
|---------|------|-------|
| Leave Following Expiration of Short-Term Disability Benefits | 10/22/89 | 89-28 |
| Work/Family Funding | 8/8/92 | 92-30 |
| Family and Medical Leave Act of 1993 (FMLA) and the Amended California Rights Act | 2/9/94 | 94-2 |
| Domestic Partners | 5/1/98 | 98-13 |
| Benefits Enhancements | 3/23/01 | 01-07 |
| Joint Health & Disability Benefits Committee | 3/23/01 | 01-19 |
| Laser Vision Correction | 3/23/01 | 01-20 |
| Military Leave of Absence – Noble Eagle | 9/19/01 | 01-44 |

**APPENDIX E**

| Subject | Date | MOA # |
|---|---|---|
| Uniform Services Leave of Absence – Operation Enduring Freedom | 10/29/03 | 03-15 |
| Military Leave of Absence | 10/11/05 | 05-09 |

B.  The following Memoranda of Agreement will continue in accordance with their original terms and will apply to Appendix E:

| Subject | Date | MOA # |
|---|---|---|
| Court Reports and Transcripts in Non-Expedited Arbitration, Use of | 3/1/85 | 85-4 |
| Medically (Physically) Restricted Employees, Pay Treatment | 9/11/86 | 86-37 |
| COPE, Payroll Deduction | 9/17/86 | 86-43 |
| Four-Day Workweek | 10/22/89 | 89-14 |
| Job Evaluation Process, Neutral Third Party - Future Disputes | 10/22/89 | 89-22 |
| Job Evaluation Transition Pay Plan (future)JETPP | 10/22/89 | 89-25 |
| Wage Credit Practice | 10/22/89 | 89-53 |
| Technological Change Committee | 8/8/92 | 92-25 |
| Temporary/Term | 8/8/95 | 95-21 |
| Payroll System Changes: Definition of Time Worked Related to Premium Pay and the Date of Scheduled Wage Increases | 6/12/97 | 97-17 |
| Days of Rest | 5/1/98 | 98-28 |
| Wage Credit | 5/3/99 | 99-11 |
| Enhanced Wage Credit – Tight Labor Market | 5/3/99 | 99-12 |
| Electronic Access to Employees | 3/23/01 | 01-12 |
| Employee Initiated Temporary Assignments | 3/23/01 | 01-13 |

| Subject | Date | MOA # |
|---|---|---|
| Eliminate Force Freezes, Force Limitations & Metering | 3/23/01 | 01-16 |
| Recruitment & Hiring Committee | 3/23/01 | 01-30 |
| AUTS | 2/23/01 | 01-38 |
| Deduction Priorities & Retroactive Union Dues Collection | 2/23/01 | 01-39 |
| Assignment of Work Locations to Exchanges | 9/17/02 | 02-15 |
| Article 2 – Joint Company/Union Committee | 7/29/04 | 04-10 |
| AUTS Dispute Resolution Committee | 3/24/05 | 05-03 |

C.  The following Benefit Memoranda of Agreement will not apply to Appendix E:

| Subject | Date | MOA # |
|---|---|---|
| Extended Health Care (Coverage Following Termination) | 10/22/89 | 89-17 |
| Long-Term Disability and Disability Pension Plans | 10/22/89 | 89-29 |
| Early Retirement Benefit | 8/8/95 | 95-10 |
| Special Leave of Absence and Transition Leave of Absence | 8/8/95 | 95-18 |
| Article 2 – ERB | 7/29/04 | 04-11 |
| Article 2 – ESRO | 7/29/04 | 04-12 |

APPENDIX E

D.  The following Memoranda of Agreement will not apply to Appendix E.

| | | |
|---|---|---|
| Monitoring, Supervisory - Definition Per CPUC Decision | 10/12/71 | 71-7 |
| Monitoring and Productivity Measurements (Operator Services) | 9/11/86 | 86-35 |
| Sunday Plus Four Request, Voluntary Waiving | 9/11/86 | 86-39 |
| Documentation | 10/22/89 | 89-10 |
| Scheduling Part-Time Employees on Sunday in Customer Service Bureau (CSB) | 11/30/93 | 93-05 |
| Memorandum of Agreement Concerning Office Closures | 11/18/93 | 93-6 |
| Relocation Expense Treatment | 8/8/95 | 95-17 |
| Supervisory Monitoring-Service Representative | 8/8/95 | 95-20 |
| Yosemite Housing | 8/8/95 | 95-24 |
| Reimbursement of Union Representatives on the Group Incentive Team | 10/28/97 | 97-21 |
| Principles for Sales Incentive Programs | 1/22/98 | CWA-PB/ NB-98-02 |
| Digital Loop Transport Force Balancing | 2/19/98 | CWA-PB/ NB-98-06 |
| Telephone Concession | 5/1/98 | 98-14 |
| Incentive Plans and Promotional Programs | 5/1/98 | 98-15 |
| Hours of Work/CPP | 5/1/98 | 98-29 |
| Wage Credit for Project Lightspeed Term Hires in 2006 – Addendum to MOA 99-11 | 12/19/05 | Addendum 99-11 |
| Avalon Housing | 4/25/00 | 00-07 |

| | | |
|---|---|---|
| Mini-Transfer Procedure for the Consumer Markets Group | 8/11/00 | 00-25 |
| Flextime | 3/23/01 | 01-15 |
| Movement of Work & Transfers to SBC Companies | 3/23/01 | 01-24 |
| Operator Wage Credit | 3/23/01 | 01-26 |
| Service Representative – Local Teams | 3/23/01 | 01-34 |
| Subcontracting | 3/23/01 | 01-35 |
| Retiree Provisional Classification | 12/14/01 | 01-48 |
| Article 2 Liaison Committee Trial | 08/7/02 | 02-11 |
| Employee Discount on SBC Long Distance | 5/14/03 | 03-03 |
| Employee DSL Expert Plus Discount Offer | 5/23/03 | 03-05 |
| Employment Security | 7/29/04 | 04-13 |
| Home Dispatch Program Trial | 7/29/04 | 04-14 |
| Horizons | 7/29/04 | 04-15 |
| ERIC 2006 Incentive Plan | 1/09/06 | 05-10 |
| Maintenance Administrator - Bilingual | 3/15/06 | 06-02 |

*E.*  No Memoranda of Agreement other than those listed in Sections E1.09A, *and* B, *and the Appendix E Memoranda of Agreement regarding Reclassification of Term Premises Technicians to Regular Premises Technicians, Retroactive Wages, Surplus Systems Technicians-Data Communications, Surplus Services Technicians, Addition of Job Duties Beyond the Scope of the Current Premises Technician Job Description, and Required Overtime For Premises Technicians* will apply to Appendix E employees.

**Section E1.10**    **APPENDIX D SBC GLOBAL SERVICES, INC. (CALIFORNIA/NEVADA)**

The provisions of Appendix D will not apply.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## AGREEMENT OF RECOGNITION

The Union certifies that a majority of non-supervisory employees in the bargaining units described below have designated the Union as the exclusive bargaining agent and have empowered the authorized representatives of the Union to bargain collectively and to enter into and execute agreements with the Companies with respect to rates of pay, wages, hours of employment and other conditions of employment.

All non-supervisory employees in the organizations and having the job titles specified in Appendix A, Sections A1 through A1.01, A3 through A3.01, A4 through A4.01, Appendix B, *Appendix D, and Appendix E* are represented by the Communications Workers of America (CWA) with the following exceptions:

- Employees represented by other Unions.

- Non-represented employees whose non-represented status exists at the effective date of this Contract.

The Companies will periodically provide the Union with an updated addenda of representation by appendix by operating unit and payroll ARC.

- As new reports are issued, the Companies will provide the Union with a copy of the summary of changes since the previous report.

AGREEMENT OF RECOGNITION

The Memoranda of Agreement on the following pages,
Which are included for easy reference,
Are effective through the term of the
2009 Contract

Between

AT&T

And

The Communications Workers of America

## MEMORANDA OF AGREEMENT

| | | |
|---|---|---|
| *1.* | *Documentation* ......................................................... | *211* |
| 2. | Early Retirement Benefits ........................................... | 212 |
| 3. | Elimination Force Freezes, Force Limitations & Metering.............. | 220 |
| *4.* | *Horizons* ................................................................ | *221* |
| *5.* | *Employment Security*............................................... | *223* |
| 6. | Flextime .................................................................. | 227 |
| 7. | Monitoring and Productivity Measurements (Operator Services)................... | 229 |
| 8. | Pay Treatment for Medically Restricted Employees......................... | 231 |
| 9. | Principles for Sales Incentive Programs............................. | 233 |
| 10. | Provide for Voluntary Waiving of the Sunday Plus Four Request................. | 235 |
| 11. | Relocation Expense Treatment ....................................... | 236 |
| *12.* | *Single Bargaining Unit*............................................. | *240* |
| 13. | Subcontracting ........................................................ | 241 |
| 14. | Supervisory Monitoring – Definition Per CPUC Decision .............. | 243 |
| *15.* | *Monitoring and Recording of Calls* | *245* |
| 16. | Supervisory Monitoring – Service Representatives | 250 |

---

## Memorandum of Agreement

### Documentation

This Memorandum of Agreement supersedes MOA 89-10 and confirms our understanding regarding retention of personnel folder documentation regarding employees who have been subject to disciplinary action for attendance or work performance.

The Companies' policy on the retention of personnel folder documentation regarding job performance in the areas of attendance, quality, and/or quantity of work on employees who have been subject to disciplinary action is:

1. Disciplinary action is taken for attendance or work performance.

2. If the problem has been corrected, the records will be destroyed within one year from the date that disciplinary action was taken.

| | |
|---|---|
| Effective date/language: | With ratification |
| Termination date/language: | With expiration of the 2009 Collective Bargaining Agreement |

Applies to:

| | | | |
|---|---|---|---|
| Pacific Bell Telephone Company (Except Appendix E) | X | AT&T Video Services, Inc. | X |
| Nevada Bell Telephone Company (Except Appendix E) | X | SBC Global Services, Inc. | ___ |
| AT&T Services, Inc. | X | Appendix E | ___ |

Communications Workers of America

Agreed: _Tom Runnion_
Tom Runnion
Staff Representative
CWA – District 9

Date: _8-9-09_

AT&T West

Agreed: _Douglas G. Flores_
Doug Flores
Executive Director -
Labor Relations

Date: _8-9-09_

# MEMORANDUM OF AGREEMENT

## EARLY RETIREMENT BENEFIT

The pension plan will be modified effective October 1, 1995 to provide that from time to time during the life of the contract, the Companies may designate work groups in which they will offer an Early Retirement Benefit (ERB) providing enhanced pension benefits. For purposes of this memorandum of agreement "work group" shall mean a group identified by Vice President, headquarters and job title. ERB is intended to be offered to alleviate or avoid surplus conditions. The Companies will determine, in their discretion, whether and when to offer ERB, but surplus will not be declared in a work group where ERB has not been offered to all work groups with the same title and Vice President entity within the consolidated headquarters defined in Article 2. There will be a thirty (30) calendar day election period. The Companies may place a limit on the number of employees who will be eligible for the ERB benefit separately in each work group. The Companies will send to the Union a listing of the work groups to be offered ERB before the start of the thirty (30) calendar day election period. Employees who elect to accept the offer and who are eligible under the participation limit for their group have to terminate employment at the time that is set for their retirement. They will not be allowed to revoke their election to retire, and their termination at the time set for their retirement will not be subject to arbitration.

## 4 + 4 Pension Enhancement

ERB is a 4+4 pension enhancement. Employees who meet all eligibility requirements will have four (4) years added to their age and four (4) years added to their service for purposes of computing their enhanced pension as of their retirement date.

