UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA JAMES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AT&T WEST DISABILITY BENEFITS PROGRAM, et al.,<br><br>　　　　Defendants. | Case No. 12-cv-06318-WHO<br><br>**ORDER ON MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 71 |

## INTRODUCTION

Having prevailed in this Employment Retirement Security Act ("ERISA") action for wrongful denial of long-term disability benefits, plaintiff Diana James moves for an award of attorney's fees in the amount of $200,794.50. James is entitled to fees, but the hourly rate she requests for her attorney is slightly above the prevailing market rate, and some of the hours she claims were expended unreasonably. I will GRANT the motion but reduce the requested fee award to $181,962.70.

## BACKGROUND

James filed this action on December 12, 2012, alleging that defendant AT&T Umbrella Benefit Plan No. 1 ("AT&T") wrongfully denied her long-term disability benefits despite evidence that she suffered from chronic pain and depression. Dkt. Nos. 1, 55. On June 2, 2014, I granted James's summary judgment motion, and on July 18, 2014, a final judgment was entered ordering AT&T to pay James benefits in the amount of $55,861.69. Dkt. Nos. 55, 69. James filed this motion for attorney's fees on July 30, 2014. Dkt. No. 71. Pursuant to Civil Local Rule 7-1(b), I determined the matter was suitable for disposition without oral argument and vacated the hearing set for September 3, 2014. Dkt. No. 77.

**LEGAL STANDARD**

Under 29 U.S.C. § 1132(g)(1), a court in its discretion may award reasonable attorney's fees to either party in an ERISA action. In exercising its discretion, a court should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). No one of these factors is "necessarily decisive," and some may not be relevant in a given case. *Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

"ERISA . . . is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). Accordingly, courts generally construe the *Hummel* factors in favor of plan participants, and the Ninth Circuit has held that an employee plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* (internal quotation marks omitted). The test for whether an employee plaintiff has prevailed in the litigation is not whether she succeeded on all her claims, but whether she succeeded on any significant, litigated issue "which achieves some of the benefit [she] sought in bringing suit." *Id.* (internal quotation marks omitted).

To set a fee award, the court "must determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The burden is on the party seeking the award to "submit evidence supporting the hours worked and the rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Hours that are not properly billed to one's client also are not properly billed to one's adversary." *Id.* at 434 (internal quotation marks and emphasis omitted). Thus, the court should exclude from its lodestar calculation hours that were not

reasonably expended because they were "excessive, redundant, or otherwise unnecessary." *Id.* In the Ninth Circuit, a district court may "impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).

"Sometimes, as when the plaintiff seeks only injunctive relief, or when the statute caps plaintiffs' recoveries, or when for other reasons damages are substantially less than attorney's fees, court-awarded attorney's fees can exceed a plaintiff's monetary recovery." *C.I.R. v. Banks*, 543 U.S. 426, 438 (2005); *see also, Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986) ($33,350 in compensatory and punitive damages; $245,456.25 in attorney's fees).

## DISCUSSION

AT&T does not dispute that James is entitled to attorney's fees under section 1132(g)(1). AT&T disputes only the lodestar figure that James proposes. AT&T contends that the hourly rate that James requests for her attorney ($675 per hour) is above the prevailing market rate, and that the claimed hours should be cut because many of them were expended either unreasonably or on clerical tasks.

James is entitled to an attorney's fees award. The relevant *Hummell* factors weigh in her favor, there are no special circumstances indicating otherwise, and AT&T does not dispute that she is entitled to at least some amount in fees. In these circumstances, James is entitled to reasonable attorney's fees under section 1132(g)(1). Accordingly, I will grant the fees motion, although not in the exact amount that she requests.

### I.  HOURLY RATES

A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking the fee award has the burden of submitting satisfactory evidence that its requested rate is reasonable. *Id.* Affidavits from the moving party's attorney and other attorneys regarding prevailing rates in the community, and rate determinations from other cases, are satisfactory evidence of a reasonable hourly rate. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007); *United Steelworkers of Am. v. Phelps*

*Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  Once the moving party has shown that its requested rate is in line with those prevailing in the community, the rate is presumptively reasonable but may be adjusted on the basis of evidence that undermines its reasonableness. *Welch*, 480 F.3d at 947-48.