The four (4) years of service and four (4) years of age that are added in computing the amount of the enhanced pension under ERB only apply as of the eligibility date and the retirement date and only apply for purposes of:

a. Determining eligibility for a service pension under ERB;

b. Computing the amount of the enhanced pension under ERB;

c. Determining the application of an age related discount;

d. Bridging of past service for determining eligibility for a service pension and the pension amount; and

e. Meeting the requirement that an employee have at least eighteen (18) months in a pension band in order to apply all past service to the value of the band.

## Eligibility

An employee in a designated work group is eligible to receive the ERB enhanced pension if:

1.  The employee is a current employee who has not waived rights to active benefits.

2.  The employee's actual age and service (without any enhancements) as of the final day of the thirty (30) calendar day election period meet the normal service pension requirement or would meet the requirement with the addition of four (4) years to age and four (4) years to service, that is:

| Normal Service Pension Requirements | Eligibility Requirements with 4 + 4 |
|---|---|
| a. any age with 30 years of service | any age with 26 years of service |
| b. age 50 with 25 years of service | age 46 with 21 years of service |
| c. age 55 with 20 years of service | age 51 with 16 years of service |
| d. age 65 with 10 years of service | age 61 with 6 years of service |

If prior service would be bridged with the addition of four (4) years of service, the bridged total shall be used for determining if the employee would meet normal pension requirements as of the end election period, and for computing the pension amount as of the retirement date, but not for any other purpose. For instance, it will not be used for determining service for the metering process described below.

3.  The employee elects to retire with the ERB pension enhancement and signs and delivers an election form to the appropriate Company during the thirty (30) calendar day election period.

4.  The employee satisfies the requirements of the limitation on the number of eligible employees, if applicable.

5.  The employee retires in the month that is determined through the metering process described below or on the fifteenth (15th) calendar day following the end of the election period, if the metering process is not used. Employees who terminate employment before the applicable times will not receive the enhanced pension.

## Temporary Supplement to Age 62

If an employee retires with a service pension under ERB and the employee has not reached his or her sixty-second birthday at retirement, the employee's pension, after the 4+4 enhancement, will be increased by the addition of a 30% supplement. This temporary supplement will be paid each month, with the last payment made for the month in which the retiree's sixty-second birthday occurs.

There will be a separate election for a lump sum cashout applicable to this temporary supplement. If the employee elects a cashout of the single life annuity the temporary supplement will also be cashed out. If the employee elects monthly payments of the service pension annuity, the employee may separately elect a cashout of the temporary supplement only.

## Participation Limits

1.  Within any work group the Company may place a limit on the number of employees who will be eligible for the ERB benefit.

2.  Any such limit on a work group will be set before the thirty-day election period begins, and the Company will inform the Union of work groups with participation limits.

3.  If the number of employees submitting election forms exceeds the limit for the work group, eligibility will be determined by seniority, i.e., only the senior employees up to the limit will be eligible. This eligibility determination is made as of the end of the election period, and will not be changed.

## Metering Process

In each second level work unit, or the next level higher work unit if there is no second level work unit, the Companies may use the following process to determine when employees within a work unit must retire in order to receive the ERB pension enhancement.

1. Before the thirty (30) calendar day election period begins, the Companies will designate the work units using this metering and will inform the Union.

2. The metering process will result in selection of a specific retirement month, within one (1) year from the end of the thirty (30) calendar day election period, for each prospectively eligible employee in the work unit who elected ERB. Only calendar months will be designated as retirement months. The month in which the election period ends may be a designated retirement month.

3. There are two steps to the metering process:

   a. Within ten (10) calendar days following the end of the election period, for each work unit using the metering process, the Companies will distribute a metering list designating the specific calendar month or  months in which employees in that work unit may retire with ERB, and the number of such employees that may retire in each such designated month.

   b. If more than one month is designated, each prospectively eligible employee will identify his or her preference order for all available months on the metering list in which he or she is allowed to retire. Employees shall have five (5) calendar days from receipt of the metering list in which to identify their retirement month preference order. The preference lists will then be matched, by seniority, with the metering list, so that each employee receives his or her most preferred retirement month remaining on the metering list, after the preferences of the more senior employees (as expressed on their preference lists) have been given effect. If two employees have identical seniority, the one whose last four social security number digits comprise the larger number will be treated as if he or she were more senior.  An employee who does not identify his or her preferences within the above timeframe, or who submits an incomplete preference list and whose preferences have all been taken, will be scheduled to retire in the earliest remaining available month on the metering list.

4. Once the retirement schedule is set, it will not be changed.

5. If an employee terminates employment before the month he or she elected through this metering process, the employee will not receive the ERB pension enhancement. Employees who do not select a particular date during the month they elected through the metering process for retirement will be terminated as of the last day of that month.

6. If a work unit does not use the metering process, all the employees in that work unit who elect ERB and meet the other ERB eligibility requirements must retire on the fifteenth (15th) calendar day following the end of the election period in order to receive the enhanced pension.

7. Employees receiving short term disability benefits and employees on a leave of absence as of the thirtieth (30th) day of the thirty-day election period will not be included in the metering process, and must retire on the fifteenth (15th) day following the end of the thirty-day election period, or earlier if their short term disability benefits end earlier.

## Other Provisions Applicable to ERB

1. The pension plan will be amended for each ERB offer. Notwithstanding any other provision of the Collective Bargaining Agreement, the Companies shall have the right to amend the pension plan as appropriate to implement ERB.

2. The ERB service enhancement is not a permanent change to the employee's term of employment or net credited service and will not be used for any purpose other than determination of the ERB benefit, e.g., it will not be used to determine vacation or seniority, including seniority regarding the ERB metering process.

3. The enhanced pension benefit is available only to those employees who meet all eligibility requirements and are designated eligible by an amendment to the pension plan, and only during those periods and under those conditions designated. The pension enhancement will not be applied to any employee who terminates employment before the time set for the employee's retirement.

4. If an employee who was previously granted an enhanced pension under Early Retirement Choice (ERC) or Early Retirement Incentive (ERI) is in a work group where the ERB benefit is offered, the employee's eligibility for the ERB benefit and the amount of benefit are determined without regard to any enhancements provided under ERC or ERI.

5. For employees with part-time service during their term of employment, the four (4) years of enhanced service will be prorated in computing the amount of the pension benefit. No proration will apply for the purpose of determining eligibility for a service pension under ERB.

6. Employees receiving short term disability benefits or employees on leave of absence from a work group that has offered the enhanced pension will be eligible for the benefit if they otherwise meet the eligibility requirements.

7. Employees temporarily promoted out of the work group or transferred out as of the ERB designated election period will not be covered by the pension enhancement.

8. If an employee who has accepted an offer of ERI Phase II enhanced pension benefits is still an employee after the effective date of this Memorandum of Agreement, the employee will retire under the provisions of the ERI

Phase II offer. However, if the ERB pension enhancement is offered in such an employee's work group and the thirty-day election period for the work group starts before the employee's retirement date under ERI Phase II, the employee will retire on the date established under ERI Phase II, but will receive the better of the ERI Phase II benefit or the ERB benefit determined as of the retirement date. An employee in this circumstance will not be subject to a participation limit on eligibility under ERB and will not be counted toward the number of employees eligible under any participation limit on the employee's work group.

9. If an employee retires with a service pension enhanced under ERB and at a later time returns to employment with the Companies and becomes an active participant in the pension plan, the employee's service and pension will be determined in the future without regard to the ERB enhancement. On subsequent termination the employee will receive the greater of the normal pension benefit without regard to the ERB or the benefit that was determined under ERB, subject to the offset rules of the pension plan for a cashout of a previous pension.

10. Administration of the Early Retirement Benefit will not be subject to arbitration.

**Effective date/language:**

With ratification

**Termination date/language:**

In accordance with the Conclusion Article

**Coverage:**

Pacific Bell    Yes

Nevada Bell    Yes

ORIGINAL SIGNED:  August 8, 1995

## MEMORANDUM OF AGREEMENT

## ELIMINATE FORCE FREEZES, FORCE LIMITATIONS & METERING

1. Before implementing any force limitation, the Companies will give the affected Union Local(s) and District 9 fourteen calendar days advance notice during which time the Union Local(s) and the principle managers in the Officer organization planning to implement the force limitation will meet to discuss the need for the force limitation. In addition, the Officer of the impacted organization will notify the Local(s) and District 9 in writing. The notification will contain the following:
   - Organization name
   - Title(s) affected
   - Location(s)
   - Start date and end date of the force limitation
   - Rationale for the force limitation
   - Action plan to resolve the force limitation

   It is understood, however, that this agreement does not prejudice the Companies' right to implement the force limitation at the end of the 14-calendar day period.

2. Each request for a force limitation must be accompanied by a plan designed to return the affected group to an unrestricted flow of transfers. The Business Unit Officer will periodically review the progress being made toward resolution of the situation and notify the affected Union Local(s) and District 9 on a quarterly basis.

Effective Date:      With ratification

Termination Date:    With the Conclusion Article of the 2001 Collective Bargaining
                     Agreement

Applies to:    Pacific Bell      X      SBC Services, Inc.        X
               Nevada Bell       X      SBC Telecom, Inc.         X
               ASI               X      PB Home Entertainment     X

**Communications Workers of America**      **The Companies**

Agreed: _____      Agreed: _____
         James B. Gordon                       James K. Beck
         Area Director CWA - District 9         Vice President - Labor Relations

Date: 3/29/01                         Date: 3/27/01

## Memorandum of Agreement

## Horizons

The Company and the Union agree to continue the jointly administered Training/Retraining Programs also known as Horizons. Horizons will continue to be part of the Employee Career Development Programs and will continue to be administered by the Training/Retraining Working Committees pursuant to Sections 2.02 and 2.03 of the current contract. The Company will make funding of up to $3.75 million dollars available for Horizons each year of the contract.

The Training/Retraining Working Committees ongoing administrative responsibilities include:

- determining Horizons practices such as but not limited to, training cost prepayment, reimbursement to employees and former employees, approval of all courses, approval of all vendors, and payment of the committee members from the Horizons funding for time spent administering the program;

- arranging for any necessary services to support administration of Horizons. Services may be provided by the Companies or outside vendors, but in either event the services will be charged to the funding.

Effective date/language:        With ratification

Termination date/language:      With expiration of the 2009 Collective
                                Bargaining Agreement

**Applies to:**

| | | | |
|---|---|---|---|
| Pacific Bell Telephone Company (Except Appendix E) | X | AT&T Video Services, Inc. | X |
| Nevada Bell Telephone Company (Except Appendix E) | X | SBC Global Services, Inc. | X |
| AT&T Services, Inc. | X | Appendix E | X |

Communications Workers of America          AT&T West

Agreed: *Tom Runnion*                    Agreed: *Doug Fabres*
       Tom Runnion                                   Doug Fabres
       Staff Representative                           Executive Director -
       CWA – District 9                              Labor Relations

Date:    *8-9-09*                    Date:    *8-9-09*

## Memorandum of Agreement

## Employment Security

For Regular employees hired before July 1, 2004, the Employment Security Commitment (Article 2, Section 2.01) will not be cancelled or suspended for the life of the contract.