    James seeks a rate of $675 per hour for her attorney, Laurence Padway, and $195 per hour for Padway's long-time paralegal, Felicia Phillips.[1]  Mot. 11.  AT&T does not challenge Phillips's hourly rate, and I find that it is reasonable in light of her considerable experience.

    In support of Padway's hourly rate, James submits the following evidence:  (1) Padway's own declaration, describing his legal education and thirty-six years of litigation experience, much of it dedicated to ERISA litigation, and stating that he recently increased his hourly rate for paying clients to approximately $675.[2]  Padway Decl. I (Dkt. No. 72).  (2) A declaration by Richard Pearl, an attorney and expert on court-awarded attorney's fees, asserting that $675 per hour is "well in line with the noncontingent market rates charged for reasonably similar services . . . by attorneys of reasonably similar qualifications and experience in the San Francisco Bay Area." Pearl Decl. ¶ 9 (Dkt. No. 71-1).  (3) A declaration by Julian Baum, an ERISA practitioner based in the Bay Area, stating that Padway's requested rate is reasonable and "within the range of rates charged and collected by ERISA attorneys of comparable experience, reputation, and skill." Baum Decl. ¶ 3 (Dkt. No. 71-2).  (4) A declaration by Jill Holmquist, a professional trial consultant, who states that "ERISA cases are at least as challenging and require as much skill as those cases involving civil rights, fraud . . . , employment law, and intellectual property law." Holmquist Decl. ¶ 5 (Dkt. No. 71-3).  (5) A declaration by attorney Mark Bofsky, originally submitted in another ERISA case in this district in 2011, describing Padway as "one of the leading practitioners in the United States representing plan participants in the area of long-term disability benefits."  Bofsky Decl. ¶ 9 (Dkt. No. 71-5, Ex. A).  (6) A declaration by attorney Susan Horner,

---

[1] Phillips states in her declaration that she began working for Padway in 1986 and obtained her paralegal certificate in 1995.  Phillips Decl. ¶ 2 (Dkt. No. 71-4).

[2] Specifically, Padway states:  "I have implemented a $1,500 fee for an initial consultation . . . , which was set by estimating my typical time . . . at $675 an hour."  Padway Decl. I ¶ 12 (Dkt. No. 72).

1    originally submitted in another ERISA case in this district in 2009, stating that at the time, the

2    market rate for ERISA attorneys was between $500 and $650 per hour.  Horner Decl. ¶ 22 (Dkt.

3    No. 71-5, Ex. B).[3]

4            James also cites to three 2011 cases from this district in which Padway was awarded a rate

5    of $600 per hour.  *See White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, No.

6    10-cv-01855-BZ, 2011 WL 5183854, at *3 (N.D. Cal. Oct. 31, 2011)*; Kroll v. Kaiser Foundation*

7    *Health Plan Long Term Disability Plan*, No. 11-cv-03863-JSW (N.D. Cal. Aug. 5, 2011) ("Kroll

8    II"), Dkt. Nos. 44, 45; *Kroll v. Kaiser Foundation Health Plan Long Term Disability Plan*, No.

9    09-cv-01404-JSW (N.D. Cal. Mar. 31, 2009) ("Kroll I"), Dkt. Nos. 129, 134.  James asserts that

10   because these cases are now more than three years old, an upward revision of Padway's hourly

11   rate is appropriate.  Mot. 5.

12           AT&T contends that Padway should not receive more than $400 per hour but offers little

13   support for such a dramatic reduction in his hourly rate – i.e., to a figure substantially lower than

14   what he was awarded on multiple occasions in this district three years ago.  AT&T cites two

15   Northern District cases for the proposition that the prevailing market rate for comparable work is

16   between $300 and $400.  *See Bd. of Trustees v. Protech Servs., Inc.*, No. 12-cv-01047-MEJ, 2014

17   WL 122702 at *10-11 (N.D. Cal. Jan. 13, 2014) (awarding an hourly rate of $385 in an ERISA

18   case to an attorney with 27 years of ERISA litigation experience); *Bd. of Trustees of Laborers*

19   *Health & Welfare Trust Fund for N. California v. Perez*, No. 10-cv-02002-JCS, 2011 WL

20   6151506 (N.D. Cal. Nov. 7, 2011) (awarding an hourly rate of $345 in an ERISA case).  However,

21   both cases involved motions for default judgment in which the plaintiff's attorney requested only

22   between $300 and $400 per hour (and the court granted the request).  That is not the situation here.