For Regular employees hired on or after July 1, 2004 and prior to April 5, 2009 who have satisfactory job performance and attendance on the first day of the maintained phase (see Section 2.06E), if the procedures described in Sections 2.06B3 through 2.06B7 have not resolved a declared surplus at the conclusion of thirty (30) calendar days from the beginning of the assignment phase (as described in Section 2.06B7e), maintained surplus employees hired on or after July 1, 2004 and prior to April 5, 2009 who have satisfactory job performance and attendance on the first day of the maintained phase (see Section 2.06E), may, at the Companies' discretion, be placed at any time into any CWA-represented bargaining unit position in the Companies in the West Region, in Legacy T in the West Region (e.g., AT&T Corp., AT&T Operations, Inc., AT&T Services, Inc., and TCG Services, Inc.), and in SBC Internet Services, Inc. in the West Region. The provisions of Sections 2.06B8 (Return Rights), 2.06B9 (Reassignment Pay Protection Plan), 2.06B10 and 2.08 (Relocation) will apply to maintained surplus employees accepting a position in the Companies in the West Region. Maintained surplus employees accepting a position outside their current bargaining unit will be eligible for Relocation Expense (Section 2.08) and for a Reassignment Pay Protection Plan lump sum payment in accordance with the table on Attachment A, where the rate of pay of the new job is less than the current rate of pay of the employee's former job title. Maintained surplus employees accepting a job offer outside their current bargaining unit will be treated as if they had transferred under the terms and conditions of the IMF process and shall be subject to all applicable receiving company practices, policies, collective bargaining agreement provisions and benefit plan eligibility standards, including those related to or affected by Net Credited Service. Maintained surplus employees who choose not to accept a commutable lateral position will leave the service of the Companies. Maintained surplus employees who choose not to accept a downgrade or a non-commutable position will leave the service of the Companies and receive Separation Benefits.

Notwithstanding any other provisions of the collective bargaining agreement or this Memorandum of Agreement, the Employment Security Commitment (Article 2, Section 2.01) and Article 2, Sections 2.06C and 2.06E will not apply to employees hired on or after July 1, 2004 and prior to April 5, 2009 who do not have satisfactory job performance and attendance on the first day of the maintained phase (see Section 2.06E). If the procedures described in Sections 2.06B3 through 2.06B7 have not resolved a declared surplus at the conclusion of thirty (30) calendar days from the beginning of the assignment phase (as described in Section 2.06B7a), least senior identified surplus employees hired on or after July 1, 2004 and prior to April 5, 2009 who do not have satisfactory job performance and attendance on the first day of the maintained phase (see Section 2.06E) need not be maintained in the surplus process and may be laid off as described in Article 8.

Notwithstanding any other provisions of the collective bargaining agreement or this Memorandum of Agreement, the Employment Security Commitment (Article 2, Section 2.01) and Article 2, Sections 2.06C and 2.06E will not apply to employees hired on or after April 5, 2009. If the procedures described in Sections 2.06B3 through 2.06B7 have not resolved a declared surplus at the conclusion of thirty (30) calendar days from the beginning of the assignment phase (as described in Section 2.06B7e), least senior identified surplus employees hired on or after April 5, 2009 need not be maintained in the surplus process and may be laid off as described in Article 8.

RPPP PAYOUT TABLE
ASSIGNMENT TO LOWER WAGE RATE

### Years Of Net Credited Service

| Weekly Difference | | <10 | 10<15 | 15<25 | 25+ |
|---|---|---|---|---|---|
| $ | $ | | | | |
| 0.50 | 4.50 | $ 70 | $ 140 | $ 580 | $ 690 |
| 5.00 | 9.50 | 90 | 320 | 1,230 | 1,480 |
| 10.00 | 14.50 | 130 | 460 | 1,870 | 2,260 |
| 15.00 | 19.50 | 200 | 640 | 2,520 | 3,020 |
| 20.00 | 24.50 | 220 | 790 | 3,160 | 3,800 |
| 25.00 | 29.50 | 270 | 960 | 3,810 | 4,580 |
| 30.00 | 34.50 | 320 | 1,110 | 4,460 | 5,360 |
| 35.00 | 39.50 | 360 | 1,280 | 5,100 | 6,130 |
| 40.00 | 44.50 | 410 | 1,430 | 5,750 | 6,910 |
| 45.00 | 49.50 | 450 | 1,610 | 6,390 | 7,690 |
| 50.00 | 54.50 | 490 | 1,750 | 7,050 | 8,450 |
| 55.00 | 59.50 | 550 | 1,930 | 7,700 | 9,240 |
| 60.00 | 64.50 | 580 | 2,080 | 8,340 | 10,020 |
| 65.00 | 69.50 | 640 | 2,260 | 8,990 | 10,780 |
| 70.00 | 74.50 | 670 | 2,400 | 9,630 | 11,560 |
| 75.00 | 79.50 | 720 | 2,570 | 10,280 | 12,340 |
| 80.00 | 84.50 | 770 | 2,730 | 10,930 | 13,130 |
| 85.00 | 89.50 | 820 | 2,900 | 11,570 | 13,890 |
| 90.00 | 94.50 | 850 | 3,050 | 12,220 | 14,670 |
| 95.00 | 99.50 | 900 | 3,220 | 12,860 | 15,450 |
| 100.00 | 104.50 | 950 | 3,370 | 13,510 | 16,210 |
| 105.00 | 109.50 | 1,000 | 3,550 | 14,160 | 17,000 |
| 110.00 | 114.50 | 1,040 | 3,700 | 14,810 | 17,780 |
| 115.00 | 119.50 | 1,080 | 3,870 | 15,460 | 18,550 |
| 120.00 | 124.50 | 1,120 | 4,020 | 16,100 | 19,320 |
| 125.00 | 129.50 | 1,180 | 4,190 | 16,750 | 20,100 |
| 130.00 | 134.50 | 1,220 | 4,350 | 17,400 | 20,880 |
| 135.00 | 139.50 | 1,270 | 4,520 | 18,040 | 21,660 |
| 140.00 | 144.50 | 1,300 | 4,660 | 18,690 | 22,430 |
| 145.00 | 149.50 | 1,370 | 4,840 | 19,330 | 23,210 |
| 150.00 | 154.50 | 1,400 | 4,990 | 19,980 | 23,980 |
| 155.00 | 159.50 | 1,450 | 5,170 | 20,630 | 24,760 |
| 160.00 | 164.50 | 1,490 | 5,310 | 21,270 | 25,540 |

| | | | | | |
|---|---|---|---|---|---|
| 165.00 | 169.50 | 1,530 | 5,490 | 21,920 | 26,310 |
| 170.00 | 174.50 | 1,590 | 5,640 | 22,560 | 27,090 |
| 175.00 | 179.50 | 1,630 | 5,810 | 23,220 | 27,860 |
| 180.00 | 184.50 | 1,660 | 5,960 | 23,870 | 28,640 |
| 185.00 | 189.50 | 1,720 | 6,130 | 24,510 | 29,420 |
| 190.00 | 194.50 | 1,750 | 6,280 | 25,160 | 30,190 |
| 195.00 | 199.50 | 1,820 | 6,460 | 25,800 | 30,960 |
| 200.00 | 204.50 | 1,850 | 6,600 | 26,450 | 31,740 |
| 205.00 | 209.50 | 1,910 | 6,780 | 27,100 | 32,530 |
| 210.00 | 214.50 | 1,940 | 6,930 | 27,740 | 33,300 |
| 215.00 | 219.50 | 1,980 | 7,110 | 28,390 | 34,070 |
| 220.00 | 224.50 | 2,040 | 7,260 | 29,030 | 34,850 |
| 225.00+ | | 2,080 | 7,420 | 29,680 | 35,620 |

In those cases where the total lump sum payment the employee is to receive exceeds Five Thousand Dollars ($5,000), an initial lump sum payment of Five Thousand Dollars ($5,000) shall be made after the employee reports to the new position. Subsequent lump sum payments of Five Thousand Dollars ($5,000) (or a portion thereof) shall continue to be made at six (6) month intervals until the total amount is paid to the employee.

Effective date/language:      With ratification

Termination date/language:      With expiration of the 2009 Collective Bargaining Agreement

Applies to:

| | | |
|---|---|---|
| Pacific Bell Telephone Company (Except Appendix E) | X | AT&T Video Services, Inc. ___ |
| Nevada Bell Telephone Company (Except Appendix E) | X | SBC Global Services, Inc. ___ |
| AT&T Services, Inc. | X | Appendix E ___ |

Communications Workers of America

Agreed: _Tom Runnion_
Tom Runnion
Staff Representative
CWA – District 9
Date: 8-7-09

AT&T West

Agreed: _Doug Flores_
Doug Flores
Executive Director –
Labor Relations
Date: 8-9-09

# MEMORANDUM OF AGREEMENT

## FLEXTIME

The Companies and the Union agree that Local Management and the Local Union may establish a Flextime Work Schedule Procedure in accordance with the following:

- The Companies or the Local Union may initiate a discussion regarding a Flexible Work Schedule Procedure.

- Where there is mutual agreement the parties will jointly develop the flextime procedure.

- Flextime schedules are limited to the same calendar day and to scheduled hours of work in that calendar day. For employees on a four-ten schedule flextime schedules are limited to the same calendar day and to ten (10) hours of work in that calendar day.

- Flextime is intended to allow for unexpected situations and is not intended to circumvent the attendance policy.

- In those locations where employees are required to fill out time sheets, all schedule variations must be posted on their time sheets.

- Flextime arrangements cannot create a premium/differential pay opportunity/obligation.

- An employee's shift will not change as a result of flextime.

  - Local agreements must be in writing.

  - The parties to any Local agreements will include a provision for either party to cancel the Local agreement with written notice.

- Prior to implementation, the Company and Union Bargainers must approve all Local Agreements.

  - Neither the local Flextime Agreement nor any procedure that the parties establish regarding Flextime will be subject to the grievance or arbitration process.

## MEMORANDUM OF AGREEMENT

## FLEXTIME

The parties to any local agreements do not have the authority to establish a procedure that violates any provision of the collective bargaining agreement. Should it later be determined that a locally agreed procedure is, in fact, a violation of the collective bargaining agreement, the Companies will not incur any liability for that violation.

This agreement is not subject to the grievance or arbitration process and may be canceled by either party with thirty (30) days written notice.

| | |
|---|---|
| Effective Date: | With ratification |
| Termination Date: | With the Conclusion Article of the 2001 Collective Bargaining Agreement |

Applies to:

| | | | |
|---|---|---|---|
| Pacific Bell | X | SBC Services, Inc. | X |
| Nevada Bell | X | SBC Telecom, Inc. | X |
| ASI | X | PB Home Entertainment | X |

| Communications Workers of America | The Companies |
|---|---|
| Agreed: _James B Gordon_ | Agreed: _James K Beck_ |
| James B. Gordon | James K. Beck |
| Area Director CWA - District 9 | Vice President - Labor Relations |
| Date: 3/23/01 | Date: 3/23/01 |

228

---



A.E. Eastwood
Executive Director
2600 Camino Ramon
San Ramon, California 94583
(415) 823-5666

**PACIFIC BELL.**
A Pacific Telesis Company

SEP 1 1 1986

Mr. Ken Croswell
Assistant to the Vice President,
District 9
Communications Workers of America
411 Airport Boulevard
Burlingame, California 94010

Mr. Reid B. Pearce
Administrative Assistant to
the Vice President, District 9
Communications Workers of America
6033 West Century Boulevard
Suite 600
Los Angeles, California 90045

Gentlemen:

This letter supersedes our May 11, 1984 (tab 252) letter regarding monitoring. The reference to TSPS is changed to TOPS. The agreement will continue to apply to Pacific Bell only. There is no intent to change the agreement which reads as follows:

Our approach to monitoring and productivity measurements will be based on a premise that fosters a work environment that builds on mutual trust and respect and that enhances job satisfaction.

We agree that:

o Remote monitoring for evaluate purposes will be conducted as follows:

- Done only when all employees in the work group have been notified by a visual indicator which will be used only when monitoring is taking place.