23           AT&T argues that the attorney declarations submitted by James should be disregarded as

24   inherently unreliable.  Opp. 13.  AT&T cites two out-of-district cases in which courts questioned

25   the reliability of "self-serving and self-perpetuating" declarations submitted by lawyers in support

26   of other lawyers' fees motions.  *See Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-cv-

---

[3] Padway's unopposed request for judicial notice of the Bofsky and Horner declarations is GRANTED.  Dkt. No. 71-5.

00620, 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010) ("Each of these attorneys works on ERISA matters, and claiming that the rates charged by plaintiff's counsel, no matter how high, is in their own interest. A high award in this case would support [their] own high hourly rate requests in the future."); *Taylor v. Chaing*, 2009 WL 453050, at * 9 (E.D. Cal. Feb. 23, 2009) ("The potential for unwarranted inflation of the . . . 'reasonable hourly rate' is great because the increase methodology is . . . not based on hard, economic data, but on the same attorney suppositions, extrapolations, and alliances which set the rate in the first place."). AT&T warns of "the effect of allowing a small number of plaintiff's attorneys to set the market rate by agreeing on an hourly rate that is rarely actually charged . . . , and then setting up a circular chain in which each declares the others' putative hourly rates to be reasonable." Opp. 13.

       I am not convinced this hypothetical phenomenon warrants the rejection of James's declarations. AT&T does not point to any actual (as opposed to theoretical) reason to doubt the credibility of the declarants. While it is true that lawyers of the same field have an interest in encouraging high rates for that field, professional standards – such as Rule 11 of the Federal Rules of Civil Procedure – mitigate the risk that attorneys will submit false declarations in support of allies' fee motions.[4]

       I find more persuasive AT&T's observation that none of the declarations submitted by James demonstrates that an attorney in this area has actually received $675 per hour, either from a paying client or by court order, for work on an ERISA case comparable to this one. The cases cited in Pearl's declaration in which attorneys received $675 per hour or more are all factually distinct. *See* Pearl Decl. ¶ 11. Baum states that Padway's requested rate is "within the range of rates charged and collected by ERISA attorneys of comparable experience, reputation, and skill," but Baum does not explain the basis for this conclusion. *See* Baum Decl. ¶ 3. Padway states in his

---

[4] AT&T's evidentiary objections to the attorney declarations are also unconvincing. AT&T argues the declarations should be struck "to the extent they are conclusory and contain inadmissible hearsay." Opp. 14. AT&T does not explain which particular portions of the declarations are objectionable, or how they are materially different from the sort that are routinely submitted in support of attorney's fees motions. The objections are OVERRULED.

declaration that he recently increased his hourly rate for paying clients to approximately $675. Padway Decl. I ¶ 12. However, AT&T asserts, and Padway does not dispute, that it was not until July 20, 2014, two days after judgment was entered in this case, that Padway increased his rate. Opp. 12; Kimura Decl. ¶ 4 (Dkt. No. 73-2). During the vast majority of this litigation, Padway charged only $600 per hour. Reply 5.

Considering all of the evidence submitted and the parties' respective arguments, I find that Padway's requested rate should be reduced slightly, to $650 per hour. This figure takes into account market shifts and Padway's increased experience since 2011 but recognizes that there is insufficient evidence indicating that the prevailing market rate for his services had actually risen to $675 per hour (if it has) until after judgment was entered.[5] The figure is also in line with another attorney's fees decision I recently issued, which held that $650 per hour was a reasonable rate for work on a comparable ERISA case by an attorney with similar credentials and extensive experience in the field. *See Echague v. Metro. Life Ins. Co.*, No. 12-cv-00640-WHO, 2014 WL 4746115, at *2-3 (N.D. Cal. Sept. 24, 2014).

In sum, James is entitled to attorney's fees at a rate of $650 per hour for Padway's time, and $195 per hour for Phillips's work as a paralegal.