- Limited to thirty (30) calls per month for TOPS and fifty (50) for Directory Assistance. Monitoring of an employee will take place on no more than three days per month and will be limited to one monitoring session each day.

  New employees for three (3) months following initial training may have double that number taken.

- Coverage of an employee should take place as soon as possible, but must take place within the same day.

- No make-up observations will be taken.

229


MEMORANDA
OF AGREEMENT

o Diagnostic monitoring will be done on a parallel basis at the employee's position to identify individual training needs and provide follow-up to ensure training has been effective.

o Parallel monitoring for the purpose of verifying the effectiveness of new practices and customer response, etc. will be taken with operator's who agree.

o No employee will be dismissed solely as a result of monitoring unless secrecy of communications, fraud, loss of revenue or gross customer abuse is involved.

o Service management observations will not be taken.

Good service to customers and enhanced revenue are of equal importance. Productivity measurements will be reviewed with the Union periodically to maximize these objectives.

Monitoring is intended to be used for training and development of operators in order to reach their potential and provide good customer service.

| COMMUNICATIONS WORKERS OF AMERICA | PACIFIC BELL |
|---|---|
| Agreed: _Vernon Watkins_ | By: _R. E. Eastwood_ |
| Assistant to the Vice President, District 9 | Executive Director - Labor Relations |
| Date: _Sept 11, 1986_ | Date: _9-11-86_ |
| Agreed: _signature_ | |
| Administrative Assistant to the Vice President, District 9 | |
| Date: _9-11-86_ | |

---

R.E. Eastwood
Executive Director
305 Lytton Avenue, Room 7420
Po Palmai Jeffarina 3038
415-987-1968

**PACIFIC BELL.**
A Pacific Telesis Company

SEP 11 1986

Mr. Ken Croswell
Assistant to the Vice President,
District 9
Communications Workers of America
411 Airport Boulevard
Burlingame, California 94010

Mr. Reid B. Pearce
Administrative Assistant to
the Vice President, District 9
Communications Workers of America
6033 West Century Boulevard
Suite 600
Los Angeles, California 90045

Gentlemen:

This confirms our understanding of _Sept. 11, 1986_, with respect to pay treatment of certain employees with physical restrictions. This Memorandum cancels and supersedes our letter dated March 29, 1977, regarding the return to work of certain physically restricted employees.

The pay treatment is as follows:

If the rate of pay on the new assignment is lower than that of the employee's former job, the employee will be red circled at the employee's previous rate based on the following table:

| Net Credited Service | Period of Red Circling |
|---|---|
| Under 6 months | 0 |
| 6 months to 2 years | 2 weeks |
| 2 years to 5 years | 4 weeks |
| 5 years to 15 years | 13 weeks |
| 15 years to 20 years | 26 weeks |
| 20 years to 25 years | 39 weeks |
| 25 years and over | 52 weeks |

### Principles for Sales Incentive Programs

The Company and the Union agree to the following principles for negotiating individual sales incentive programs:

Sales and incentives for sales shall be a win for all stakeholders:

- Customer - good service and the best possible solution to telecommunications needs
- Employee/Union - positive incentive to sell; increased pay opportunities, increased employment security and jobs
- Company - increased revenue leading to growth and higher share owner value

Communication to employees (management and non-management) on service, sales, and sales incentives must be positive and ongoing:

- Joint union-company communications is best approach
- All service representatives will be trained on product knowledge and sales techniques to enhance their sales capabilities in the performance of their job
- Communications should emphasize overall good service as well as sales
- Communications should focus on both the why and the what of sales incentives
- Communications process must include periodic follow-up with service representatives and a feedback mechanism for issues and timely resolution of issues

Ethical sales practices and strict adherence to company policy and/or negotiated agreements will not be compromised:

- No tolerance for unethical sales, dishonest behavior, or behavior that promotes unethical sales or dishonest behavior

Individual incentives will be over and above base wages.

- No wages will be at risk

Sales quotas will not be set for service representatives, however, sales goals may be set for service representatives with the following conditions:

- Individuals will not be disciplined for failure to meet sales goals
- Company will continue to train all service representatives on product knowledge and sales techniques and provide ongoing coaching on the same
- Sales goals will be based on sales opportunities

MEMORANDA OF AGREEMENT

* Company and Union will work together to place those who do not desire to work in a sales environment
* Although sales are a part of the service representative performance development process (PDP) standards, under no circumstances will sales effectiveness be the sole factor used to determine that an employee is not meeting acceptable work performance standards
* Company and Union will work together to find out why people are not able to properly use trained sales techniques and figure out how to build employee sales capability and/or provide assistance

Pacific Bell/Nevada Bell                    Communications Workers of America

Agreed: _____              Agreed: _____
        Director - Labor Relations                Area Director

Date: 1-22-98                          Date: 1/22/98

---

R.E. Eastwood                708 Carrera Parton
Executive Director           San Ramon, California 94583
                             415-823-9400

PACIFIC BELL
A Pacific Telesis Company

SEP 1 1 1986

Mr. Ken Croswell                    Mr. Reid B. Pearce
Assistant to the Vice President,    Administrative Assistant to
District 9                          the Vice President, District 9
Communications Workers of America   Communications Workers of America
411 Airport Boulevard               6033 West Century Boulevard
Burlingame, California  94010       Suite 600
                                    Los Angeles, California  90045

Gentlemen:

This letter supersedes our prior agreement of August 24, 1983 (old tab 258) regarding scheduling of employees for Sunday plus Four to reflect the current contractual references. This agreement continues and reads as follows:

"Employees defined in Appendix A, Section A1.01, A2.01 and Appendix B, Section B1.01 subparagraphs A and B may voluntarily waive the requirement as stated in Appendix A, Section A1.02J and A2.02I and Appendix B, Section B1.03J to be scheduled for Sunday plus four additional consecutive days.

An employee will be scheduled according to the Sunday plus four additional consecutive days rule unless the employee notifies his/her supervisor of his/her waiver one week prior to the posting of the schedule."

COMMUNICATIONS WORKERS OF AMERICA            PACIFIC
                                             NEVADA BELL

Agreed: _____              By: _____
        Assistant to the Vice              Executive Director-
        President, District 9              Labor Relations

Date: Sept. 11, 1986                   Date: 9-11-86

Agreed: _____
        Administrative Assistant
        to the Vice President,
        District 9

Date: 8-11-86

# MEMORANDUM OF AGREEMENT

## RELOCATION

This Memorandum of Agreement will confirm our understanding of August 6, 1995, with respect to reasonable moving costs as provided for in Section 2.08A of the Contract between Pacific Bell/Nevada Bell and the Communications Workers of America. This memorandum cancels and supercedes our letter on the same subject dated June 20, 1990.

Relocation expense reimbursement will be paid to employees who accept a Company-initiated transfer to a non-commutable work location. Company-initiated transfers are those transfers and reassignments made under the provisions of Section 2.05 or Section 2.06 of the Contract. A work location shall be considered to be non-commutable as described in Section 2.08E of the Contract.

An employee who accepts a Company-initiated transfer to a non-commutable work location will be eligible for moving expense reimbursement if the employee has moved his/her residence to a commutable location ( as described in Article 2, Section 2.08E of the Contract ) or if, in the determination of the Companies, the employee has moved his/her residence appreciably closer to the new work location.

1. Relocation expense reimbursement will be paid according to the attached schedule, up to a maximum of $ 12,000.00. or

2. A commute allowance of $200 per month will be paid for up to three (3) years. Employees who elect the commute allowance in lieu of relocation ( CILOR ) may, within one (1) year from the date of transfer, elect to move their residence. In such cases, relocation expenses will be reimbursed in accordance with the attached schedule, up to a maximum of $ 9,600. In no event will the combination of commute allowance and moving expenses exceed $ 12,000.

This Memorandum of Agreement will also confirm our understanding of November 27, 1989, regarding the application of relocation benefits. This Memorandum of Agreement supersedes our letter dated December 18, 1986; however, this Memorandum does not change the intent of that letter, which reads as follows:

" In the event an employee who is commuting to work, on his/her own volition, a distance exceeding that which is normally considered commutable and is subject to a Company-initiated move to a location which is also non-commutable but results in a commute that is less than the employee's previous commute, the employee will not be entitled to relocation benefits including CILOR.

However, if an employee, under similar circumstances, is subject to a Company-initiated move which results in a commute greater than that which the employee previously experienced, the employee will be entitled to relocation benefits should the employee decide to move his/her residence within one year of the effective date of the Company-initiated move, or CILOR. "

**Effective date/language:**

Upon ratification of the Contract.

**Termination date/language:**

In accordance with the conclusion Article of the currently effective collective bargaining agreement between Pacific Bell/Nevada Bell and the Communications Workers of America.

**Coverage:**

Pacific Bell   Yes

Nevada Bell   Yes

ORIGINAL SIGNED: August 8, 1995

ATTACHMENT

RELOCATION EXPENSE TREATMENT-CWA

1. **EXPLORATORY TRIP TO NEW LOCATION**

    A.  Mileage.................................................Standard
              ..........................................................Company rate
    B.  Per Diem ( meal and miscellaneous )...........$30/day
    C.  Lodging-actual, not to exceed..................$75/day maximum
    D.  Exploratory trip, not to exceed...............5 days maximum
    E.  Immediate family members may go on
        Exploratory Trip. Expense treatment
        as follows:

        -  Spouse meals-actual, not to exceed........$15/day
        -  Children under 12 years-actual,
            not to exceed.........................$7.50/day
        -  Children over 12 years-actual,
            not to exceed.........................$15/day
        -  Lodging/spouse-actual, additional
            not to exceed.........................$10/day max.
        -  Lodging/children-actual, additional
            not to exceed.........................$5/day max.
        -  Babysitter for children-actual
            documented costs, not to exceed...........$25/day

2. **TEMPORARY LIVING**

    Lump sum amount of $ 4,750 in lieu of receipted expenses.

3. **MOVING OF HOUSEHOLD FURNISHINGS**

    Arrangements made through Relocation office. Actual expenses reimbursed

4. **EN ROUTE EXPENSES**

    Expense treatment same as during
    Exploratory Trip. Mileage at Standard
    Company Rate for a maximum of 2 cars.

    En route expense normally reimbursed
    for a maximum of 1 night's lodging and
    2 days' meals.

RELOCATION EXPENSE TREATMENT-CWA ( Continued )

5. **MOBILE HOMES**

    Cash allowance for moving mobile home in lieu of reimbursement for moving
    household. Cash allowance determined by Relocation Coordinator. Allowance
    will not exceed estimated cost of moving employee's personal household
    furnishings that are in the mobile home.

6. **MISCELLANEOUS**

    Documented loss of rent, including          Up to $500
    penalties associated with leases,
    with business transfer termination
    privileges.

    Home/Apartment Finding Service Fee     Up to $200
    ( e.g., Relocation Consultants )

7. **DISCOUNTED MORTGAGE RATES**

    Provide the name of a national lender
    who will offer discounted mortgage rates
    to qualified employees.

8. **PURCHASE/RENTAL ALLOWANCE**

    Allowance to those who relocate and     $ 1,000
    purchase a residence or who rent their
    primary residence.

MILEAGE REIMBURSEMENT RATE

Per Article 5, Section 5.05C4c of the 1995 Agreement, employees shall be reimbursed at
the rate of thirty cents ( $ .30 ) per mile for mileage incurred on or after March 1, 1995.

In the event the Internal Revenue Service ( IRS ) changes the reimbursement rate for
mileage, the Companies will adjust the mileage reimbursement rate to the maximum
allowable rate. The Companies will determine and inform the Union of the date on which
employees will begin receiving any new mileage reimbursement rate.