## II.     HOURS EXPENDED

James claims 283 hours for Padway and 50.10 hours for Phillips.[6] Mot. 11. AT&T contends that a number of these hours should be deducted because they were excessive, duplicative, or otherwise unnecessary. Although most of AT&T's arguments are not persuasive, a few have merit, and I will reduce the claimed hours accordingly.

---

[5] In determining the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation, "[e]ither current or historical prevailing rates may be used." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990). "The use of current rates . . . may be required if the effects of inflation would otherwise render the fee award unreasonable." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 n.7 (9th Cir. 1987). Current rates are not required in every case, however. "[T]he question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment." *Id.* The circumstances of this case do not require the use of Padway's current $675 per hour rate for James to receive a reasonable fee award.

[6] James does not request any award for costs.

AT&T first argues that Padway and Phillips spent excessive time (1.00 hours for Padway and 2.10 hours for Phillips) preparing the complaint.  AT&T claims this time is excessive because James's three-page complaint appears to be derived from a template which Padway has used in several other recent cases, and the template was modified only to add dates and other minor details.  *See* Opp. 3; RJN Exs. 1-6.[7]  AT&T further contends that Phillips's time includes hours spent on unrecoverable clerical work.  Having reviewed the relevant billing records, I find the 1.0 hours expended by Padway to be reasonable.  Padway states in his reply declaration that the time was spent verifying the complaint's factual accuracy, confirming that the necessary administrative remedies had been exhausted, and considering basic strategy decisions at the outset of the action.  Padway Decl. II at 5 (Dkt. No. 75-1).  I do not find it unreasonable to spend one hour on these tasks.

Phillips's time, while also minimal, is more problematic.  The relevant time entry bills 2.1 hours for:

> Per instructions from [Padway], draft complaint, summons and civil case cover sheet, fee agreement, opening authorizations, and open new file on system.

Phillips Decl., Ex. 1 (Dkt. No. 71-4).  As an initial matter, this entry is block-billed, making it impossible to ascertain how much time Phillips spent on each of the enumerated tasks.  A mix of paralegal and secretarial work is included.  As I explain in more detail below, the time spent on clerical tasks is recoverable, but only at a secretarial rate, i.e., $40 per hour.  *See White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, No. 10-cv-01855-BZ, 2011 WL 5183854, at *5 (N.D. Cal. Oct. 31, 2011) (in other case litigated by Padway, awarding $40 per hour for time that Phillips spent on clerical tasks); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, No. 08-cv-02560-SI, 2010 WL 330085, at *6 (N.D. Cal. Jan. 20, 2010) (same); *see also, Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("[E]ven purely clerical or secretarial work is compensable if it is customary to bill such

---

[7] AT&T requests judicial notice of a number of documents previously filed by Padway in other cases in this district. Dkt. No. 73-1.  Such documents are the proper subject of judicial notice under Federal Rule of Evidence 201, and James does not oppose the request.  It is GRANTED.

United States District Court
Northern District of California

1   work separately, though such tasks should not be billed at the paralegal rate, regardless of who
2   performs them.") (internal quotation marks and citations omitted).  Due to the block-billing, I
3   cannot say precisely how much of the 2.1 hours were dedicated to paralegal as opposed to clerical
4   work, but I find that an overall 40 percent reduction (0.84 hours) is reasonable to account for the
5   mix of tasks and the different rates that should apply.

6   Second, AT&T contends that the time Padway and Phillips spent preparing initial
7   disclosures was unnecessary because initial disclosures were not required under Federal Rule of
8   Civil Procedure 26(a) and were never ordered by the Court.  *See* Fed. R. Civ. P. 26(a)(1)(B)(i)
9   (excepting "action[s] for review on an administrative record" from the rule's initial disclosure
10  requirement).  Padway responds that in certain circumstances, such as where discovery outside the
11  administrative record occurs because a conflict of interest may exist, a court may order initial
12  disclosures in ERISA cases such as this one.  *See Hamma v. Intel Corp.*, No. 07-cv-01795, 2008
13  WL 648482, at *2-3 (E.D. Cal. Mar. 4, 2008); *see also, Peterson v. AT & T Umbrella Ben. Plan
14  No. 1*, No. 10-cv-03097-JCS, 2011 WL 5882877, at *5 (N.D. Cal. Nov. 23, 2011).  James asserts
15  that a "prudent lawyer" thus prepares initial disclosures "complete enough to cover any situation."
16  Reply 9.