July 12, 2009


Tom Runnion
Staff Representative
Communications Workers of America – District 9
2804 Gateway Oaks Drive, Suite 150
Sacramento, CA 95833

**Re: Single Bargaining Unit**

Dear Tom:

This letter is to confirm our understanding regarding employees holding the job titles covered by
Appendices A, B, D, and E. The Companies and the Union agree that based upon our mutual
intent, employees in the job titles covered by Appendices A, B, D, and E are and have been a
single bargaining unit.


**COMMUNICATIONS WORKERS**
**OF AMERICA**                        **AT&T WEST LABOR RELATIONS**

*Tom Runnion*                         *Doug G. Flores*

Tom Runnion                           Doug Flores
Staff Representative                   Executive Director


7/12/09 12:58 PM

# MEMORANDUM OF AGREEMENT

## SUBCONTRACTING

The Companies prefer to have employees in the bargaining unit perform traditional
telephone work. However, when the Companies determine that it is necessary to
subcontract that type of work, the Companies agree to the following:

1. The Companies will provide notice to the appropriate Union Local before contracting
   out work when the contracting project is anticipated to last more than ninety (90)
   days and to discuss the reasons for the contracting.

2. To carefully consider the use of union-represented contractors to perform traditional
   telephone work with the understanding that the selection of any contractor is
   determined solely by the Companies.

3. From time to time, but no less frequently than every six (6) months, the Vice
   President-Labor Relations, the Business Unit Presidents, or next level of
   management below if the Presidential level does not exist for that organization, and
   the Vice President-District 9, or their designated representatives, will meet to
   discuss the issue of subcontracting and its impact on employees. In addition, this
   committee may review situations where contractors are performing traditional
   telephone work and the work is expected to continue long-term and discuss
   appropriate solutions.

4. The Vice President-Labor Relations and the Vice President-District 9 will also
   establish a joint committee to examine work previously performed by bargaining unit
   employees to determine if it would serve the interests of both parties to have the
   work brought back into the Companies. The joint committee should be formed within
   60 days following ratification and have their first meeting within 90 days following
   ratification. The joint committee shall make recommendations to the Vice President-
   Labor Relations and the Vice President-District 9 within 90 days of holding such
   meeting. The Union members of the joint committee will be paid in accordance with
   Section 3.02B of the current collective bargaining agreement.

5. The Companies will provide the Union a monthly report regarding the contracting of
   bargaining unit jobs. The report will include:

   - The name of the contractor.
   - The type of jobs being contracted.
   - The estimated number of jobs being contracted.
   - The location of the contracted work.
   - The length of the contract and duration of the work at each location.

## MEMORANDUM OF AGREEMENT

## SUBCONTRACTING

Any claims of non-compliance with the terms of this Agreement may be immediately escalated, in writing, to the National Union's Area Director and Labor Relations Executive Director. If they are unable to resolve the issue, the Union may, within thirty (30) calendar days of the escalation, notify the Company of their intent to arbitrate issues of non-compliance with this Agreement.

Effective Date:     With ratification

Termination Date:   With the Conclusion Article of the 2001 Collective Bargaining
                    Agreement

Applies to:     Pacific Bell              X          SBC Services, Inc.       X
                Nevada Bell               X          SBC Telecom, Inc.        X
                ASI                       X          PB Home Entertainment    X

**Communications Workers of America**          **The Companies**

Agreed: _____              Agreed: _____

        James B. Gordon                                 James K. Beck
        Area Director CWA - District 9                  Vice President - Labor Relations

Date:   3/23/01                                Date:   3/07/01

The Pacific Telephone and Telegraph Company (Company) has the responsibility for providing high-quality telephone service to the public. This includes not only the proper functioning of equipment but such things as accuracy, completeness, promptness, courtesy and helpfulness of employees in business transactions with customers. It is agreed by the Company and the Communications Workers of America (Union) that appropriate procedures will be used to meet this obligation.

In addition, the Company and the Union agree that the laws with respect to secrecy of communications must be followed, and that both have an obligation to prevent any acts by employees which tend to perpetrate fraud, violate secrecy or cause loss of revenue.

It is agreed that supervisory monitoring as defined and referred to in CPUC Decision No. 73146 may be used to achieve the above objectives.

As defined, "Supervisory monitoring" is used by telephone companies to train and supervise individual employees in their performance of telephone service assignments.

Under CPUC Decision No. 73146, supervisory monitoring is permitted without notice (i.e., without a "beep tone") when performed without the making of any written notation or any record of the contents, substance, purpose, effect, or meaning of any conversation (which includes the employee's conversation) which may have been heard during said supervisory monitoring.

A person performing supervisory monitoring may not disclose to anyone (including supervisory personnel and the observed employee) any part of any conversation overheard while performing such supervisory monitoring.

The Company is obligated to insure, by proper training and direction of its supervisory people, that supervisory monitoring is properly used. To insure that this is done the Company agrees to train its supervisory people in the implementation of this Agreement covering the use of supervisory monitoring as follows:

a. Record of supervisory monitoring will be made on check-off type summary sheets recording only technical details and manner of job performance. No written notations of a conversation will be made except as absolutely necessary to protect secrecy of communications or to prevent fraud or loss of revenue.

b. When a record of a job discussion between a Traffic or Central Office Manager, or other supervisor and the observed employee is made, it will not include the contents, substance, purpose, effect, or meaning of any observed conversation, unless secrecy of communications, fraud, or loss of revenue is involved. An employee shall be permitted to review his/her personnel record upon his/her request.

c. Supervisory monitoring may be used to determine training needs and to evaluate the grade of service of individual employees. Other supervisory steps, such as training sessions, visual observation, individual discussions and coaching shall be used in addition to supervisory monitoring to evaluate and improve an employee's performance.

d. Employees subject to supervisory monitoring will be so advised.

e. Supervisory monitoring will be done only in the quarters where the employee is working.

This Agreement does not preclude the Union's right of grievance procedure and/or arbitration as set forth in the Agreement between the parties.

This Agreement may be terminated by either party in accordance with the appropriate Collective Bargaining Agreement covering Wages, Hours and Working Conditions for bargaining unit employees represented by the Union.

_P.D.B. Schneider_
Communications Workers
of America, AFL-CIO

_H. M. Gorham_
The Pacific Telephone and
Telegraph Company
Bell Telephone Company of Nevada
Oct. 12, 1971

---

## Memorandum of Agreement

## Monitoring and Recording of Calls

This Memorandum of Agreement confirms the understanding between the Companies and the Union regarding the monitoring and recording of calls for service assurance and evaluative purposes. This agreement applies to Call Centers in the Consumer Markets Group (CMG), Small Business Solutions, National Customer Support, AT&T Business Solutions Customer Care Ordering, and the Credit and Collections organization.

Call Centers that do not currently have the ability to record calls will follow the terms and conditions of the prior Monitoring MOA's until recording equipment is installed. AT&T Business Solutions Group will follow MOA 95-20, Credit and Collections and the National Customer Support Organizations (NCSC and Broadband repair) will follow MOA 71-7. For the first sixty (60) days after a Broadband repair center implements supervisory monitoring, monitored calls will be used only for coaching and development purposes.

- Customer calls recorded for service assurance will not result in employee discipline unless Call Handling/Customer Contact Misconduct violations are involved. Call Handling/Customer Contact Misconduct violations include: slamming, cramming, fraud, deliberate falsification of records, intentionally disconnecting customers, intentionally not following required disclosures, privacy violations, customer mistreats, work avoidance, camping to avoid calls, inappropriate message or conversation content, and performing personal activities when scheduled to serve customers. Work performance issues are not to be considered or construed as Call Handling/Customer Contact Misconduct.

  For the first ninety (90) days following the effective date of this Agreement or, for those organizations which do not have recording capability, the first ninety (90) days following the Department's implementation of recordings, prior to meeting with employees to discuss Call Handling/Customer Contact Misconduct violations regarding calls recorded for service assurance, a review of such calls will be conducted by a Labor Relations Manager and a National Union Representative.

- Recorded calls and monitoring used for evaluative purposes are intended to result in enhanced training and coaching and will take place as described below:

  To be done only when a visual indicator has notified all employees in the workgroup and a published monthly or weekly recording and monitoring schedule at the team/section level has been provided to employees. Supervisors will have the ability to reschedule a recording or monitoring session when necessary due to unforeseen circumstances, e.g., called in sick, personal tragedy, etc.

  Shall be limited to no more than ten (10) calls per month. Such evaluative recording and/or monitoring of an employee will take place no more than two (2) days per month and will be limited to one (1) session each day.

  New employees for six (6) months following initial training will have no limit to the number of evaluative calls recorded and/or monitored and will not be notified of evaluative recording or monitoring by either a visual indicator or a published schedule.

  Coverage of an employee should take place as soon as possible, but must take place within twenty-four (24) hours of the evaluative call being monitored. However, for evaluative recorded calls, management review of the call must take place within one week of the recording and coverage of the recorded call must take place within twenty-four (24) hours following the review of the recorded call.

  Normal retention of recordings will be no more than forty-five (45) days. Where the recording is used to substantiate disciplinary action, it shall be retained until all appeal processes are concluded. A copy of the recording will be provided to the Union upon request for purposes of problem solving. To ensure compliance with legal and regulatory customer privacy requirements, a Non-Disclosure Agreement will be signed by the appropriate Union representative prior to receiving a copy of the recorded call and applicable screen shots.

  No employee will be dismissed solely as a result of evaluative recording and/or monitoring, unless Call Handling/Customer Contact Misconduct violations are involved. Call Handling/Customer Contact Misconduct violations include: slamming, cramming, fraud, deliberate falsification of records, intentionally disconnecting customers, intentionally not following required disclosures, privacy violations, customer mistreats, work avoidance, camping to avoid calls, inappropriate message or conversation content, and performing personal activities when scheduled to serve customers.

- Simultaneous monitoring and recording will be used solely for coaching and development of management personnel and will be done only with the concurrence of the monitored employee.

- Monitoring or recording of calls that is performed by anyone other than management shall be used for coaching and development and may not be used for evaluative or disciplinary purposes. Employees receiving Relief Differential are not management.

- Desk Top Screen shots will be used primarily for coaching and training purposes.

- Local Union representatives will be provided recording usage reports upon request or in the problem resolution process.

- To facilitate implementation, the Companies agree for sixty (60) days from the installation of the recording equipment in each office, to use recorded calls and screen shots for coaching purposes only.

- The Companies will provide the Local Union with thirty (30) days notice of the date the recording equipment is to be installed in an office to provide information and answer any questions. The Union will have full participation in the creation and implementation of any communication plan. Participation will include the CWA Local Presidents or their designee and Company Vice Presidents or General Managers or their designee. Joint communication sessions for employees will be scheduled in work groups to describe the recording and monitoring process and the contents of this MOA.

## GLOSSARY OF TERMS

*Administrative Monitoring* – A random sampling that provides the utility with an overall evaluation or index of the quality of service provided by an office or workgroup, without reference to or identification of an individual employee.

*Coach* – One who guides and directs performance growth and development.

*Deskside* – Monitoring that is done at the desk of the employee being monitored.

*Development* – Any activity focused on improving or enhancing an employee's performance or behavior.

*Discipline* – Any action taken by the coach that carries negative consequences for non-performance.

*Monitoring* – A third-party listening to both sides of the telephone conversation between two other parties.

*Simultaneous Monitoring* – Two or more managers monitoring the same call at the same time for the purpose of coaching and development of management personnel. Simultaneous monitoring is done only with the concurrence of the monitored employee.

*Supervisory Monitoring* – Monitoring to train and supervise individual employees in their performance of telephone service assignments.