17  I find this justification persuasive in the circumstances of this case.  All of the hours
18  expended on the initial disclosures occurred between April 11, 2013 and May 2, 2013, before the
19  Court first indicated that it would not order initial disclosures despite James's request to do so.  *See*
20  Dkt. No. 21 at 3.  Moreover, whether a conflict of interest existed – an issue which may result in
21  discovery outside the administrate record and, hence, initial disclosures under Rule 26 – was a
22  litigated issue here.  *See, e.g.,* Dkt. No. 55 at 23-25, 28-29.  In light of these factors, I do not find it
23  appropriate to deduct as unnecessary the time that Padway and Phillips spent on initial disclosures.

24  Third, AT&T contends that Padway spent excessive time (approximately 35 hours)
25  researching and drafting the early neutral evaluation statement, which AT&T asserts consisted
26  primarily of arguments Padway had previously made in other ERISA cases.  Opp. 5-6.  AT&T
27  does not provide additional reasons these time entries are unreasonable.  Padway responds that
28  preparation of the statement required extra time because AT&T had not yet produced the plan

documents or the administrative record, meaning that he was working with a partial claim file. Padway Decl. II at 10-12. Padway also notes that the statement was six pages single-spaced and required that he be "thoroughly familiar" with all 580 pages of the claim file which he then possessed. *Id.* Having reviewed the relevant billing records, Padway's time entries for the statement appear reasonable, and I will not reduce these hours.

Fourth, AT&T argues that Padway spent excessive time (approximately 70 hours) on James's opening summary judgment brief. Specifically, AT&T claims that it was unreasonable for Padway to spend more than 15 hours researching and reviewing medical literature when he has submitted much of the same literature in support of summary judgment in other cases. AT&T further claims that the summary judgment arguments which Padway made in this case were identical to those he has made in numerous other cases, and thus "any argument that the issues are novel or complex are meritless." Opp. 7.

AT&T is correct that Padway submitted some documents here which he has previously submitted in other cases. *See* Dkt. No. 34; RJN Exs. 7-10. However, it is not clear which of Padway's hours, if any, should be deducted because of this fact. None of Padway's time entries concern locating these documents or otherwise preparing them for submission, and it would not be unreasonable for Padway to review them anew with this case's specific facts in mind. Moreover, even if Padway was familiar with some of the medical literature he relied on here, AT&T has not shown – and the time entries do not indicate – that he was familiar with all of it. It is likewise unclear why Padway's experience with the legal concepts at issue in this case warrant reducing the hours he spent on the brief. Padway's time entries do not reflect extensive legal research; rather, the majority of his hours are dedicated to medical research and drafting. This was a fact-intensive case which generated a forty-four page summary judgment order with a twenty-page "Factual Background" section. *See* Dkt. No. 55 at 1-20. Notwithstanding Padway's experience in this field, his billing records do not indicate that he spent an unreasonable amount of time on the opening summary judgment brief.

AT&T next attacks the more than 50 hours that Padway spent reviewing the administrative record and other files, such as James's Social Security Disability Insurance ("SSDI") documents.

Opp. 8.  AT&T contends these hours were excessive and/or unnecessary because the administrative record was "only" 919 pages and the SSDI documents were not part of that record (and thus were not directly relevant to the case).  *Id.*  Padway responds that because AT&T did not produce the administrative record until January 2014, he "essentially went through [it] twice."  Reply 10.  With regard to the SSDI documents, Padway states that he was considering "try[ing] something a little new" by "mak[ing] a big issue out of [AT&T's] failure to reopen [James's] claim to consider [her] SSDI award."  Padway Decl. II at 19.  Padway admits "there was no authority" for this tactic.  *Id.*  Nevertheless, Padway billed a total of 12.70 hours for his review of the approximately 1,200 pages of SSDI documents.