*Work Performance Issues* – Issues directly related to the day-to-day job assignment and job functions such as attendance, average handling time, sales objectives, and related measurements of work standards.

248

---

| Effective date/language: | With ratification |
| Termination date/language: | With expiration of the 2009 Collective Bargaining Agreement |

**Applies to:**

| | | | |
|---|---|---|---|
| Pacific Bell Telephone Company (Except Appendix E) | X | AT&T Video Services, Inc. | |
| Nevada Bell Telephone Company (Except Appendix E) | X | SBC Global Services, Inc. | |
| AT&T Services, Inc. | X | Appendix E | |

| Communications Workers of America | AT&T West |
|---|---|
| Agreed: *Tom Runnion* | Agreed: *Doug Flacre* |
| Tom Runnion | Doug Flores |
| Staff Representative | Executive Director - |
| CWA – District 9 | Labor Relations |
| Date: 8-9-09 | Date: 8-9-09 |

249

# MEMORANDUM OF AGREEMENT

## SUPERVISORY MONITORING - SERVICE REPRESENTATIVES

This Memorandum of Agreement confirms the understanding between the Company and the Union regarding Supervisory Monitoring for Service Representatives in Pacific Bell.

Supervisory monitoring will be conducted as follows:

* Done only when all employees in the work group have been notified by a visual indicator which will be used only when monitoring is taking place.

* Monitoring used for evaluative or disciplinary purposes shall be limited to no more than 10 calls per month. Such monitoring of an employee will take place no more than two days per month and will be limited to one monitoring session each day.

* New employees for six (6) months following initial training will have no limit to the number of calls monitored.

* Coverage of an employee should take place as soon as possible, but must take place within 24 hours of the call being monitored.

* No employee will be dismissed solely as a result of monitoring unless secrecy of communications, fraud or gross customer abuse is involved.

* Simultaneous monitoring will be used solely for coaching and development of management personnel and will be done only with the concurrence of the monitored employee.

* Monitoring that is performed by anyone other than management shall be used for coaching and development and may not be used for evaluative or disciplinary purposes. Employees receiving Relief Differential are not management.

To facilitate implementation and understanding, the Union and the Company recognize the importance of developing a best practices package for supervisory monitoring. To assure this, we agree to reconvene the Supervisory Monitoring Joint Committee to develop a best practices for supervisory monitoring package. The Supervisory Monitoring Joint Committee will have the best practices package developed by December 31, 1995. The Union and the Company also agree that common definitions are important and further agree that the terms listed in the attached Glossary of Terms will have the meanings stated there.

Effective date/language:

Upon the ratification of the Contract.

Termination date/language:

This Memorandum of Agreement will be subject to termination in accordance with the Conclusion Article of the currently effective collective bargaining agreement between Pacific Bell/Nevada Bell.

Coverage:

Pacific Bell   Yes

Nevada Bell    No

ORIGINAL SIGNED:   August 8, 1995

SUPERVISORY MONITORING JOINT COMMITTEE

GLOSSARY OF TERMS

* Monitoring - A third party listening to both sides of the telephone conversation between two other parties.

* Administrative Monitoring - A random sampling that provides the utility with an overall evaluation or index of the quality of service provided by an office or work group without reference to or identification of an individual employee.

* Supervisory Monitoring - Monitoring to train and supervise individual employees in their performance of telephone service assignments.

* Simultaneous Monitoring - Two or more managers monitoring the same call. This activity is used solely for coaching and development of management personnel and is done only with the concurrence of the monitored employee.

* Deskside - Monitoring that is done at the desk of the employee being monitored.

* Remote - Monitoring that is done away from the desk of the employee being monitored, but within the same general work area.

* Development - Any activity focused on improving or enhancing an employee's performance or behavior.

* Coach - One who guides and directs performance growth and development.

* Discipline - Any action taken by the coach which carries negative consequences for non-performance.

* Gross Customer Abuse - Use of profanity and ethnic or sexual slurs that obviously causes the customer distress.

| | SECTION | PAGE |
|---|---|---|
| Absence | | |
|    Death In Family | 6.05A3 | 69 |
| | *D5.10* | *161* |
| | *E1.04L* | *199* |
|    Effect on Wage Increase | 5.01B1 | 51 |
|    Jury Duty | 6.05A1 | 68 |
| | *D5.09* | *161* |
|    Leave of, Personal | 6.05B | 69 |
|    Leave of, Union Activities | 3.03A&C | 32,34 |
|    Personal Days Off | 6.04 | 67 |
| | *D5.07* | *160* |
|    Sickness | 5.01F-H | 52,53 |
| | *D5.11* | *162* |
| | *E1.04M* | *199* |
|    Voting | 6.05A2 | 68 |
| Access to Company Premises, Union | 3.05 | 37 |
| Americans With Disabilities Act (ADA) | 3.09B | 41 |
| *Appearance Standards/Dress Code* | *E1.03P* | *195* |
| Approved Union Activities on Company Premises | 3.05B | 36 |
| Arbitration | | |
|    Arbitrator's Decision | 7.13 | 82 |
| | *D10.09* | *174* |
|    Arbitrator, Power of | 7.12 | 81 |
| | *D10.08* | *174* |
|    Arbitrator, Selection of | 7.11 | 81 |
| | *D10.07* | *174* |
|    Back pay, Reinstatement After Arbitration | 7.14 | 82 |
| | *D10.05F* | *173* |
|    Effect of Resolution | 7.14 | 82 |
|    Expedited | 7.15 | 82 |
| | *D11.10* | *175* |
|    Expenses | 7.16 | 83 |
| | *D10.12* | *176* |
|    Mediation | 7.18 | 83 |
| | *D10.11* | *175* |
|    Notice to Company, Time Requirements | 7.10C | 80 |
| | *D10.05C* | *173* |
|    Procedures | 7.10 | 79 |
| | *D10.05* | *173* |

| | SECTION | PAGE |
|---|---|---|
| Time Limits, Computation of | 7.17 | 83 |
| | *D10.05B,E* | *173* |
| Assigned Employees, Force Rearrangement | 2.05B3a | 11 |
| Assigned Employees, Surplus | 2.06B7 | 16 |
| Assigning Titles and Work | 4.02 | 45 |
| | *D6.09* | *163* |
| | *E1.03L* | *194* |
| Assigning of Scheduled Weekend and Holiday Work | A4.02J | 110 |
| Attendance at Meetings, Union | 3.05D | 38 |
| Authorized Holidays | 6.03A | 65 |
| Authorized Representatives, Bargaining | 3.02A | 29 |
| | *D5.01* | *158* |
| | *E1.04A* | *196* |
| Authorized Representatives, Problem Resolution | 3.02A | 29 |
| Automated Upgrade & Transfer System (AUTS) | 2.04 | 4 |
| | *E1.01B* | *187* |
| Automobile, Use of Personal | 5.05C4 | 60 |
| | *D6.10B* | *163* |
| | *E1.03M2* | *195* |
| Average Workweek | 4.03A | 46 |
| | *E1.02D* | *191* |
| Bad Weather Conditions | 5.01I | 53 |
| Benefit Eligibility | 4.03E | 50 |
| Benefit Plan | | |
| Changes in Plan | 5.07A | 62 |
| | *D9.01* | *170* |
| Grievance and Arbitration | 5.07B | 62 |
| | *D.9.03* | *171* |
| *Branded Apparel* | *E1.03O* | *195* |
| Bulletin Boards | | |
| Authorization | 3.06B | 38 |
| Posted Materials – Limitations | 3.06C | 38 |
| Specifications | 3.06A | 38 |
| Termination of Privilege | 3.06D | 38 |

| Call-Outs | SECTION | PAGE |
|---|---|---|
| Immediate Services (Non-Scheduled Workday) | 5.04J | 57 |
| | A3.03C | 104 |
| Immediate Services (Scheduled Work Day) | 5.04I | 57 |
| | A3.03B | 104 |
| Less than 3 Hours Before Shift | 5.04G | 56 |
| More than 3 Hours Before Shift | 5.04H | 57 |
| Standby Pay | 5.06 | 61 |
| *Cancellation of Hours* | *D6.03* | *162* |
| | *E1.03D* | *193* |
| Career Development Programs | 2.02 | 3 |
| Carfare | 5.05C | 60 |
| Change of Assignment and Wage Administration | C8 | 150 |
| *Change of Hours* | *D6.03* | *162* |
| | *E1.03C* | *193* |
| Change of Shift Requests | 2.04E1 | 8 |
| Change of Work Location Requests | 2.04E2 | 9 |
| *Changes to Job Titles* | *D6.12* | *164* |
| Christmas & New Year's Eve Special Payments | 6.03C | 65 |
| *Classification of Employees* | *D3* | *157* |
| Communication and Problem Solving | 7.03 | 73 |
| Commutable Temporary Work Location | 5.05C2 | 60 |
| Company Premises, Access by Union | 3.05 | 37 |
| Company's Grievance Decision to Union Time Requirements | 7.07 | 79 |
| *Compensation* | *D7* | *167* |
| *Eligibility* | *D7.01* | *167* |
| *Weekly Wages* | *D7.02* | *168* |
| *Wage Increases* | *D7.03* | *168* |
| *Discretionary Lump Sum Payments* | *E1.08A* | *203* |
| *Discretionary Wage Increases* | *D7.04* | *168* |
| *Lump Sum Wage Increases* | *D7.05* | *168* |
| *Additional Cash Awards* | *D7.06* | *169* |
| | *E1.08B* | *203* |
| Condition of Employment, Dues Requirement | 3.07A-C | 39 |
| Consolidated Headquarters | 2.09B | 24 |
| Contract, Copies of | 1.05 | 1 |
| Contract Employees, Replacement of | 2.06C | 18 |

| | SECTION | PAGE |
|---|---|---|
| Death in the Family | 6.05A3 | 69 |
| | *D5.10* | *161* |
| | *E1.04L* | *199* |
| Differentials | | |
| *AT&T Video Services, Inc.* | B2.07 | 118 |
| Operator Services – Various | A3.05 | 105 |
| | C7 | 149 |
| Relief – Management | 5.02A | 53 |
| Shift | 5.03 | 54 |
| Disability and Wage Changes | C3.01A2 | 125 |
| Discrimination | 3.09 | 41 |
| Discussing Problem Resolution with Employees | | |
| After Referred to Union | 7.05H | 78 |
| | *D10.03* | *171* |
| Dismissals | | |
| Back Pay – Reinstatement | 7.14 | 82 |
| Employee Rights – Investigation | 7.19A | 85 |
| Grievance Procedure | 7.05 | 74 |
| Payment At Time of | 7.19B | 85 |
| Distribution of Extra Time | A1.05E | 100 |
| | A4.03B | 111 |
| | B2.05B | 117 |
| | *E1.03F* | *193* |
| Dues, Union | | |
| Arranging Payroll Deduction | 3.08A | 39 |
| Canceling Payroll Deduction | 3.08A, E, F | 39,40 |
| Changes In Amount | 3.08C | 40 |
| Company Responsibility | 3.08A&H | 39,41 |
| Condition of Employment | 3.07A | 39 |
| Employee Career Development Programs | 2.02 | 3 |
| Employee Discipline, Union Representation | 7.02A | 73 |
| *Employee Discount Program* | *E1.08C* | *203* |
| Employee Presentation, Problem Resolution | 7.09 | 79 |
| Employment Security Commitment | 2.01 | 3 |
| Excused Absences for Union Activities | 3.03A&B | 32,33 |
| *Excused Time Required by Law* | *D5.12* | *162* |
| | *E1.04N* | *199* |
| Expedited Arbitration | 7.15 | 82 |
| Allowance in Lieu of Per Diem | 5.05A2&3 | 58,59 |