I do not find it unreasonable for Padway to have spent 40 some hours over the course of this litigation reviewing the 919-page administrative record.  On the other hand, 12.70 hours at $650 per hour is an unreasonable amount to bill a client for work on an experimental litigation tactic that is ultimately abandoned and does not materially advance the client's case.  Accordingly, I will reduce the time billed for review of the SSDI documents by 50 percent, or 6.35 hours.

Sixth, AT&T argues that Padway spent an excessive amount of time (approximately 70 hours) working on the case after summary judgment was granted for James.  Opp. 9-11.  For the most part, I disagree.  The parties were unable to stipulate to the exact amount of James's award, and the dispute required additional briefing.  *See* Dkt. Nos. 59, 69.  This accounts for much of Padway's time following the order on summary judgment.  That said, my review of the billing records indicates that Padway spent 12.3 hours on this fee motion, while allotting an additional 7 hours for his future review of AT&T's opposition and the drafting of his reply.[8]  As AT&T points out, the instant motion is nearly identical to one that Padway submitted in another case.  *See White*, No. 10-cv-01855-BZ, Dkt. No. 112; RJN Ex. 10.  For this reason, I find that 12.3 hours is significantly more than could reasonably be spent on preparation of the motion, and I will reduce these entries by 50 percent, or 6.15 hours.  *See Brown v. Mandarich Law Grp., LLP*, No. 13-cv-04703-JSC, 2014 WL 1340211, at *5 (N.D. Cal. Apr. 2, 2014) (reducing hours spent on

---

[8] AT&T asserts, without explanation, that Padway spent 33.1 hours on this fee motion.  Opp. 9.  It is not clear to me how AT&T reached that figure, and I rely on the 12.3 hours figure instead.

11

1 preparation of fee motion which was "substantially similar" to fee motions filed by same attorneys
2 in other cases). Because the hearing on this motion was vacated, I will also deduct the 4 hours
3 allotted to preparing for, traveling to, and attending the hearing. The 7 hours allotted to the reply
4 is reasonable given that the attached declaration by Padway provides a detailed explanation of
5 each time entry contested by AT&T. *See id.* ("The time spent on the reply, however, is reasonable
6 given that the reply responded to the fact-specific issues raised by defendants.").

7 Finally, AT&T requests that Phillips's hours be reduced to account for several time entries
8 reflecting work on clerical tasks. Opp. 11-12. I excerpt one such entry above. In addition to it, I
9 find that another 5.6 hours of Phillips's billed time appears to have been spent doing work best
10 characterized as clerical in nature. Padway asserts these hours were spent on "classically paralegal
11 work." Padway Decl. II at 24. That may be true, but that is not the standard. Judge Illston's
12 decision in *Langston* is exactly on point:

> With respect to [Phillips's] time, plaintiff presents evidence that the tasks performed were within the usual scope of a paralegal's responsibilities . . . Although the Court does not challenge this assertion, it is not enough for plaintiff to show that the challenged tasks are often performed by paralegals. The rule in the Ninth Circuit is that clerical tasks should not be billed at the paralegal rate, regardless of who performs them.

2010 WL 330085, at *6 (internal quotation marks, citations, and footnotes omitted). I will deduct
5.6 hours from Phillips's time. Those hours will be billed at a secretarial rate of $40 per hour. *See id.*

After reducing the claimed hours as described, James is left with 266.50 hours for Padway (283.00 – 6.35 – 6.15 – 4.00 = 266.50) and 43.66 hours for Phillips (50.10 – 0.84 – 5.60 = 43.66). James is also entitled to 5.60 hours billed at a secretarial rate of $40 per hour. Multiplying these approved hours by the approved hourly rates, James is entitled to attorney's fees in the amount of $173,225 for Padway's services (266.5 hours at $650 per hour), $8,513.70 for Phillips's services (43.66 hours at $195 per hour), and $224.00 for secretarial work (5.6 hours at $40 per hour). This amounts to a total fee award of $181,962.70.

## CONCLUSION

For the foregoing reasons, the motion for attorney's fees is GRANTED. James is awarded $181,962.70 in fees.

**IT IS SO ORDERED**.

Dated: December 22, 2014



WILLIAM H. ORRICK
United States District Judge