| | SECTION | PAGE |
|---|---|---|
| Expense Treatment | | |
| Automobile, Use of Personal | 5.05C4 | 60 |
| Commutable Temporary Work Location | 5.05C2 | 60 |
| Lodging, Company Provided | 5.05A1 | 58 |
| Lodging, Employee Provided | 5.05A2 | 58 |
| Meal Allowance | 5.05B | 59 |
| Moving Expense | 2.08 | 23 |
| Non-Commutable Temporary Work Location | 5.05A1 | 58 |
| Per Diem | 5.05A | 58 |
| Relocation | 2.08 | 23 |
| Transportation | 5.05C | 60 |
| Union Reimbursement for Attending Joint Meetings | 3.02D-F | 30,31 |
| Weekend and Holiday Travel | 5.05A4 | 59 |
| Expiration Date, Contract | 10.01 | 93 |
| Extra Time Distribution | A1.05E | 100 |
| | A4.03B | 111 |
| | B2.05B | 117 |
| Fatigue Clause | 5.04H | 57 |
| Federal Laws | 3.10 | 42 |
| Final Department Position | 7.07 | 79 |
| | *D10.04J* | *172* |
| Flexible Starting Rates | 5.01D | 52 |
| Force Balancing | 2.05 | 9 |
| Force Movement | 2.06 | 12 |
| | *D8* | *169* |
| Force Rearrangements | 2.05B | 10 |
| Forty-Nine Hour Rule | 5.04L | 58 |
| General Increase | | |
| | C1.01-03 | 121 |
| | *D7.03* | *168* |
| | *E1.08* | *200* |
| Grandfathered, Part Time | 4.03A1 | 46 |
| Grievance Procedure | 7.05 | 74 |
| | *D10.04* | *171* |
| Discussions with Employee | 7.05F | 77 |
| Employee Presentation | 7.09 | 79 |
| *Executive Level* | *7.05.C* | *75* |
| Final Company Position | 7.07 | 79 |
| Information, Sharing | 7.06 | 78 |

| | SECTION | PAGE |
|---|---|---|
| Time Limits, Computation of | 7.17 | 83 |
| Time Limits, Presentation of | 7.04 | 74 |
| | *D10.04A* | *171* |
| Unresolved Union Presented Grievances | 7.08 | 79 |
| | | |
| Headquarters and Specified Limits | A1.04 | 98 |
| | A4.04 | 111 |
| Headquarters, Defined, Force Allocation | 2.09 | 24 |
| | B2.08 | 118 |
| Health | 9.01 | 91 |
| Holidays | | |
| Assignment of Work | 6.03D | 66 |
| Christmas and New Year's Eve Special Payments | 6.03C | 65 |
| During Scheduled Vacation Week | 6.03B | 65 |
| | *D5.03* | *159* |
| | *E1.04C* | *196* |
| Falling on *Saturday or* Sunday | 6.03A | 65 |
| List of eight Observed | 6.03A | 65 |
| *List of seven Observed* | *D5.01* | *158* |
| | *E1.04A* | *196* |
| Pay Treatment | *D5.01* | *158* |
| Not Paid for, Exceptions | 6.03E2&4 | 66 |
| Not Worked | 6.03E | 66 |
| Worked | 6.03F | 67 |
| | *D5.02* | *159* |
| | *E1.04B* | *196* |
| | | |
| Home Garaging | B2.09 | 119 |
| | *D6.14* | *166* |
| | *E1.03Q* | *196* |
| Hourly Pay Treatment | | |
| Hours of Work | A1.02 | 96 |
| | A3.02 | 102 |
| | A4.02 | 109 |
| | B2.04 | 116 |
| Immediate Family, Definition | 6.05A3 | 69 |
| Immediate Services | 5.04G-J | 56,57 |
| | A3.03B&C | 104 |
| Information Sharing | 7.06 | 78 |

| | SECTION | PAGE |
|---|---|---|
| Job Evaluation | 4.01 | 43 |
| Advanced Notification to Union | 4.01A&B | 43 |
| Change Due to New Technology or Functionalization | 4.01B | 43 |
| Negotiation Rights | 4.01D | 44 |
| Neutral Third Party | 4.01F&G | 44,45 |
| Wage Administration for Job Reclassification | 4.01B2 | 44 |
| Job Evaluation Transition Pay Plan (JETPP) | 4.01B2 | 44 |
| Joint AUTS Review Committee | 2.04D | 8 |
| Jury Duty | 6.04D | 68 |
| | 6.05A1 | 68 |
| | *D5.09* | *161* |
| | *E1.04K* | *199* |
| *Just Cause* | *D10.06* | *174* |
| Laws, Federal or State | 3.10 | 42 |
| Layoffs | | |
| Allowance | 8.01C | 87 |
| | B2.01D | 116 |
| | *D8.04* | *171* |
| | *E1.05B* | *200* |
| Allowance – Repayment After Rehire | 8.01D | 88 |
| *Force Adjustment* | *D8.03* | *170* |
| | *E1.05A* | *199* |
| Part-Time Employees | 8.01C1 | 88 |
| Recall Rights | 8.01F | 88 |
| | *D8.05* | *170* |
| Treatment for Recalled Employees | | |
| Subsequently Laid Off | 8.01E | 88 |
| Union Notification | 8.01A | 87 |
| | B2.01 A | 115 |
| Vacation Payment | 8.01C2 | 88 |
| Leave of Absence | | |
| Personal | 6.05B | 69 |
| Union Activities | 3.03A&C | 32,34 |
| Liaison Committees, Force Movement | 2.06B2 | 13 |
| Limits on Employees Paid Attending Meetings | 3.02B4 | 30 |
| Lodging, Temporary Non-Commutable Work Location | | |
| Company Provided | 5.05A1 | 58 |
| Employee Provided | 5.05A2&3 | 58,59 |
| Last Workday Payment | 5.01J | 53 |

|  | SECTION | PAGE |
|---|---|---|
| Management Returns | 2.06F | 19 |
| Meal Allowance | 5.05B | 59 |
| Meal Periods | A1.02H&I | 97 |
|  | A4.02G&H | 110 |
|  | B2.04I | 117 |
|  | *D6.07* | *163* |
|  | *E1.03I* | *194* |
| Meal Periods, Overtime | 5.04N | 58 |
| Mediation | 7.18 | 83 |
| Meetings Between Union and Management |  |  |
| Representatives | 3.02 | 29 |
| Authorized Representatives | 3.02A | 29 |
| Expense Reimbursement | 3.02D-F | 30,31 |
| Pay Treatment | 3.02B | 29 |
| Returning To Work – End of Meeting | 3.02C | 30 |
| *Memoranda of Agreement* | *E1.09* | *203* |
| Mileage Allowance | 5.05C4c | 60 |
| Minimum Payments, Immediate Services | 5.04J&K | 57 |
| Mini-Transfers | 2.04E | 8 |
| New Job Titles and Classifications |  |  |
| Advanced Notification to Union | 4.01A&B | 43 |
| Change Due to New Technology or Functionalization | 4.01B | 43 |
| Negotiation Rights | 4.01D | 44 |
| Neutral Third Party | 4.01F&G | 44,45 |
| New Years' and Christmas Special Payments | 6.03C | 65 |
| Non-Commutable Assignment, Defined | 2.08E | 24 |
| Non-Commutable Temporary Work Location | 5.05A | 58 |
| Non-Discrimination | 3.09 | 41 |
| Occasional Employees | 4.03D | 49 |
|  | *E1.02* | *190* |
| Occasional Meals | 5.05B | 59 |
| Occupational Job Evaluation (OJE) | 4.01 | 43 |
| Occupational Safety and Health | 9.01 | 91 |
| *Overnight Trips* | *E1.03N* | *195* |
| Overtime Definition | 5.04B | 55 |
|  | *D6.04* | *162* |

|  | SECTION | PAGE |
|---|---|---|
| Overtime and Premium Pay |  |  |
| Call-Outs | 5.04G-J | 56,57 |
|  | A3.03B | 104 |
|  | A3.03C | 104 |
|  | B2.05D | 118 |
| Distribution of Opportunity | A1.05E | 100 |
|  | A4.03B | 111 |
|  | B2.05B | 117 |
|  | *E1.03F* | *193* |
| Forty-Eight Hours' Notice | A1.03D | 98 |
|  | A4.03C | 111 |
| Forty-nine Hour Rule | 5.04L | 58 |
| Holidays – Pay Treatment | 6.03E&F | 66,67 |
| Meal Periods | 5.04N | 58 |
| Shift Change | A1.05D | 99 |
|  | A4.02B4 | 109 |
| Standby Pay | 5.06 | 61 |
| Sunday Work | 5.04F | 56 |
|  | A3.03A | 103 |
| Time Paid For But Not Worked | 5.04E | 56 |
|  | A3.03A1 | 103 |
| *Part-time Employees (Appendix E)* | *E1.02D1a* | *192* |
| *Vacation Day* | *E1.02D1c* | *192* |
| Part-time, Term, Temporary and Occasional Employees | 4.03 | 46 |
| Part-time Employees (Until January 1, 1993) |  |  |
| Holiday Pay | 6.03E1b | 66 |
| Vacation Pay | 6.02D&E | 64 |
| Part-time Employees: As of January 1, 1993 |  |  |
| Benefits | 4.03A2D | 48 |
|  | *E1.02D1a* | *191* |
| Grandfathered | 4.03A1 | 46 |
| All Other Employees | 4.03A2&3 | 47,48 |
| Holiday Pay | 6.03E1c | 66 |
| Vacation Pay | 6.02F | 64 |
|  | *E1.02D1c* | *192* |
| Paychecks, Distribution | 5.01K | 53 |
| Pay for Holidays Not Worked | 6.03E | 66 |
| Pay for Holidays Worked | 6.03F | 67 |

|  | SECTION | PAGE |
|---|---|---|
| Pay for Vacation Time | 6.02B-E | 64 |
| Pay Treatment for Union Representation | 3.02B | 29 |
| Payroll Deduction, Dues | 3.08 | 39 |
| Pension Bands | C2 | 122 |
| Pension Table Revision | C6 | 148 |
| Per Diem Payment | 5.05A | 58 |
| Personal Days Off | | |
| *Carry-Over* | *E1.04I* | *198* |
| Eligibility | 6.04A | 67 |
|  | *D5.07* | *160* |
|  | *E1.04H* | *198* |
| Employee Works, Options | 6.04C | 68 |
| Relief (Shift Change) | 6.04D | 68 |
| Scheduling | 6.06A-E | 69,70 |
| *Selection* | *D5.08* | *161* |
|  | *E1.04J* | *198* |
| Two (2) Hour Increments | 6.04B | 67 |
| While at Non-Commutable Temporary Work Location | 6.06L | 71 |
| Photocopies, Charge for | 7.06C | 79 |
| Placement Areas, Defined | 2.06B6e | 15 |
| Plan for Employees' Pension, Disability and Death Benefits | 5.07 | 62 |
| Premium Payments, Definition | 5.04C | 56 |
| *Priority Rehire* | *E1.05C* | *200* |
| *Probationary Employees* | *E1.02C* | *190* |
| Priority Placement Consideration for Surplus Employees | 2.06B6 | 14 |
| Problem Resolution, Presentation Steps | | |
| Discipline Other Than Dismissals | 7.05A | 74 |
| Dismissals | 7.05A | 74 |
| Other Problems | 7.05B | 75 |
| Rearrangement Areas, Defined | 2.06B6f | 15 |
| Reassignment Pay Protection Plan (RPPP) | 2.06B8 | 17 |
| Recall Rights | 8.01F | 88 |
| Recalled Employees | 8.01D | 88 |
| Reclassify Existing Jobs | 4.01B | 43 |
| Recognition | 1.01 | 1 |
|  | *D1* | *155* |
| *Regular Employees* | *E1.02B* | *190* |
| Reinstatement of Employee on Return from Absence | 3.03D | 36 |

|  | SECTION | PAGE |
|---|---|---|
| Relief Differential | 5.02 | 53 |
|  | A3.05B-E | 106,107 |
|  | *E1.03K* | *194* |
| Relocation Expense | 2.08 | 23 |
| Eligibility | 2.08A1 | 23 |
| Relocation of Existing Work | 2.05A | 10 |
|  | *D8.02* | *169* |
|  | *E1.01F* | *190* |
| Replacement of Contract Employees | 2.06C | 18 |
| Rescheduling Personal Days Off | 6.06E | 70 |
| Responsible Union-Company Relationship | 3.01 | 29 |
| *Rest Periods* | *D6.08* | *163* |
|  | *E1.03J* | *194* |
| Retreats, Regular Transfers | 2.04C | 7 |
| Retreats, Wage Administration | C8.06 | 154 |
| Returning To Work After Meetings | 3.02C | 30 |
| Review Committee, Joint AUTS | 2.04D | 8 |
| Rules Overtime | | |
| 2-Hour | 5.04I-K | 57 |
|  | A3.03B2 | 104 |
|  | A3.03C | 104 |
|  | B2.05D | 118 |
| 3-Hour | 5.04H | 57 |
|  | A1.05B | 97 |
| 4-Hour | 5.04K | 57 |
| 5-Hour | A1.05A | 99 |
| 8-Hour (Also See 40-Hour Below) | 5.04D | 56 |
| 40-Hour (Also See 8-Hour Above) | 5.04D | 56 |
| 40-Hour, Calculation | 5.04E | 56 |
| 48-Hour | A1.03D | 98 |
|  | A4.03C | 111 |
|  | 5.04L | 58 |
| 49-Hour | A1.03B | 97 |
| Posting Schedules | A4.02B | 109 |
|  | B2.04C | 116 |
| Sickness/Benefit Absence | 5.01F | 52 |
| Safety | 9.01 | 91 |
| *Local Safety Committee* | *9.01.C* | *92* |
| Scheduling, 15-Month Calendar | 6.06D | 70 |

| | SECTION | PAGE |
|---|---|---|
| Scheduling Planned Time Off | 6.06 | 69 |
| Selection, Sequence for Vacancies | 2.04B | 6 |
| Seniority | | |
| Assignment of Hours | A1.06D | 101 |
| | A3.04B | 105 |
| | A4.05C | 112 |
| | B2.06B | 118 |
| | *D4.02* | *157* |
| Defined | A1.06A | 100 |
| | A3.04A | 105 |
| | A4.05A | 112 |
| | B2.06A | 118 |
| | *D4.01* | *157* |
| | *E1.01E* | *189* |
| Separation Benefits | 2.07 | 19 |
| Sharing Information | 7.06 | 78 |
| Shift Changes, Temporary | 5.03A1c | 54 |
| Differentials | A1.05D | 99 |
| Temporary Change | A4.02B4 | 109 |
| Vacation and PDO Relief | 6.04D | 68 |
| Shift of Tour | | |
| Defined | A1.02A-E | 96 |
| | A3.02A | 102 |
| | A4.02A-F | 109,110 |
| | B2.04A-G | 116 |
| Differentials | 5.03 | 54 |
| | A3.05 | 105 |
| | B2.07 | 118 |
| | C7 | 149 |
| | *D6.05* | *163* |
| | *E1.03G* | *194* |
| Sickness Absence Payments | 5.01F-H | 52-53 |
| Sleep Day | 5.01J | 53 |
| Solicitation of Members on Company Premises | 3.05C | 37 |
| ***Split Work Days*** | *D6.02* | *162* |
| | *E1.03B* | *192* |
| Specified Limits | A1.02F | 96 |
| | A1.04B | 98 |

| | SECTION | PAGE |
|---|---|---|
| Standby Pay | | |
| Defined | 5.06A | 61 |
| | B2.05C | 118 |
| | *D6.13* | *166* |
| Assignment/Employee Requirements | 5.06B | 61 |
| | B2.05C | 118 |
| Compensation | 5.06C | 62 |
| | B2.05C | 118 |
| | *D6.13A* | *166* |
| State Laws | 3.10 | 42 |
| Steward List | 3.02A | 29 |
| Sundays, Premium Payment | 5.04F | 56 |
| | *D6.06* | *163* |
| | *E1.03H* | *194* |
| Surplus, Identification and Resolution | 2.06B-E | 13-19 |
| | *E1.01D* | *188* |
| Surplus, Steps to Reduce | 2.06A | 12 |
| Surplus, Work Group, Defined | 2.06B1a | 13 |
| Temporary Employees | 4.03C | 49 |
| Reclassification to Term Employees | 4.03C4 | 49 |
| Temporary Work Locations | 5.05A | 58 |
| | *D6.10* | *163* |
| | *E1.03M3* | *195* |
| | 4.03B | 48 |
| Term Employees | 4.03B | 48 |
| | *E1.02A* | *190* |
| Time-In-Title | C2 | 122 |
| Time Limits, Problem Resolution | | |
| Arbitration | 7.10D | 79 |
| | 7.18J | 84 |
| | 7.17 | 83 |
| Extensions, Computation of | 7.07 | 79 |
| Final Department Position | 7.04A&B | 74 |
| Grievance Presentation, Initial | 7.05C-G | 75-78 |
| Grievance Process | *D10.04E-I* | *171* |
| Mediation | 7.18B | 83 |
| Time Off for Union Activities | | |
| | 3.03 | 32 |
| | *D2.01,2.02* | *155,156* |
| Titles | C2 | 122 |

| | SECTION | PAGE |
|---|---|---|
| Titles and Applications | A1.01 | 95 |
| | A3.01 | 101 |
| | A4.01 | 108 |
| | B1 | 115 |
| | *D2.02* | *156* |
| | *E1.02* | *190* |
| Tour Differentials (Operator Services) | C7 | 149 |
| Training/Retraining Working Committees | 2.03 | 4 |
| *Transfers Appendices D and E* | *D8.01* | *169* |
| | *E1.01A&B* | *187* |
| Transfer, Automated System | 2.04 | 4 |
| Activity Reports | 2.04A3 | 5 |
| Intra-VP Entity Placement | 2.04B4 | 7 |
| Listing of Job Openings | 2.04A4 | 5 |
| Prerequisites | 2.04A6 | 5 |
| Selection | 2.04B | 6 |
| | C2 | 122 |
| Time-In-Title | 5.05C | 60 |
| Transportation | | |
| | *E1.03M1* | *195* |
| Travel Expense | | |
| Home Board and Lodging Allowance | 5.05A2 | 58 |
| | *D6.11B* | *164* |
| Mileage Allowance | 5.05C4c | 60 |
| | *D6.10* | *163* |
| | *E1.03M2* | *195* |
| Occasional Meals | 5.05B | 59 |
| | *D6.11C* | *164* |
| Per Diem Allowance | 5.05A | 58 |
| Transportation | 5.05C | 60 |
| | *D6.11A* | *164* |
| Weekend and Holiday Travel | 5.05A4 | 59 |
| Travel Time, for Meetings with Management | 3.02B2 | 30 |
| Triennial Collective Bargaining Meetings | 3.04 | 37 |
| Union Activities on Company Premises | 3.05 | 37 |
| Union-Company Meetings | 3.02 | 29 |
| Union-Company Relationship | 3.01 | 29 |

| | SECTION | PAGE |
|---|---|---|
| Union Dues | | |
| Arranging Payroll Deduction | 3.08A | 39 |
| Canceling Payroll Deduction | 3.08A, E, F | 39-41 |
| Changes in Amount | 3.08C | 40 |
| Company Responsibility | 3.08A&H | 39,41 |
| Conditions of Employment | 3.07A-C | 39 |
| Union Material, Distribution of | 3.06B | 38 |
| Union Notification, Changing Working Conditions | 7.03A | 73 |
| Union Presentation, Employees Problems | 7.04 | 74 |
| Union Representation, Employee Request | 7.02A | 73 |
| Union Representatives, Number Paid | 7.05A-B | 74,75 |
| | *D10.04D* | *172* |
| Union Security, Dues Requirement | 3.07A-C | 39 |
| Unresolved Union Presented Grievances | 7.08 | 79 |
| Upgrades (also see Transfers) | 2.04 | 4 |
| Vacation | 6.02 | 63 |
| After Returning from Accident and Disability Absences | 6.06M | 71 |
| After Returning from Leaves of Absence | 6.02G | 65 |
| | 6.06N | 71 |
| Carry Over | 6.06K | 71 |
| | *E1.04F* | *197* |
| Day-At-A-Time | 6.06I | 70 |
| Day Reliefs | 6.04D | 68 |
| Differentials | 5.03 | 54 |
| Eligibility After Leave of Absence | 6.06N | 71 |
| Eligibility, Full and Part-Time Employees | 6.02 | 63 |
| | *D5.05* | *159* |
| | *E1.04E* | *197* |
| Holiday During | 6.03B | 65 |
| Part-Time Employees | 6.02D&E | 64 |
| Pay, Determination of Status | 6.02B | 64 |
| Pay, Full Time Employees | 6.02C | 64 |
| Pay, Part Time Employees | 6.02D&E | 64 |
| Pay Treatment, Relief | 6.04D | 68 |

INDEX

|  | SECTION | PAGE |
|---|---|---|
| Pay in Lieu | 6.02H | 65 |
| Pay in Lieu, Leave of Absence | 6.06N | 71 |
| Pay in Lieu, Leaving Service | 6.06O | 71 |
| Relief Assignments | 6.06C | 70 |
| Scheduling | 6.06A&C | 69,70 |
| *Selection* | *D5.06* | *160* |
| | *E1.04G* | *198* |
| Week, Defined | 6.06H&J | 70,71 |
| While at Non-Commutable Temporary Work Location | 6.06L | 71 |
| Work Restrictions | 6.06H | 70 |
| *Year* | *E1.04D* | *197* |
| Voluntary Surplus Reduction Option (VSRO) | 2.07K | 22 |
| Voting Absence | 6.05A2 | 68 |
| Wage Administration Practice | C8 | 150 |
| Wage Areas | | |
| Zone E | C4.01 | 145 |
| Zone F | C4.02 | 145,146 |
| Zone G | C4.03 | 146,147 |
| Nevada | C4.04 | 148 |
| Wage Credit | 5.01E | 52 |
| Wage Credit, Absence Exceeds 30 Days | 5.01C | 52 |
| Wage Increases | 5.01B | 51 |
| Wage Increases, General | C1 | 121 |
| Wage Schedules | C2 | 122 |
| | C3 | 125 |
| | *E1.08* | *200* |
| Wage Schedules and Payments | 5.01 | 51 |
| Weather, Bad Conditions | 5.01I | 53 |
| Weekend Travel Expense | 5.05A4 | 59 |
| Work Schedules | | |
| Posting | A1.03B | 97 |
| | A4.02B | 109 |
| | B2.04C | 116 |
| | *D6.01* | *162* |
| | *E1.03A* | *192* |

|  | SECTION | PAGE |
|---|---|---|
| Work Week | | |
| Defined | A1.02J | 97 |
| | A3.02B | 103 |
| | A4.02I | 110 |
| | B2.04H | 116 |
| | *D6.15* | *167* |
| Working Conditions Changes, Union Notification | 7.03A | 73 |
| | *D10.01* | *171* |
| Working On A Scheduled Personal Day Off | 6.04C | 68 |